**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| MV CIRCUIT DESIGN, INC., <br><br> Plaintiff, <br><br> v. <br><br> OMNICELL, INC, RIOUX VISION, INC., and KILPATRICK TOWNSEND & STOCKTON LLP, <br><br> Defendants. | C.A. No. _____ <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff MV Circuit Design, Inc. ("MV Circuit"), by its counsel, hereby makes the following allegations against Omnicell, Inc. ("Omnicell"), Rioux Vision, Inc. ("Rioux Vision"), and Kilpatrick Townsend & Stockton LLP ("Kilpatrick Townsend"), with knowledge as to itself and its own acts, and upon information and belief as to all other matters, as follows:

**SUMMARY OF THE ACTION**

1.      Through a pattern of deception and fraudulent concealment, defendants stripped MV Circuit of its patent rights, including the right to sell and license its valuable intellectual property.  MV Circuit, an engineering company, spent more than six years together with Rioux Vision conceiving, designing, and constructing electronic components for an innovative and, ultimately, commercially successful medication-dispensing cart that became known as the RIO Cart.  MV Circuit conceived of and developed a number of critical aspects of the medication-dispensing cart, including the cart's hardware, software, and firmware.  During the years that they worked together,

1

MV Circuit consistently and explicitly stated that all intellectual property MV developed was its exclusive property and prohibited Rioux Vision from disclosing it to third parties. Unknown to MV Circuit, however, while the companies were working closely together to develop the RIO Cart, Rioux Vision was secretly filing patent applications claiming that its employee was the sole inventor of the cart technology.

2.       Rioux Vision knew that MV Circuit's employees should have been included as co-inventors on the patent applications for the cart technology.  Indeed, Rioux Vision repeatedly asked MV Circuit to license its intellectual property on the cart to Rioux Vision and asked MV Circuit to stipulate that Rioux Vision alone had conceived of the technology in the medical cart.  In fact, just two days after secretly filing its patent application, Rioux Vision sent MV Circuit a draft license agreement, incorrectly dated before the date of the patent application, which provided that MV Circuit would transfer its intellectual property rights to Rioux Vision.  MV Circuit never licensed or transferred its intellectual property to Rioux Vision.

3.       Rioux Vision also deceived MV Circuit to believe that the two companies would share in the success of the Rio Cart.  For example, upon hearing a government announcement requiring that all health records be stored electronically by 2014, an impetus of the RIO Cart's commercial success, an executive of Rioux Vision asked MV Circuit's owner how he planned to spend all of the money he would make.

4.       After secretly filing its patent application claiming that its employee was the sole inventor of the cart technology, Rioux Vision sold all of the intellectual property that it had jointly developed with MV Circuit to Omnicell for $26 million, misrepresenting to Omnicell that it had exclusive rights to the technology included in the

RIO Cart.  MV Circuit was surprised when it learned that Omnicell had acquired Rioux Vision, but MV Circuit still did not know that Rioux Vision had filed a patent application on the cart technology.  The patent eventually issued in 2012.

5.      Rather than disclose the pending patent application to MV Circuit, correct the application, or pay MV Circuit for its intellectual property, Omnicell set in motion a scheme to conceal Rioux Vision's theft of MV Circuit's intellectual property, deceive MV Circuit, and induce MV Circuit to disclose its intellectual property.  Omnicell told MV Circuit that, in order to determine the value and patentability of MV Circuit's intellectual property, MV Circuit needed to disclose its confidential intellectual property to Omnicell's attorney at the law firm currently known as Kilpatrick Townsend & Stockton LLP ("Kilpatrick Townsend").  Omnicell had obviously already determined that MV Circuit's technology was patentable, since it was prosecuting a patent application that included MV Circuit's technology.  Accordingly, its statement that Omnicell wanted to determine the value and patentability of MV Circuit's intellectual property was deceptive and designed to mislead MV Circuit into believing that no patent had been filed.

6.      In addition, Omnicell falsely represented to MV Circuit that the Kilpatrick Townsend attorney was not Omnicell's regular patent counsel and would not be involved in developing any patent applications on Omnicell's behalf.  Omnicell further falsely claimed that the Kilpatrick attorney would not disclose MV Circuit's intellectual property to Omnicell.  Based on these false statements, agreed to by Kilpatrick Townsend, MV Circuit disclosed its confidential intellectual property to William Daley, a patent attorney in Kilpatrick Townsend's Denver office.

7.     Directly contrary to Omnicell's and Kilpatrick Townsend's promises, attorneys in the same Kilpatrick Townsend office as Mr. Daley were Omnicell's regular patent attorneys and drafted and prosecuted numerous U.S. and foreign patent applications that claimed the medical cart technology that MV Circuit co-invented.  In fact, at the time that Omnicell made its promises and MV Circuit disclosed its confidential intellectual property to the Kilpatrick Townsend attorney, Kilpatrick Townsend was actively prosecuting a patent application before the United States Patent and Trademark Office that relied upon the same intellectual property that MV Circuit had invented.  Omnicell subsequently filed patent applications – drafted by Kilpatrick Townsend – claiming that Omnicell employees invented the specific technology that MV Circuit disclosed to Mr. Daley.  MV Circuit did not discover that Kilpatrick Townsend was drafting and prosecuting patents for Omnicell until it first learned in 2013 of the patent that had issued in 2012 and saw the Kilpatrick firm listed on the face of the patent.

8.     Omnicell, aided and abetted by Kilpatrick Townsend, filed numerous patent applications, as detailed below, claiming that its employees invented the technology that Omnicell and Kilpatrick Townsend knew had been jointly invented by MV Circuit.

9.     Accordingly, MV Circuit brings this action for an Order declaring that its employees and/or former independent contractors are co-inventors of the patents and for monetary relief for damages it suffered as the result of defendants' scheme to mislead and defraud MV Circuit.

## THE PARTIES

10.     MV Circuit is an Ohio corporation with its principal place of business at 691 Grand Street, Vermilion, Ohio 44089.  MV Circuit, founded by CEO Markos Paradissis in 1998, is an engineering consulting and circuit design company.  In order to develop the medical cart technology at issue in this case, MV Circuit employed an experienced and highly educated engineering team.  William Colley, a co-inventor of the RIO Cart technology, was MV Circuit's lead electrical engineer, with more than twenty years of engineering experience.  Mr. Colley holds an electrical engineering degree with honors from Ohio State University and a graduate engineering degree from MIT.  Neil Kammiller, another co-inventor of the RIO Cart technology, was a senior electrical engineer at MV Circuit, with more than forty years of engineering experience.  Mr. Kammiller holds an electrical engineering degree from Ohio University.  Michael Mott is also a co-inventor of the RIO Cart technology and was the lead software engineer at MV Circuit, with more than ten years of software engineering experience.  Mr. Mott holds a graduate computer engineering degree from Case Western Reserve University.

11.     Defendant Omnicell is a Delaware corporation with its principal place of business at 590 E. Middlefield Road, Mountain View, California, 94043.  Omnicell is a publicly traded company with sales of approximately $400 million.  Omnicell provides systems that manage, deliver, and dispense medications to hospitals and other healthcare facilities.  On November 29, 2007, Omnicell acquired Rioux Vision for $26 million. Since acquiring Rioux Vision, Omnicell has marketed and sold the RIO Cart and a more current version of the cart, marketed as the Savvy Mobile Medication Workstation, which is based on the same underlying technology co-invented by MV Circuit.  In addition to

the RIO Cart and Savvy Mobile Medication Workstation, Omnicell sells other medical carts, software, and components that may incorporate MV Circuit's intellectual property, including Anywhere RN Remote Medication Management software.

12.     Defendant Rioux Vision was a mobile medical cart company located in Elgin, South Carolina until Omnicell acquired the company on November 29, 2007. Rioux Vision's employee, Ray Reckelhoff, co-invented the RIO Cart technology together with MV Circuit's employees and independent contractors. Rioux Vision's employees lacked the level of engineering education and experience enjoyed by MV Circuit's employees. Accordingly, Rioux Vision focused on aesthetic design and marketing and relied on MV Circuit's engineering and computer science expertise for the RIO Cart's electronics, including the hardware, software and firmware.

13.     Defendant Kilpatrick Townsend, an international law firm, is a limited liability partnership headquartered at 1100 Peachtree Street NE in Atlanta, Georgia, 30309. Kilpatrick Townsend is the result of the merger between two law firms, one of which was formerly known as Townsend and Townsend and Crew.

## JURISDICTION AND VENUE

14.     This Court has federal-question subject matter jurisdiction under 28 U.S.C. § 1331 and 1338 over the claim for correction of inventorship brought under 35 U.S.C. § 256. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so related to the federal claims that they form part of the same case or controversy.

15.     Additionally, this Court has subject matter jurisdiction over this matter based on diversity of citizenship pursuant to 28 U.S.C. §1332(a), because MV Circuit is a

citizen of a different state than the defendants, and the matter in controversy exceeds $75,000, exclusive of costs and interest.

16.     This Court has personal jurisdiction over Omnicell under Federal Rule of Civil Procedure 4(k)(1)(a) and Ohio's long-arm statute, Ohio Rev. Code Ann. § 2307.382, because Omnicell has continuous and systematic contacts with Ohio, does substantial business in Ohio, and/or because Omnicell purposefully availed itself of the laws and courts of Ohio by participating in the conduct set forth in this Complaint.  For example, Omnicell met with MV Circuit in Ohio to discuss MV Circuit's intellectual property.

17.     This Court has personal jurisdiction over Kilpatrick Townsend under Federal Rule of Civil Procedure 4(k)(1)(a) and Ohio's long-arm statute, Ohio Rev. Code Ann. § 2307.382, because Kilpatrick Townsend has continuous and systematic contacts with Ohio and does substantial business in Ohio and because Kilpatrick Townsend purposefully availed itself of the laws and courts of Ohio by participating in the conduct set forth in this Complaint.  For example, Kilpatrick Townsend had the communications with Mr. Paradissis of MV Circuit that are at issue in this case while Mr. Paradissis was in Ohio, causing injury to MV Circuit in Ohio.

18.     This Court has personal jurisdiction over Rioux Vision under Federal Rule of Civil Procedure 4(k)(1)(a) and Ohio's long-arm statute, Ohio Rev. Code Ann. § 2307.382, because it purposefully availed itself of the laws and courts of Ohio by participating in the conduct set forth in this Complaint.  For example, Rioux Vision's employee jointly invented the RIO Cart technology with MV Circuit's employees, who developed the RIO Cart technology from MV Circuit's Ohio headquarters.  MV Circuit,

moreover, disclosed inventive contributions to Rioux Vision at meetings that were held at MV Circuit's Ohio headquarters throughout the course of the RIO Cart's development.

19.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, a substantial part of the events giving rise to the claims asserted herein took place in this District.

## FACTS

### MV Circuit and Rioux Vision Jointly Invent the RIO Cart

20.    MV Circuit and Rioux Vision together conceived of and constructed a medication-dispensing cart that was superior in a number of critical respects to anything then available in the healthcare industry.  Although medical carts had been used in the healthcare industry for years, the carts lacked adequate systems to ensure that the correct medication would be dispensed at the prescribed dose, resulting in mistakes.  Indeed, most hospitals relied on paper records to manage the distribution of medication, even for the most powerful drugs, and human error led to patients receiving the wrong medication or improper dosage.  Further, inadequate systems allowed hospital personnel unauthorized access to controlled substances.

21.    The medication-dispensing cart that MV Circuit and Rioux Vision developed, eventually called the RIO Cart, minimized or eliminated the mistakes and medication theft that had occurred with other medication-dispensing carts.  More specifically, the RIO Cart included a computer-monitored drawer system, which included software, hardware, and firmware, for keeping track of who dispensed what type of medication, when it was dispensed, and that corroborated dispensing information automatically.

22.     MV Circuit began working with Rioux Vision on medical cart technology in 2001, and over the next six years, a close and confidential relationship of trust developed.  Ray Reckelhoff, who was eventually employed by Rioux Vision, approached MV Circuit in 2001 to discuss developing a new mobile medical cart and computer workstation.  MV Circuit agreed to work with Mr. Reckelhoff and Rioux Vision, initially on developing electronic circuitry.  MV Circuit's written estimate for its initial work provided that MV Circuit would retain ownership and exclusive rights over all intellectual property that MV Circuit developed and could only be used in the medical cart that the parties were jointly developing.  MV Circuit's assertion of ownership of its intellectual property never wavered over the ensuing six years.

23.      During those six years, MV Circuit worked almost exclusively on developing the hardware, software, and firmware that were eventually incorporated in the RIO Cart, hiring engineers and spending hundreds of thousands of dollars of its own money on the cart's development.  MV Circuit charged Rioux Vision only for certain hardware expenses and did not charge Rioux Vision for its significant contributions to the research and development of the RIO Cart because it believed that its intellectual property in the RIO Cart would prove to be extremely profitable, and MV Circuit would share in the success.

24.     Rioux Vision encouraged MV Circuit to believe that it would share in the commercial success of the medical cart.  For example, an executive at Rioux Vision, Stephan Rioux, asked Markos Paradissis, MV Circuit's owner, how he planned to spend all of the money he would likely earn after the RIO Cart became a commercial success.

9

25.     MV Circuit consistently told Rioux Vision that all intellectual property that MV Circuit developed related to the RIO Cart was its exclusive property.  For example, the terms and conditions, pursuant to which MV Circuit sold Rioux Vision prototypes it developed of various components to be used in the RIO Cart, expressly provided that all intellectual property MV Circuit developed was MV Circuit's exclusive property and could not be disclosed to a third party.

26.     MV Circuit and Rioux Vision collaborated on the entire development process, exchanging ideas, designs, and prototypes.  MV Circuit employed a number of highly educated and skilled engineers, and they worked on many critical components of the RIO Cart, including the computer controller, power system controller, drawer controller, and weight sensor.  Rioux Vision employees did not possess the same level of engineering education and experience, and, therefore, although Rioux Vision developed many of the mechanical aspects of the cart and worked on design and marketing plans, Rioux Vision did not develop many of the critical, functional components of the RIO Cart.

27.     MV Circuit's employees and independent contractors conceived of and developed a number of novel components that were incorporated in the RIO Cart, some of which are described below.

### The Drawer System

28.     MV Circuit conceived of and reduced to practice significant aspects of a module cassette drawer system (the "Drawer System").  In particular, MV Circuit conceived of and developed a "cartridge management" circuit board (the "Management Board") that functions as the controller of the cart's Drawer System, controlling, among

10

other things, the locking and unlocking of drawers, the drawers' break-in alarm, and the management of power and charging of the drawer system's batteries.  Such functions are critical in order to dispense the proper dosage of drugs and to prevent the misuse of controlled substances.  In the system that MV Circuit conceived of and developed, the Management Board is directly wired to the cart's onboard computer.  Thus, when a user of the cart inputs commands into the computer, the computer controller outputs those commands to the Management Board, which the board receives as input.  The Management Board then translates the input it receives into output signals that, through additional intermediate circuit boards, are sent to certain drawer components to command them to carry out assigned functions – *i.e.* locking or unlocking a drawer, etc.  The Management Board is connected, through an intermediate circuit board, to multiple "drawer circuit boards" (the "Drawer Boards"), with a separate Drawer Board connected to each pair of drawers in the drawer system.  To facilitate the locking and unlocking system conceived of by MV Circuit, each Drawer Board is connected to a solenoid – a type of electromagnetic locking mechanism – and a sensor that detects whether a drawer is opened or closed.  MV Circuit conceived of and developed guide light indicators (*e.g.*, LEDs) to indicate the state (e.g. open or closed) and location of the drawers (the "Guide Light").  Rioux Vision and Omnicell filed patents falsely claiming that Ray Reckelhoff was the sole inventor of the Drawer System.

### *The Height Actuator and Weight Sensor*

29.     MV Circuit also conceived of a system by which the height of components mounted to the RIO Cart – for example, the display monitor and the workspace tray located just below the monitor – can be adjusted up and down with a motor (the "Height

11

Actuator").  MV Circuit's Neil Kammiller designed the Height Actuator system to work in conjunction with the "VMain card," a circuit board developed by Neil Kammiller. During testing of an early prototype of the cart, Rioux Vision learned that the cart malfunctioned when nurses sat on the carts.  Rioux Vision's Ray Reckelhoff told MV Circuit's Markos Paradissis and Neil Kammiller of the problem and asked them to come up with a solution.  Mr. Paradissis and Mr. Kammiller identified that the problem was caused by excessive weight causing reverse force on the Height Actuator's motor, thereby creating reverse voltage that would cause the Height Actuator to malfunction.

30.     Mr. Paradissis and Mr. Kammiller also came up with the solution to the problem that Mr. Reckelhoff identified.  Specifically, they conceived of and developed the circuit board to include a unique "weight control circuit" (the "Weight Sensor") so that the Height Actuator could adjust itself or reset based on notable changes of weight being added on the cart.  Rioux Vision and Omnicell filed patents falsely claiming that Mr. Reckelhoff was the sole inventor of the Height Actuator and Weight Sensor.

*The Wireless Linking System*

31.     MV Circuit conceived of and developed a wireless drawer system server, which enables the RIO Cart's users to view the status of all drawers remotely from any location, including anywhere within a healthcare facility.  This was a significant improvement over existing cart technology because it permitted a hospital or healthcare facility to monitor and record the administration of drugs far more effectively.  MV Circuit first conceived of the idea while working on a system to remotely monitor the battery power of each cart, with that system evolving to track the status of many other features on the cart such as the drawer system.  MV Circuit later improved the system

12

such that each of the carts could be "linked" and tracked together over a wireless network for improved monitoring within healthcare facilities.  Rioux Vision and Omnicell filed patents falsely claiming that Mr. Reckelhoff was the sole inventor of the Wireless Linking System.

<i>Power System Controller</i>

32.    MV Circuit conceived of and reduced to practice a VMain card that operated as the RIO Cart's "power system controller" (the "Power System Controller"). This was also a marked improvement over then-existing technology because it allowed a user to prevent cart breakdowns due to loss of power.  The Power System Controller controls the height of the Height Actuator, the Weight Sensor, and the "fuel gauge" (the "Fuel Gauge") that displays the percentage of charge remaining in the cart's battery.  The Fuel Gauge operates by receiving electronic input from the cart's battery, which the Power System Controller translates, through the firmware and software, into the percentage of remaining battery power.  The Fuel Gauge displays that percentage with an LED lighting system.  MV Circuit also improved on the Power System Controller during the cart's development by conceiving of a system in which the cart's hardware and software could predict a battery's discharge and charge rates based on historical usage and display the remaining charge or discharge time on the cart's computer display monitor.  Rioux Vision and Omnicell filed patents falsely claiming that Mr. Reckelhoff was the sole inventor of the Power System Controller.

<i>The HIPPA Switch</i>

33.    MV Circuit conceived of and developed a stand-by switch also called a "HIPPA switch" (the "HIPPA Switch") for the RIO Cart.  The HIPPA switch – coined

13

after the federal patient confidentiality law – allows doctors or nurses to press a switch that immediately forces the RIO Cart's display monitor into standby mode in order to prevent unwanted disclosure of patients' confidential information.  Omnicell filed patents falsely claiming that Omnicell employees were the only inventors of the HIPPA Switch.

*The Computer Controller*

34.     MV Circuit conceived of and developed the RIO Cart's software (the "Computer Controller").  The Computer Controller enables users to easily operate the cart and the onboard computer.  The Computer Controller allows users to input commands that the computer relays through the circuitry and components developed by MV Circuit to interface with the cart.

35.     Throughout MV Circuit's development of the RIO Cart technology, MV took steps to protect its confidential information and intellectual property.  For example, MV Circuit required Rioux Vision to agree not to disclose MV Circuit intellectual property to third parties without MV Circuit's prior written consent.  Further, MV Circuit required that its employees that worked on the RIO Cart agree not to disclose any of MV Circuit's proprietary information.

36.     For years, MV Circuit and Rioux Vision were in almost constant communication about developing the RIO Cart.  For example, between September 2005 and February 2006, Rioux Vision, MV Circuit, and two consulting companies that provided mechanical and manufacturing assistance to the team exchanged more than 100 emails and spoke on the phone at least several times a week.  Despite their frequent communications and confidential relationship, never once did Rioux Vision mention to MV Circuit that it was drafting a patent application related to the RIO Cart in which it

14

was claiming sole inventorship and, therefore, exclusive ownership over all the
intellectual property in the cart.

### Rioux Vision Secretly Files a Patent Application

37.     Unknown to MV Circuit, Rioux Vision filed a provisional patent
application related to the RIO Cart on February 11, 2006, U.S. Provisional Application
No. 60/772,416 ("the '416 Application"), falsely claiming that its employee, Ray
Reckelhoff, was the sole inventor.  Mr. Reckelhoff held only a vocational school
education and had only about six years work experience before joining Rioux Vision.
Accordingly, although Mr. Reckelhoff contributed to the RIO Cart, he relied heavily on
his co-inventors at MV Circuit.

38.     The '416 Application, which was not publically available, provided that
the patent was for:

> [A] cart [that] includes a computer with wireless network access and a
> monitor, a power system having a battery pack to provide power to the
> computer and monitor, a cassette drawer system having one or more
> cassette drawers for holding medications, and a security system. … [An]
> important feature is the cassette drawer system. … Still another important
> feature is the use of software to control access.

39.     MV Circuit invented or co-invented many aspects of the cart described in
the '416 Application, including the cassette drawer system controller, the battery-
monitoring controller, and all software incorporated in the cart.

40.     Rioux Vision knew that MV Circuit's employees were inventors of the
technology claimed in the '416 Application.  Accordingly, Rioux Vision kept the '416
Application a secret and desperately tried to convince MV Circuit to transfer its
intellectual property to Rioux Vision and to effectively concede that Rioux Vision's
employee was the sole inventor of the RIO Cart.  MV Circuit had no idea that Rioux

Vision had filed a patent application on the RIO Cart technology, and it continued working on the project.

41.     Applicable patent regulations require that the applicant file a non-provisional patent application within one year of filing the provisional application.  Thus, on February 12, 2007, Rioux Vision filed its non-provisional patent application, U.S. Application No. 12/278,263 ("the '263 Application"), again falsely claiming that its employee, Ray Reckelhoff, was the sole inventor and that, therefore, Rioux Vision was the sole owner of the intellectual property.  The '263 Application ultimately issued as U.S. Patent No. 8,180,485 ("the '485 Patent") on May 15, 2012.

42.     The '485 Patent includes 36 claims.  MV Circuit conceived of, developed, and enabled substantial aspects of at least claim numbers 1, 4, 9, 10, 11, 12, 14, 17, 18, 19, 22, 25, 26, 27, 28, 29, 31, 32, and 33 relating to, among other features, the Computer Controller, the Power System Controller, the cassette drawer controller (the Management Board), and the Weight Sensor.  Claim 1 includes technology regarding the electrical operation of the Drawer System that MV Circuit conceived of and developed.  Claims 17-19 and 26-28 include technology relating to the locking mechanism of the Drawer System that MV Circuit conceived of and developed.  Claims 10-11, 21-22, and 31 include technology relating to the Height Actuator and the Weight Sensor that MV Circuit conceived of and developed.  Claim 29, concerning the Wireless Linking System, details additional technologies that MV Circuit conceived of and developed.

43.     MV Circuit employees contributed to the definite and permanent idea of the complete and operative invention of the '485 patent's claims by, among other things,

16

conceiving of and developing the Computer Controller, Cassette Drawer Controller, and Power System Controller.

**Rioux Vision Asks MV Circuit to Transfer its Intellectual Property
in the RIO Cart**

44.     On February 14, 2007 – two days after secretly filing the '263 Application – Rioux Vision sent MV Circuit a so-called "Master Development Agreement," which provided, among other things, that, in the future, Rioux Vision would be the exclusive owner of any intellectual property either party developed in connection with the RIO Cart.  The draft agreement was dated January 25, 2007, weeks before it was actually sent to MV Circuit, apparently because Rioux Vision hoped to obtain exclusive rights to intellectual property before the '263 Application was filed.  MV Circuit rejected Rioux Vision's proposal, and, on March 16, 2007, MV Circuit sent Rioux Vision a counter-draft agreement, which provided that MV Circuit retained all of its intellectual property.

45.     Rioux Vision's counsel sent MV Circuit's counsel a revised draft agreement in April 2007, this time with a "Background" section that claimed that MV Circuit developed the cart pursuant to Rioux Vision's specifications.  In doing so, Rioux Vision was trying to induce MV Circuit to effectively concede that Rioux Vision was the sole inventor of the RIO Cart.  As MV Circuit only learned years later, this draft agreement was drafted by the same lawyer that had signed Rioux Vision's patent application that had been filed two month earlier, falsely claiming that Rioux Vision's employee was the sole inventor.

46.     Rioux Vision's proposed agreement also provided that MV Circuit would grant Rioux Vision an exclusive license on the RIO Cart software – *i.e.*, the Computer Controller – that MV Circuit had developed.  Accordingly, Rioux Vision at least

17

implicitly acknowledged that MV Circuit owned the intellectual property in the Rio

Cart's Computer Controller, even though the patent application it had just filed claimed

that Rioux Vision's employee was the sole inventor of the Computer Controller.  MV

Circuit rejected Rioux Vision's proposed agreement and thus retained ownership of its

intellectual property.

### Rioux Vision Sells MV Circuit's Intellectual Property to Omnicell

47.     During 2007, without having transferred or licensed its intellectual

property to Rioux Vision, MV Circuit continued collaborating closely with Rioux Vision

on the cart.  All the while, Rioux Vision continued to conceal from MV Circuit that it had

filed the patent application related to the RIO Cart.  Rioux Vision also kept secret from

MV Circuit that it was negotiating to sell all of the intellectual property related to the

cart.

48.     On November 29, 2007, Omnicell purchased Rioux Vision for $26

million.  Rioux Vision's most significant asset was the intellectual property related to the

RIO Cart.  In connection with the sale, Rioux Vision misrepresented to Omnicell that it

was the exclusive owner of the intellectual property.  Omnicell hired Ray Reckelhoff, the

sole inventor named on Rioux Vision's patent application, to help Omnicell further

develop the RIO Cart technology and to explain the RIO Cart technology to Omnicell

engineers.  Omnicell fired Mr. Reckelhoff within a few months.

49.     After learning of Omnicell's acquisition, on December 17, 2007, Mr.

Paradissis met with Omnicell executives in California.  At the time, MV Circuit had no

idea that Rioux Vision had filed a patent application based on the RIO Cart.  MV Circuit

proposed negotiating an agreement pursuant to which Omnicell would purchase MV

Circuit's intellectual property rights in the RIO Cart.  Omnicell appeared to Mr.

Paradissis to be receptive to his proposal and Omnicell told him that the company's

attorneys would contact him to continue discussions.  Omnicell and its counsel,

Kilpatrick Townsend, instead embarked on a scheme to deceive MV Circuit and strip it

of its intellectual property rights.

### Kilpatrick Townsend and Omnicell Deceive MV Circuit and Induce it to Disclose its Intellectual Property

50.　　On January 22, 2008, Bob Schmid, Omnicell's Associate General

Counsel, telephoned Mr. Paradissis.  The following day, Mr. Schmid sent Mr. Paradissis

an email summarizing their telephone discussion.  Mr. Schmid wrote:

> I have identified patent counsel with the Townsend and Townsend and
> Crew law firm to whom you can disclose information relating to the IP
> that you believe relates to the Rioux Vision carts.  This counsel would
> review this information and possibly discuss it further with you and/or
> your people.  *The purpose of the review and discussion is to enable him to
> provide to Omnicell his assessment of the patentability of these features as
> well as the overall value of the technology behind these features.  He
> would not share with Omnicell the underlying technological descriptions
> that you would disclose to him but would provide the assessment
> mentioned above.  For your information, although this counsel is solely
> Omnicell's counsel not the counsel of MV Circuit, this individual is not
> our regular patent counsel and would not be involved in developing any
> patent applications on behalf of Omnicell with respect to any technologies
> similar to those that are disclosed to him by MV Circuit.* (emphasis added)

51.　　In reliance on Mr. Schmid's representations that the lawyer would assess

the value and patentability of MV Circuit's technology, would not disclose MV Circuit's

confidential intellectual property to Omnicell, was not Omnicell's "regular patent

counsel," and would "not be involved in developing any patent application on behalf of

Omnicell with respect to any technologies similar to those that are disclosed to him by

MV Circuit," MV Circuit agreed to disclose its confidential intellectual property to

Omnicell's outside counsel.  Mr. Schmid sent a copy of the email quoted above to

Omnicell's outside counsel charged with reviewing MV Circuit's intellectual property,

William J. Daley, at the Denver office of Kilpatrick Townsend.

52.     Incredibly, neither Omnicell nor Mr. Daley told MV Circuit that

Kilpatrick Townsend was in fact Omnicell's regular patent counsel.  Indeed, partners

from the same Denver office of Kilpatrick Townsend as Mr. Daley were working on

Omnicell's non-public patent applications related to the technology in the RIO Cart.

53.     Accordingly, Omnicell's and Kilpatrick Townsend's assurances to MV

Circuit that the attorney was not Omnicell's regular patent counsel and would not be

involved in developing patent applications for Omnicell were patently false and

misleading under all of the facts and circumstances.

54.     In addition, Omnicell's and Kilpatrick Townsend's statement to MV

Circuit that their intent was to assess the value and patentability of MV Circuit's

technology was false and misleading because Omnicell, aided by Kilpatrick Townsend,

was then prosecuting a patent application claiming MV Circuit's technology, so they had

obviously already determined that MV Circuit's technology was patentable.  Omnicell

and Kilpatrick Townsend thereby deceived MV Circuit into believing that no patent

application had been filed.

55.     In reliance on these false and misleading assurances, on January 28, 2008,

MV Circuit disclosed its confidential intellectual property to Mr. Daley at Kilpatrick

Townsend.  Mr. Daley dealt directly with Mr. Paradissis, who was not represented by

counsel in connection with their discussions.

20

56.     Following their initial conversations, Mr. Daley sent Mr. Paradissis "a summary/outline" of what they had discussed concerning MV Circuit's contributions to the RIO Cart's development and followed up with several emails.  In these emails, Mr. Daley requested that Mr. Paradissis provide him with so-called "conception dates" for the technology that MV Circuit invented.  After Mr. Paradissis provided dates, Mr. Daley pressed for more specificity in an email he sent Mr. Paradissis on February 1, 2008:

> I noticed that the dates you give are for the two general categories (cart system and draw system).  That's fine but, if there are different dates for different ideas, please list those separately.  For example, you mentioned on the phone that the idea of lighting the LED indicators based on the waterfall circuit was conceived 3/24/07 but the date you give for the overall drawer system is 3/9/06.  So, to the extent that elements or features of the drawer system were conceived later, please indicate those dates separately.  As I mentioned on the phone earlier, it would be helpful to also know the date of implementation of each of the ideas listed.  Please include date for a working prototype as well as dates that the ideas were implemented in products.  Again, to the extent that these dates vary, please indicate them separately.

57.     During their discussions and email exchanges, Mr. Daley never explained the legal significance of a "conception date" or revealed to him that Rioux Vision had filed the '416 and '263 Applications claiming that Mr. Reckelhoff was the sole inventor of this same technology.  The Kilpatrick Townsend attorney knew that Mr. Paradissis did not know the possible significance of the conception dates since Mr. Paradissis did not know that a patent had been filed.  Moreover, the Kilpatrick Townsend attorney knew that Mr. Paradissis did not have counsel in connection with their conversations and likely did not understand the meaning or legal significance of a "conception date."  Mr. Daley was undoubtedly concerned about the conception dates because he hoped to be able to help Omnicell find a basis to assert priority over MV Circuit's inventions.

21

58.     The "summary/outline" that Mr. Paradissis sent Mr. Daley summarized some of MV Circuit's inventive contributions to the RIO Cart's development, including the Drawer System, Wireless Linking System, the HIPPA switch, the Guide Lights, and the Power System Controller.  A number of these inventive contributions that MV Circuit disclosed to Mr. Daley appeared in subsequent patent applications that Omnicell filed. For example, the MV Circuit's "summary/outline" disclosed "[d]rive indicators (LEDs) for state (open/close) of drawers and location[.]"  Kilpatrick Townsend subsequently drafted U.S. Application No. 61/420,262 ("the '262 Application") on behalf of Omnicell that claimed that Omnicell's employees invented a medical cart that included "a guide light that is configured to illuminate when the drawer is accessed so as to visually display the location of the drawer."  Similarly, MV Circuit's summary/outline described a so-called HIPPA or privacy switch that permits a user to hit a button to cause personal patient information to be replaced by a screensaver.  The '262 Application claims that Omnicell employees invented what it refers to as "HIPPA…button" that performs the identical function that MV Circuit disclosed to Mr. Daley.

59.     About a month later, Omnicell employees with engineering and technical expertise visited MV Circuit's Ohio office to learn more about MV Circuit's intellectual property.  The Omnicell employees spent hours learning about MV Circuit's technology.

60.     Omnicell and MV Circuit failed to reach an agreement on the value of MV Circuit's intellectual property.  However, Omnicell certainly understood by then that MV Circuit had invented significant aspects of the intellectual property related to the cart.  In fact, Omnicell asked MV Circuit to sell the circuitry used in the RIO Cart to Omnicell and hired MV Circuit to work with Omnicell engineers and technical staff on continuing

22

to develop the RIO Cart technology. Between 2008 and 2011, MV Circuit worked closely with Omnicell developing confidential technology for the medical cart and continued to sell electronic components to Omnicell.

61.    By no later than 2008, Omnicell knew that MV Circuit, rather than Rioux Vision, had the expertise required to develop the technology in the RIO Cart and that MV Circuit had, in fact, conceived of and developed much of the technology for the Cart. Omnicell had worked closely with MV Circuit, had been privy to MV Circuit's intellectual property, and had terminated the employment of Rioux Vision's inventor, Ray Reckelhoff, shortly after the acquisition. Nevertheless, in 2010, Omnicell filed patent applications, drafted by its patent counsel Kilpatrick Townsend, claiming that Omnicell employees invented the technology that MV Circuit had disclosed to Omnicell and Kilpatrick Townsend. Omnicell's patent application also included technology that Omnicell had seen when it visited MV Circuit's Ohio offices.

## Omnicell Files Additional Patent Applications
## Related to the RIO Cart Technology

62.    Unknown to MV Circuit, on December 6, 2010, Omnicell filed a provisional patent application, the '262 Application, which related to the earlier patent applications filed by Rioux Vision. The '262 Application, entitled "Medication Dispensing Cart," no longer named Mr. Reckelhoff as inventor, but instead named seven Omnicell employees, Akbar Paydar, Stanley Kim, Chris Richardson, Gerardo Moreno, Victor Santini, Nathaniel Moody, and Laszlo Virag, as inventors and Omnicell as the assignee. It did not name any MV Circuit employees as co-inventors. Kilpatrick Townsend drafted and filed the '262 Application on behalf of Omnicell.

23

63.     The "Brief Summary of the Invention" of the '262 Application provides, among other things, that the patent is for:

> [A] medication dispensing cart having a computer with a computer monitor and a computer controller. … [A] power system with a hot swappable battery and a power system controller. … [A] cassette drawer system with a cassette drawer controller and a cassette drawer.  The computer controller, the power system controller, and the cassette drawer controller may be interfaced with the medication dispensing cart. …

64.     The '262 Application includes numerous inventions that MV Circuit disclosed to Kilpatrick Townsend and Omnicell in January 2008.  In particular, the '262 Application discloses and claims a computer controller (Computer Controller), a power system controller (Power System Controller), a cassette drawer controller (Management Board), guide lights configured to illuminate when drawers are accessed (Guide Lights), a stand-by button that places the computer monitor in a stand-by mode when pressed (HIPPA Switch), and a "gas gauge" to generate readings of the battery's capacity (Fuel Gauge).

65.     On December 6, 2011, Kilpatrick Townsend, on Omnicell's behalf, filed U.S. Application No. 13/312,374 ("the '374 Application"), which claims priority to the '262 Application and names Omnicell employees Akbar Paydar, Stanley Kim, and Andrew Chai as inventors.  The '374 Application ultimately issued as U.S. Patent No. 8,773,270 ("the '270 patent") on July 8, 2014.

66.     MV Circuit conceived of and developed substantial aspects of at least claim numbers 9 and 19 of the '270 Patent relating to, among other features, verifying user authentication and causing the medical storage unit to be locked/unlocked, and visual indicators that indicate whether the drawer is locked or unlocked (Guide Lights). In particular, MV Circuit employees contributed to the definite and permanent idea of the

24

complete and operative invention of the '270 Patent's claims by, among other things, conceiving of and developing the Computer Controller and visual indicators.

67.     In addition to the '270 Patent, Omnicell has filed numerous patent applications which claim priority to the '262 Application, including U.S. Application No. 13/312,817 ("the '817 Application") filed December 6, 2011, International Patent Application No. PCT/US11/63505 ("the '505 Application") filed December 6, 2011, and International Patent Application No. PCT/US11/63597 ("the '597 Application") filed December 6, 2011.  Each of these applications includes claims to inventions conceived of and substantially developed by MV Circuit employees and independent contractors.

68.     Omnicell has also filed other applications that claim priority to the '416 Application, falsely claiming Mr. Reckelhoff as the sole inventor, including International Patent Application No. PCT/US07/03765 ("the '765 Application") filed February 12, 2007, and U.S. Application No. 13/461,615 ("the '615 Application") filed May 1, 2012. The '615 Application ultimately issued as U.S. Patent No. 8,812,153 ("the '153 Patent") on August 19, 2014.  The other applications are currently pending.

69.     The '153 Patent includes 13 claims.  MV Circuit's employees and independent contractors conceived of, developed, and enabled substantial aspects of at least claim numbers 1, 7, 9, and 10 relating to, among other features, the computer controller (RIO Software) and the cassette drawer controller (Management Board). Claims 1 and 7 includes technology regarding the electrical operation of the Drawer System that MV Circuit conceived of and developed.  Claims 9 and 10 include technology relating to the locking mechanism of the Drawer System that MV Circuit conceived of and developed.

25

70.     MV Circuit employees and independent contractors contributed to the definite and permanent idea of the complete and operative invention of the '153 patent's claims by, among other things, conceiving of and developing the Computer Controller, control operation of the first lock and the second lock, and the lock sensors.

**MV Circuit Attempts to Monetize its Intellectual Property and Discovers the Omnicell/Rioux Vision Patent**

71.     Omnicell stopped purchasing products from MV Circuit in 2011.  MV Circuit explored other business opportunities, and sought to license or sell its intellectual property related to the medication-dispensing cart technology to other businesses.

72.     During the time that MV Circuit was attempting to license and/or sell its intellectual property, in May 2013, MV Circuit discovered that the '485 Patent had issued to Omnicell in 2012, naming Ray Reckelhoff as the sole inventor.  MV Circuit further discovered that Kilpatrick Townsend had prosecuted the '485 Patent on behalf of Omnicell.

73.     Until it discovered the '485 Patent in 2013, for all of the reasons discussed above, MV Circuit had no reason to suspect that Rioux Vision or Omnicell had filed patent applications claiming that their employees were the sole inventors of the RIO Cart technology.  Indeed, defendants deceived MV Circuit so that it would not suspect that a patent application had been filed.  Based on MV Circuit's relationships with Rioux Vision and Omnicell, MV Circuit did not believe that either would betray MV Circuit's trust or steal its work.  In addition, Rioux Vision had contracts with MV Circuit that provided that the hardware, software and firmware that MV Circuit provided contained MV Circuit's intellectual property and explicitly prohibited disclosure of MV Circuit's intellectual property to any third party.  Rioux Vision made statements to MV Circuit that

26

suggested that MV Circuit would share in the RIO Cart's commercial success.  Further, MV Circuit had no reason to believe that Omnicell was filing patents on technology that it was purchasing from MV Circuit.  In addition, Omnicell and its patent counsel deceived MV Circuit into believing that no patent had been filed by stating that they were assessing the value and patentability of MV Circuit's intellectual property.

74.  Omnicell currently markets medical carts, software, and components sold under various brand names, including the brand name Savvy Mobile Medication Workstation, which incorporate MV Circuit's intellectual property as claimed in the '485 Patent.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Correction of Inventorship of the '485 Patent Pursuant to 35 U.S.C. § 256)**
**(Against Omnicell and Rioux Vision)**

75.  MV Circuit incorporates by reference the allegations set forth in the prior paragraphs of this Complaint.

76.  The '485 Patent names Ray Reckelhoff, Rioux Vision's employee, as the sole inventor.

77.  MV Circuit employees and/or independent contractors are joint inventors of the '485 Patent because during the course of working with Omnicell and Rioux Vision, MV Circuit's employees and/or independent contractors substantially contributed to the conception and development of the claims in the '485 Patent.

78.  In particular, Markos Paradissis, William Colley, Neil Kammiller, and Michael Mott substantially contributed to the conception and development of the

firmware, software, and hardware incorporated within claim numbers 1, 4, 9, 10, 11, 12, 14, 17, 18, 19, 22, 25, 26, 27, 28, 29, 31, 32, and 33 of the '485 Patent.

79. Messrs. Paradissis, Colley, Kammiller, and Mott conceived of and developed, among other things, the hardware, software, and firmware that enabled the RIO Cart's Battery Monitor and Drawer System to function. They also conceived of a system by which those components were collectively "interfaced" with each other and the Cart, enabling the components to carry out certain functions, including functions performed by the Cart's Power System Controller and Drawer System.

80. Claim 1 of the '485 patent claims hardware, firmware, and software that MV Circuit's employees and/or independent contractors, including Messrs. Colley, Kammiller, and Mott, conceived of and developed. Specifically, claim 1 refers to a "computer with a . . . computer controller, . . . power system with a battery and a power system controller and . . . cassette drawer system with a cassette drawer manager." Claim 1's "computer controller" plainly claims MV Circuit's Computer Controller, the "power system controller" claims MV Circuit's VMain card, and the "cassette drawer manager" claims MV Circuit's Cartridge Management Card.

81. Claim 1 further claims that those three components are "interfaced" with the claimed medical cart and function together within the cart by "receiv[ing] . . . input" and "generat[ing] . . . output" between the various components. MV Circuit's employees and/or independent contractors, including Messrs. Colley, Kammiller, and Mott, conceived of the interface between the components and the Cart as set forth in claim 1. In addition, MV Circuit's employees and/or independent contractors conceived of and designed components for the RIO Cart such that hardware, firmware, and software MV

28

Circuit developed allowed those components to receive particular types of input and generate various types of output.

82.     Dependent claims 10, 11-14, 17-22, and 25-31 provide additional detail regarding the "input" and "output" described more generally in claim 1.  MV Circuit's employees and/or independent contractors conceived of the Cart's generation of such input and output through MV Circuit's hardware, firmware, and software.  Claim 10, for example, includes a "power system controller input comprises at least one of height of said mast, status of said battery status, and weight of said computer and said work surface."  Messrs. Colley and Kammiller conceived of and developed the power system controller as described in claim 10.  By way of further example, Claim 14 includes a "computer controller output comprises at least one of commands to said cassette drawer system and electronic messages relating to the status of said cassette drawer system, the status of said power system, and the location of said medication dispensing carts."  Messrs. Paradissis, Colley, Kammiller, and Mott conceived of and developed the power system controller embodiment described in claim 14.

83.     MV Circuit's employees and/or independent contractors also conceived of the technology described in claim 31 of the '485 patent.  Claim 31 includes a "mast [that] is vertically adjustable through means for adjusting," which describes the Height Actuator that MV Circuit conceived of and developed.  Claim 31 also provides that the "height actuator is connected to a weight sensor," which "trips . . . if . . . weight . . . exceeds a preset, desired weight."  Mr. Kammiller and Mr. Paradissis conceived of and developed the Weight Sensor of claim 31.

29

84.    MV Circuit's employees and/or independent contractors were omitted as inventors of the '485 patent without any deceptive intent on their part.  Indeed, neither MV Circuit nor its employees and/or independent contractors were aware that defendants had filed and prosecuted the patent applications that matured into the '485 patent.

85.    Messrs. Paradissis, Colley, Kammiller, and Mott assigned to MV Circuit all intellectual property rights with respect to the subject matter claimed in the '485 patent.

86.    Omnicell and Rioux Vision are in violation of Section 115 of the Patent Act, 35 U.S.C. § 115, which requires that the true inventors be named on a patent application.

**SECOND CAUSE OF ACTION**
**(Correction of Inventorship of the '270 Patent Pursuant to 35 U.S.C. § 256)**
**(Against Omnicell)**

87.    MV Circuit incorporates by reference the allegations set forth in the prior paragraphs of this Complaint.

88.    The '270 Patent names three Omnicell employees, Akbar Paydar, Stanley Kim, and Andrew Chai, as inventors.

89.    MV Circuit employees and/or independent contractors are joint inventors of the '270 Patent because during the course of working with Omnicell and Rioux Vision, MV Circuit's employees and/or independent contractors substantially contributed to the conception and development of claims in the '270 Patent.

90.    In particular, Markos Paradissis, William Colley, and Michael Mott substantially contributed to the conception and development of the firmware, software, and hardware incorporated within claim numbers 9 and 19 of the '270 Patent.

30

Accordingly, MV Circuit employees and/or independent contractors should be named as joint inventors of the '270 Patent.

91.    MV Circuit employees and/or independent contractors conceived of and developed, among other things, hardware, software, and firmware for a storage system with features claimed in the '270 patent.  Among those features, MV Circuit employees and/or independent contractors conceived of a system by which a computer could remotely transmit user information such as passwords or levels of authorization to a storage unit.  They conceived of that system so that, upon verification of such information, the storage unit would lock/unlock.

92.    For example, claim 9, which provides that "a visual indicator which changes from a first state to a second state" indicates when the "medical storage unit is unlocked."  Mr. Paradissis conceived of and developed the visual indicator, also referred to as Guide Lights, as described in claim 9.

93.    By way of further example, claim 19 provides for a method for "verifying the user authentication information…in response to successfully verifying the user authentication information, causing the environmental controlled medication storage unit to be unlocked."  Messrs. Colley and Mott conceived of and developed the authentication and unlocking method described in claim 19.

94.    Accordingly, MV Circuit employees and/or independent contractors substantially contributed to the conception and development of the claims in the '270 Patent.

95.    Messrs. Paradissis, Colley, and Mott were omitted as inventors of the '270 Patent without any deceptive intent on their part.  Indeed, neither MV Circuit nor its

employees and/or independent contractors were aware that defendants had filed and prosecuted the patent applications that matured into the '270 patent.

96.     Messrs. Paradissis, Colley, and Mott assigned to MV Circuit all intellectual property rights with respect to the subject matter claimed in the '270 Patent.

97.     Omnicell and Rioux Vision are in violation of Section 115 of the Patent Act, 35 U.S.C. § 115, which requires that the true inventors be named on a patent application.

**THIRD CAUSE OF ACTION**
**(Correction of Inventorship of the '153 Patent Pursuant to 35 U.S.C. § 256) –**
**(Against Omnicell)**

98.     MV Circuit incorporates by reference the allegations set forth in the prior paragraphs of this Complaint.

99.     The '153 Patent names Ray Reckelhoff, Rioux Vision's employee, as the sole inventor.

100.    MV Circuit's employees and/or independent contractors are joint inventors of the '153 patent because, during the course of working contemporaneously with Rioux Vision and Reckelhoff, MV Circuit employees substantially contributed to the conception and development of claims in the '153 patent.

101.    In particular, William Colley and Michael Mott substantially contributed to claims 1, 7, 9 and 10 of the '153 patent.  Claims 1 and 7, for example, refer to a "computer controller" – which refers to MV Circuit's Computer Controller – that is "configured to control operation" of the Drawer System's locks.  Messrs. Colley and Mott specifically conceived such a "computer controller" to facilitate the locking and unlocking of the RIO Cart's drawers.  By way of further example, claims 9 and 10 claim

32

"sensors" on the Drawer System that determine whether drawers have been left open or closed, which Mr. Colley also developed for the RIO Cart.

102.    Accordingly, MV Circuit employees and/or independent contractors made substantial contributions to the conception and development of the claims in the '153 Patent.

103.    Messrs. Colley and Mott were omitted as inventors of the '153 Patent without any deceptive intent on their part.  Indeed, neither MV Circuit nor its employees and/or independent contractors were aware that defendants had filed and prosecuted the patent applications that matured into the '153 patent.

104.    Messrs. Colley and Mott assigned to MV Circuit all intellectual property rights with respect to the subject matter claimed in the '153 patent.

105.    Omnicell and Rioux Vision are in violation of Section 115 of the Patent Act, 35 U.S.C. § 115, which requires that the true inventors be named on a patent application.

## FOURTH CAUSE OF ACTION
### (Declaratory Judgment Compelling Omnicell to Correct Inventorship Designation On International Patent Application No. PCT/US2007/003765 and Corresponding National Applications) (Against Omnicell)

106.    MV Circuit incorporates by reference the allegations set forth in the prior paragraphs of this Complaint.

107.    An actual controversy exists between MV Circuit and Omnicell regarding inventorship of the patent applications named in this count.

108.    On February 12, 2007, Rioux Vision filed PCT Application Number PCT/US2007/003765 with the World Intellectual Property Organization ("WIPO") (the

"'765 PCT Application). The '765 PCT Application claimed a "Medication Dispensing Cart," which WIPO subsequently published as WO 2007/095222.

109. The '765 PCT Application includes a specification and claims that are materially identical to the specification and claims in the '485 patent. As discussed above with respect to the '485 patent, MV Circuit's employees and/or independent contractors are joint inventors of the '485 patent. As MV Circuit's employees should have been named inventors on the '485 patent, they should also have been named inventors on the '765 PCT Application.

110. MV Circuit employees and/or independent contractors were omitted as inventors of the '765 PCT Application without any deceptive intent on their part. Indeed, neither MV Circuit nor any of its employees was aware that defendants had filed and prosecuted the patent applications '765 PCT Application.

111. MV Circuit, therefore, is entitled to a declaration compelling Omnicell to name MV Circuit employees as inventors on the '765 PCT Application. *See, e.g.*, *Chou v. Univ. of Chicago*, 254 F.3d 1347, 1360 (Fed. Cir. 2001).

### FIFTH CAUSE OF ACTION
**(Declaratory Judgment Compelling Omnicell to Correct Inventorship Designations On International Patent Application PCT/US2011/063597 and Corresponding National Applications) (Against Omnicell)**

112. MV Circuit incorporates by reference the allegations set forth in the prior paragraphs of this Complaint.

113. An actual controversy exists between MV Circuit and Omnicell regarding inventorship of the patent applications named in this count.

114.     On December 6, 2011, Omnicell filed PCT Application Number PCT/US2011/063597 (the "'597 PCT Application") with the World Intellectual Property Organization ("WIPO"), which claimed a "Medication Dispensing Cart."  The '597 PCT Application includes a specification and claims that are materially identical to the specification and claims in the '817 Application.

115.     The '597 PCT Application and the Foreign Medication Dispensing Cart Patent Applications claimed several elements conceived of by MV Circuit's employees and/or independent contractors, all or most of which MV Circuit disclosed to Kilpatrick Townsend.  The Application claims, among other things, the following features conceived of and developed by MV Circuit:  the HIPPA Switch (Claim 6), power-management features for a Smart Cart (Claims 7, 20, and 41), a Fuel Gauge (Claim 11), a backup battery (Claims 12 and 24), and a Smart Cart's ability to automatically detect drawers the Cart's Drawer System (Claims 16 and 29-34), and the Wireless Linking System (Claim 18 and 38).

116.     Markos Paradissis, William Colley, Neil Kammiller and Michael Mott were omitted as inventors of the '597 PCT Application without any deceptive intent on their part.  Indeed, neither MV Circuit nor any of its employees was aware that defendants had filed and prosecuted those applications.

117.     Accordingly, MV Circuit is entitled to a declaration compelling Omnicell to name MV Circuit employees as inventors on the '597 PCT Application and the Foreign Medication Dispensing Cart Patent Applications.  *See, e.g.*, *Chou*, 254 F.3d at 1360.

35

## SIXTH CAUSE OF ACTION
**(Declaratory Judgment Compelling Omnicell to Correct Inventorship Designations
On International Patent Application PCT/US2011/0635505
and Corresponding National Applications)
(Against Omnicell)**

118.    MV Circuit incorporates by reference the allegations set forth in the prior

paragraphs of this Complaint.

119.    An actual controversy exists between MV Circuit and Omnicell regarding

inventorship of the patent applications named in this count.

120.    On December 6, 2011, Omnicell filed PCT Application Number

PCT/US2011/063505 ("the '505 PCT Application") with the World Intellectual Property

Organization ("WIPO"), which claimed a "Computer Controlled and Monitored Medical

Storage System."

121.    The '505 PCT Application includes a specification and claims that are

materially identical to the specification and claims in the '270 patent.  As discussed

above with respect to the '270 patent, MV Circuit's employees and/or independent

contractors are joint inventors of the '270 patent.  As MV Circuit's employees and/or

independent contractors should have been named inventors on the '270 patent, they

should also have been named inventors on the '505 PCT Application.

122.    MV Circuit employees and/or independent contractors were omitted as

inventors of the '505 PCT Application without any deceptive intent on their part.  Indeed,

neither MV Circuit nor any of its employees was aware that defendants had filed and

prosecuted the patent applications '505 PCT Application.

36

123.    MV Circuit, therefore, is entitled to a declaration compelling Omnicell to name MV Circuit employees as inventors on the '505 PCT Application.  *See, e.g.*, *Chou*, 254 F.3d at 1360.

### SEVENTH CAUSE OF ACTION
**(Fraudulent Concealment)**
**(Against Omnicell and Rioux Vision)**

124.    MV Circuit incorporates by reference the allegations set forth in the prior paragraphs of this Complaint.

125.    As set forth in more detail throughout this Complaint, Omnicell and Rioux Vision deliberately and wrongfully concealed from MV Circuit, among other material facts, the material fact that they intended to and did file patent applications that included technology invented by MV Circuit and the true relationship between Omnicell and Kilpatrick Townsend.

126.    Omnicell and Rioux Vision had a duty to disclose to MV Circuit that they had filed patent applications that included technology that MV Circuit's employees invented, and the true facts concerning Kilpatrick Townsend's work for Omnicell, as a result of the continuing relationship of trust between MV Circuit and Omnicell, and between MV Circuit and Rioux Vision, and as a result of the obligations of good faith and fair dealing that resulted therefrom.  Omnicell and Rioux Vision also had a duty to disclose to MV Circuit that they were filing patent applications that were based on technology that MV Circuit invented and the true facts concerning Kilpatrick Townsend's work for Omnicell in order to dispel or correct their misleading statements.

127.    Omnicell misled and deceived MV Circuit in order to induce MV Circuit to disclose its intellectual property and to mislead MV Circuit into believing that

37

Omnicell had not filed a patent application on the RIO Cart technology.  For example, Omnicell told MV Circuit that, if MV Circuit disclosed its inventions related to the RIO Cart, Omnicell would assess the patentability of the inventions.  Omnicell's statement to MV Circuit was false and misleading because Omnicell had already filed patent applications that claimed MV Circuit's inventions.  Thus, Omnicell had clearly determined that MV Circuit's inventions were patentable, and Omnicell's intention was to mislead MV Circuit and thereby keep MV Circuit in the dark about the pending patent application.

128.    Omnicell also made false and misleading statements and omissions to MV Circuit about its patent counsel, Kilpatrick Townsend, in order to induce MV Circuit to disclose its confidential intellectual property.  More specifically, Omnicell made the following false and misleading statements to MV Circuit:

- On January 24, 2008, Omnicell told MV Circuit that Mr. Daley "is not our regular patent counsel" when, in fact, Mr. Daley's law firm, Kilpatrick Townsend, was Omnicell's regular patent counsel.

- On January 24, 2008, Omnicell told MV Circuit that Mr. Daley "would not be involved in developing any patent applications on behalf of Omnicell with respect to any technologies similar to those that are disclosed to him by MV Circuit" when, in fact, Mr. Daley's law firm, Kilpatrick Townsend, was prosecuting Omnicell's patent application related to the technology in the RIO Cart and was actively working on additional patent applications based on identical technology that MV Circuit disclosed to Mr. Daley.

- On January 24, 2008, Omnicell told MV Circuit that Mr. Daley "would not share with Omnicell the underlying technological descriptions that [MV Circuit] would disclose to him" when, in fact, Kilpatrick Townsend, Mr. Daley's law firm, was prosecuting a patent application that included the same technology that MV Circuit disclosed to Mr. Daley.

129.    Omnicell knew that its statements and omissions were false and were made with the intent to deceive MV Circuit into disclosing its intellectual property and to

deceive MV Circuit into believing that no patent had been filed on the RIO Cart technology.

130.    MV Circuit justifiably relied on Omnicell's and Rioux Vision's concealment of their patent applications and their true relationship with Kilpatrick Townsend, and in reliance on their concealment of these facts, MV Circuit disclosed its confidential intellectual property to Kilpatrick Townsend and Omnicell and continued to believe that no patent applications had been filed.

131.    MV Circuit would not have disclosed its confidential intellectual property to Kilpatrick Townsend or Omnicell had it known that Kilpatrick Townsend was Omnicell's patent counsel, was prosecuting patents on behalf of Omnicell related to the same technology that MV Circuit invented in the RIO Cart, was actively working on additional related patents for Omnicell, and that Omnicell was prosecuting a patent application based on MV Circuit's inventions that failed to include MV Circuit's employees or independent contractors as joint inventors.

132.    MV Circuit was damaged by Omnicell's and Rioux Vision's fraudulent concealment because Omnicell subsequently filed patent applications based on the confidential information that Mr. Paradissis disclosed to Kilpatrick Townsend.  Further, MV Circuit was damaged by Omnicell's and Rioux Vision's fraudulent concealment by being deprived of its right to use, license, and patent its confidential intellectual property, including the rights to market and profit from it.  Additionally, MV Circuit lost the financial opportunities and prestige it would have enjoyed had its employees been named as inventors.  Moreover, MV Circuit would not have devoted significant resources and

time to developing the technology in the RIO Cart had it known that it would be stripped of its property rights in the Cart.

## EIGHTH CAUSE OF ACTION
### (Negligent Misrepresentation)
### (Against Omnicell and Rioux Vision)

133.    MV Circuit incorporates by reference the allegations set forth in the prior paragraphs of this Complaint.

134.    As set forth in more detail throughout this Complaint, Omnicell and Rioux Vision made false and misleading statements to MV Circuit so that MV Circuit would not know that they intended to and did file patent applications that included technology invented by MV Circuit and so that MV Circuit would disclose its intellectual property to them.

135.    Omnicell and Rioux Vision had a duty to disclose to MV Circuit that they had filed patent applications that included technology that MV Circuit's employees invented, and the true facts concerning Kilpatrick Townsend's work for Omnicell, as a result of the continuing relationship of trust between MV Circuit and Omnicell, and between MV Circuit and Rioux Vision, and as a result of the obligations of good faith and fair dealing that resulted therefrom.  Omnicell and Rioux Vision also had a duty to disclose to MV Circuit that they were filing patent applications that were based on technology that MV Circuit invented and the true facts concerning Kilpatrick Townsend's work for Omnicell in order to correct their misleading statements.

136.    Omnicell and Rioux Vision misled and deceived MV Circuit in order to induce MV Circuit to disclose its intellectual property and to mislead MV Circuit into

40

believing that neither Omnicell nor Rioux Vision had filed a patent application on the RIO Cart technology.

137.    For example, Omnicell told MV Circuit that, if MV Circuit disclosed its inventions related to the RIO Cart, Omnicell would assess the value and patentability of the inventions.  Omnicell's statement to MV Circuit was false and misleading because Omnicell had already filed patent applications that claimed MV Circuit's inventions.  Thus, Omnicell had clearly determined that MV Circuit's inventions were patentable, and Omnicell's intention was to mislead MV Circuit and thereby keep MV Circuit in the dark about the pending patent application.

138.    Omnicell also made false and misleading statements to MV Circuit about its patent counsel, Kilpatrick Townsend, in order to induce MV Circuit to disclose its confidential intellectual property.  More specifically, Omnicell made the following false and misleading statements to MV Circuit:

- On January 24, 2008, Omnicell told MV Circuit that Mr. Daley "is not our regular patent counsel" when, in fact, Mr. Daley's law firm, Kilpatrick Townsend, was Omnicell's regular patent counsel.

- On January 24, 2008, Omnicell told MV Circuit that Mr. Daley "would not be involved in developing any patent applications on behalf of Omnicell with respect to any technologies similar to those that are disclosed to him by MV Circuit" when, in fact, Mr. Daley's law firm, Kilpatrick Townsend, was prosecuting Omnicell's patent application related to the technology in the RIO Cart and was actively working on additional patent applications based on identical technology that MV Circuit disclosed to Mr. Daley.

- On January 24, 2008, Omnicell told MV Circuit that Mr. Daley "would not share with Omnicell the underlying technological descriptions that [MV Circuit] would disclose to him" when, in fact, Kilpatrick Townsend, Mr. Daley's law firm, was prosecuting a patent application that included the same technology that MV Circuit disclosed to Mr. Daley.

139.    MV Circuit justifiably relied on Omnicell's false and misleading statements and, in reliance on those statements, MV Circuit disclosed its confidential intellectual property to Kilpatrick Townsend and Omnicell and continued to believe that no patents had been filed.

140.    MV Circuit would not have disclosed its confidential intellectual property to Kilpatrick Townsend or Omnicell had it known that Kilpatrick Townsend was Omnicell's patent counsel, was prosecuting patents on behalf of Omnicell related to the same technology that MV Circuit invented in the RIO Cart, was actively working on additional related patents for Omnicell, and that Omnicell was prosecuting a patent application based on MV Circuit's inventions that failed to include MV Circuit's employees or independent contractors as joint inventors.

141.    MV Circuit was damaged by Omnicell's and Rioux Vision's negligent misrepresentations because Omnicell subsequently filed patent applications based on the confidential information that Mr. Paradissis disclosed to Kilpatrick Townsend.  MV Circuit was further damaged by Omnicell's and Rioux Vision's negligent misrepresentations because, among other reasons, it was deprived of its right to use, license, and patent its confidential intellectual property, including the rights to market and profit from it.  Additionally, MV Circuit lost the financial opportunities and prestige it would have enjoyed had its employees been named as inventors.  Moreover, MV Circuit would not have devoted significant resources and time to developing the technology in the RIO Cart had it known that it would be stripped of its property rights in the Cart.

## NINTH CAUSE OF ACTION
### (Fraud)
### (Against Omnicell and Rioux Vision)

142.     MV Circuit incorporates by reference the allegations set forth in the prior paragraphs of this Complaint.

143.     Omnicell misled and deceived MV Circuit in order to induce MV Circuit to disclose its intellectual property and to mislead MV Circuit into believing that Omnicell had not filed a patent application on the RIO Cart technology.

144.     On January 24, 2008, Omnicell told MV Circuit that, if MV Circuit disclosed its intellectual property and inventions related to the RIO Cart, Omnicell would assess its value and patentability.   Omnicell's material statement to MV Circuit was false and misleading because Omnicell had already filed patent applications that claimed MV Circuit's inventions.  Thus, Omnicell had clearly already determined that MV Circuit's inventions were patentable, and Omnicell's intention was to mislead MV Circuit and thereby keep MV Circuit in the dark about the pending patent application.

145.     Omnicell also made false and misleading material statements and omissions to MV Circuit about its patent counsel, Kilpatrick Townsend, in order to induce MV Circuit to disclose its confidential intellectual property.  More specifically, Omnicell made the following false and misleading material statements to MV Circuit:

- On January 24, 2008, Omnicell told MV Circuit that Mr. Daley "is not our regular patent counsel" when, in fact, Mr. Daley's law firm, Kilpatrick Townsend, was Omnicell's regular patent counsel.

- On January 24, 2008, Omnicell told MV Circuit that Mr. Daley "would not be involved in developing any patent applications on behalf of Omnicell with respect to any technologies similar to those that are disclosed to him by MV Circuit" when, in fact, Mr. Daley's law firm, Kilpatrick Townsend, was prosecuting Omnicell's patent application related to the technology in the RIO

43

Cart and was actively working on additional patent applications based on identical technology that MV Circuit disclosed to Mr. Daley.

- On January 24, 2008, Omnicell told MV Circuit that Mr. Daley "would not share with Omnicell the underlying technological descriptions that [MV Circuit] would disclose to him" when, in fact, Kilpatrick Townsend, Mr. Daley's law firm, was prosecuting a patent application that included the same technology that MV Circuit disclosed to Mr. Daley.

146.    Omnicell knew that its statements were false and were made with the intent to deceive MV Circuit into disclosing its intellectual property and to deceive MV Circuit into believing that no patent had been filed on the RIO Cart technology.

147.    MV Circuit justifiably relied on Omnicell's false and misleading statements and, in reliance on those statements, MV Circuit disclosed its confidential intellectual property to Kilpatrick Townsend and Omnicell and continued to believe that no patents had been filed.

148.    MV Circuit would not have disclosed its confidential intellectual property to Kilpatrick Townsend or Omnicell had it known that Kilpatrick Townsend was Omnicell's patent counsel, was prosecuting patents on behalf of Omnicell related to the same technology that MV Circuit invented in the RIO Cart, was actively working on additional related patents for Omnicell, and that Omnicell was prosecuting a patent application based on MV Circuit's inventions that failed to include MV Circuit's employees or independent contractors as joint inventors.

149.    Intellectual property that MV Circuit disclosed to Kilpatrick Townsend and Omnicell was included in subsequent patent applications that Omnicell filed with Kilpatrick Townsend's assistance.  MV Circuit was further damaged by Omnicell's fraud by, among other things, being deprived of its right to use, license, and patent its confidential intellectual property, including the rights to market and profit from it.

44

Additionally, MV Circuit lost the financial opportunities and prestige it would have enjoyed had its employees been named as inventors.  Moreover, MV Circuit would not have devoted significant resources and time to developing the technology in the RIO Cart had it known that it would be stripped of its property rights in the cart.

**TENTH CAUSE OF ACTION**
**(Fraudulent Concealment)**
**(Against Kilpatrick Townsend)**

150.    MV Circuit incorporates by reference the allegations set forth in the prior paragraphs of this Complaint.

151.    Kilpatrick Townsend, a law firm, is Omnicell's regular patent counsel. The firm deliberately and wrongfully concealed from MV Circuit, among other material facts, the material fact that Omnicell intended to and did file patent applications that included technology invented by MV Circuit and the true relationship between Omnicell and Kilpatrick Townsend.

152.    More specifically, Kilpatrick Townsend made, among others, the following false and misleading statements to MV Circuit:

- On January 24, 2008, Kilpatrick Townsend concurred with Omnicell's statement to MV Circuit that William J. Daley "is not our regular patent counsel" when, in fact, Mr. Daley's law firm, Kilpatrick Townsend, was in fact Omnicell's regular patent counsel.

- On January 24, 2008, Kilpatrick Townsend concurred with Omnicell's statement to MV Circuit that Mr. Daley "would not be involved in developing any patent applications on behalf of Omnicell with respect to any technologies similar to those that are disclosed to him by MV Circuit" when, in fact, Mr. Daley's law firm, Kilpatrick Townsend, was prosecuting Omnicell's patent application related to the technology in the RIO Cart and was actively working on additional patent applications based on the technology that MV Circuit disclosed to Mr. Daley.

- On January 24, 2008, Kilpatrick Townsend concurred with Omnicell's statement to MV Circuit that Mr. Daley "would not share with Omnicell the

45

underlying technological descriptions that [MV Circuit] would disclose to him" when, in fact, Kilpatrick Townsend, thereafter filed patent applications related to the same technology that MV Circuit disclosed to Mr. Daley.

153.    Mr. Daley repeatedly urged Mr. Paradissis to provide him with the "conception dates" for the technology MV Circuit invented.  He did not, however, either explain the meaning of a "conception date" or disclose that Omnicell wanted to establish a "conception date" later than the date that the patent application was filed.  The Kilpatrick Townsend attorney knew that Mr. Paradissis did not know the meaning or possible legal significance of the conception dates since he did not know that a patent had been filed.  Moreover, the Kilpatrick Townsend attorney knew that Mr. Paradissis did not have counsel in connection with their discussions and likely did not understand the meaning or legal significance of a "conception date."

154.    Further, Mr. Daley's focus on "conception dates" evidences that he was more concerned with stripping MV Circuit of its patent rights than he was with assessing the patentability and value of its technologies.

155.    Kilpatrick Townsend told MV Circuit that, if MV Circuit disclosed its inventions related to the RIO Cart, it would help Omnicell assess the patentability of the inventions.  Kilpatrick Townsend's statement to MV Circuit was false and misleading because it concealed that Omnicell was prosecuting a patent application that claimed MV Circuit's inventions.  Thus, Omnicell and Kilpatrick Townsend had clearly already determined that MV Circuit's inventions were patentable, and Kilpatrick Townsend's intention was to mislead MV Circuit and thereby keep MV Circuit in the dark about the pending patent applications.

156.    Kilpatrick Townsend knew that its statements and omissions were false and were made with the intent to deceive MV Circuit into disclosing its intellectual property and to deceive MV Circuit into believing that no patent had been filed on the RIO Cart technology.

157.    MV Circuit justifiably relied on Kilpatrick Townsend's fraudulent concealment of Rioux Vision's and Omnicell's patent applications and its true relationship with Omnicell, and in reliance on Kilpatrick Townsend's concealment of these facts, MV Circuit disclosed its confidential intellectual property to Kilpatrick Townsend and Omnicell and continued to believe that no patent applications had been filed.

158.    MV Circuit would not have disclosed its confidential intellectual property to Kilpatrick Townsend or Omnicell had it known that Kilpatrick Townsend was Omnicell's patent counsel, that it was prosecuting patents on behalf of Omnicell related to the same technology that MV Circuit invented in the RIO Cart, and that it was actively working on additional related patents for Omnicell.

159.    Kilpatrick Townsend had a duty to disclose to MV Circuit the true nature of the law firm's work for Omnicell and the existence of the pending patent applications in order to dispel or correct their misleading statements.

160.    MV Circuit was damaged by Kilpatrick Townsend's fraudulent concealment because Kilpatrick Townsend subsequently drafted and filed patent applications based on the confidential information that Mr. Paradissis disclosed to Kilpatrick Townsend and Omnicell.  Further, MV Circuit was damaged by Kilpatrick Townsend's fraudulent concealment by being deprived of its right to use, license, and

Case: 1:14-cv-02028-DAP  Doc #: 1  Filed:  09/12/14  48 of 59.  PageID #: 48

patent its confidential intellectual property, including the rights to market and profit from it.  Additionally, MV Circuit lost the financial opportunities and prestige it would have enjoyed had its employees been named as inventors.  Moreover, MV Circuit would not have devoted significant resources and time to developing the technology in the RIO Cart had it known that it would be stripped of its property rights in the cart.

**ELEVENTH CAUSE OF ACTION**
**(Negligent Misrepresentation)**
**(Against Kilpatrick Townsend)**

161.    MV Circuit incorporates by reference the allegations set forth in the prior paragraphs of this Complaint.

162.    Kilpatrick Townsend, a law firm, is Omnicell's regular patent counsel. The firm misled and deceived MV Circuit in order to induce MV Circuit to disclose its intellectual property to the law firm and to mislead MV Circuit into believing that neither Rioux Vision nor Omnicell had filed patent applications based on MV Circuit's inventions.

163.    More specifically, Kilpatrick Townsend made, among others, the following false and misleading statements:

- On January 24, 2008, Kilpatrick Townsend concurred with Omnicell's false and misleading statement to MV Circuit that Mr. Daley "is not our regular patent counsel" when, in fact, Mr. Daley's law firm, Kilpatrick Townsend, was Omnicell's regular patent counsel.

- On January 24, 2008, Kilpatrick Townsend concurred with Omnicell's false and misleading statement to MV Circuit that Mr. Daley "would not be involved in developing any patent applications on behalf of Omnicell with respect to any technologies similar to those that are disclosed to him by MV Circuit" when, in fact, Mr. Daley's law firm, Kilpatrick Townsend, was prosecuting Omnicell's patent application related to the technology in the RIO Cart and was actively working on additional patent applications based on identical technology to that which MV Circuit had disclosed to Mr. Daley.

- On January 24, 2008, Kilpatrick Townsend concurred with Omnicell's false and misleading statement to MV Circuit that Mr. Daley "would not share with Omnicell the underlying technological descriptions that [MV Circuit] would disclose to him" when, in fact, Kilpatrick Townsend, Mr. Daley's law firm, was prosecuting a patent application that included the same technology that MV Circuit disclosed to Mr. Daley.

164.    In addition, in order to deceive MV Circuit into believing that neither Rioux Vision nor Omnicell had filed patent applications based on MV Circuit's technology, Kilpatrick Townsend concurred with Omnicell's statement to MV Circuit that MV Circuit should disclose its intellectual property to the law firm so that it could assess the patentability and value of MV Circuit's technology.  Further, in order to find a basis to claim that Rioux Vision or Omnicell had priority over MV Circuit's technology, Kilpatrick Townsend urged MV Circuit to provide him with the "conception dates" for the technology that MV Circuit had invented, and tried to convince MV Circuit that its "conception dates" occurred at a date after Rioux Vision had secretly filed its patent application, without revealing that his purpose was to strip MV Circuit of its patent rights.  Kilpatrick Townsend knew that MV Circuit did not know the significance of the conception dates since it did not know a patent had been filed.  Moreover, Mr. Daley knew that MV Circuit did not have counsel in connection with their discussions or understand the legal meaning under the patent law of a "conception date."

165.    Further, Mr. Daley's focus on "conception dates" evidences that he was more concerned with stripping MV Circuit of its patent rights than he was with assessing the patentability and value of its technologies.

166.    Kilpatrick Townsend made these false and misleading representations to MV Circuit in order to deceive MV Circuit into disclosing its confidential intellectual property to the law firm and strip MV Circuit of its valuable confidential intellectual

property and patent rights.  Kilpatrick Townsend also made these false and misleading statements to MV Circuit in order to deceive MV Circuit into believing that neither Rioux Vision nor Omnicell had filed patent applications based on MV Circuit's technology. MV Circuit justifiably relied on Kilpatrick Townsend's false and misleading statements and, in reliance on those statements, MV Circuit disclosed its confidential intellectual property to Kilpatrick Townsend.

167.    Kilpatrick Townsend had a duty to disclose to MV Circuit that Rioux Vision and Omnicell had filed patent applications that included technology that MV Circuit's employees invented, and the true facts concerning Kilpatrick Townsend's work for Omnicell, in order to dispel or correct the law firm's false and misleading statements.

168.    MV Circuit justifiably relied on Kilpatrick Townsend's false and misleading statements and, in reliance on those statements, MV Circuit disclosed its confidential intellectual property to Kilpatrick Townsend and continued to believe that no patents had been filed.

169.    MV Circuit would not have disclosed its confidential intellectual property to Kilpatrick Townsend had it known that Kilpatrick Townsend was Omnicell's patent counsel, was prosecuting patents on behalf of Omnicell related to the same technology in the RIO Cart, and was actively working on additional related patents for Omnicell.

170.    MV Circuit was damaged by Kilpatrick Townsend's misrepresentations because Kilpatrick Townsend subsequently drafted and filed patent applications based on the confidential information that Mr. Paradissis disclosed to Kilpatrick Townsend and Omnicell.  MV Circuit was further damaged by Kilpatrick Townsend's negligent misrepresentations by, among other things, being deprived of its right to use, license, and

50

patent its confidential intellectual property, including the rights to market and profit from it.  Additionally, MV Circuit lost the financial opportunities and prestige it would have enjoyed had its employees been named as inventors.  Moreover, MV Circuit would not have devoted significant resources and time to developing the technology in the RIO Cart had it known that it would be stripped of its property rights in the cart.

## TWELFTH CAUSE OF ACTION
### (Fraud)
### (Against Kilpatrick Townsend)

171.    MV Circuit incorporates by reference the allegations set forth in the prior paragraphs of this Complaint.

172.    Kilpatrick Townsend, a law firm, is Omnicell's regular patent counsel. The firm intentionally misled and deceived MV Circuit in order to induce MV Circuit to disclose its intellectual property to the law firm and to mislead MV Circuit into believing that neither Rioux Vision nor Omnicell had filed patent applications based on MV Circuit's inventions.

173.    More specifically, Kilpatrick Townsend made, among others, the following false and misleading material statements to MV Circuit:

- On January 24, 2008, Kilpatrick Townsend concurred with Omnicell's false and misleading statement to MV Circuit that Mr. Daley "is not our regular patent counsel" when, in fact, Mr. Daley's law firm, Kilpatrick Townsend, was Omnicell's regular patent counsel.

- On January 24, 2008, Kilpatrick Townsend concurred with Omnicell's false and misleading statement to MV Circuit that Mr. Daley "would not be involved in developing any patent applications on behalf of Omnicell with respect to any technologies similar to those that are disclosed to him by MV Circuit" when, in fact, Mr. Daley's law firm, Kilpatrick Townsend, was prosecuting Omnicell's patent application related to the technology in the RIO Cart and was actively working on additional patent applications based on identical technology to that which MV Circuit had disclosed to Mr. Daley.

51

- On January 24, 2008, Kilpatrick Townsend concurred with Omnicell's false and misleading statement to MV Circuit that Mr. Daley "would not share with Omnicell the underlying technological descriptions that [MV Circuit] would disclose to him" when, in fact, Kilpatrick Townsend, Mr. Daley's law firm, was prosecuting a patent application that included the same technology that MV Circuit disclosed to Mr. Daley.

174.    In addition, Mr. Daley concurred with Omnicell's statement to MV Circuit that MV Circuit should disclose its intellectual property to the law firm so that it could assess the patentability and value of MV Circuit's technology.  Mr. Daley's statement was false because Kilpatrick Townsend had already determined that MV Circuit's technology was patentable and valuable and was designed to induce MV Circuit to disclose its confidential intellectual property to the law firm and to mislead MV Circuit into believing that neither Rioux Vision nor Omnicell had filed patent applications based on MV Circuit's technology.

175.    Kilpatrick Townsend knew that its statements were false and were made with the intent to deceive MV Circuit into disclosing its intellectual property and to deceive MV Circuit into believing that no patent had been filed on the RIO Cart technology.

176.    MV Circuit justifiably relied on Kilpatrick Townsend's false and misleading statements and, in reliance on those statements, MV Circuit disclosed its confidential intellectual property to Kilpatrick Townsend and continued to believe that no patents had been filed.

177.    MV Circuit would not have disclosed its confidential intellectual property to Kilpatrick Townsend or Omnicell had it known that Kilpatrick Townsend was Omnicell's patent counsel, that it was prosecuting patents on behalf of Omnicell related

52

to the same technology that MV Circuit invented in the RIO Cart, and that it was actively

working on additional related patents for Omnicell.

178.    Intellectual property that MV Circuit disclosed to Kilpatrick Townsend

was included in subsequent patent applications that Kilpatrick Townsend prepared and

prosecuted on behalf of Omnicell.  MV Circuit was further damaged by Kilpatrick

Townsend's fraud by, among other things, being deprived of its right to use, license, and

patent its confidential intellectual property, including the rights to market and profit from

it.  Additionally, MV Circuit lost the financial opportunities and prestige it would have

enjoyed had its employees been named as inventors.  Moreover, MV Circuit would not

have devoted significant resources and time to developing the technology in the RIO Cart

had it known that it would be stripped of its property rights in the cart.

### THIRTEENTH CAUSE OF ACTION
**(Conspiracy)**
**(Against Omnicell and Kilpatrick Townsend)**

179.    MV Circuit incorporates by reference the allegations set forth in the prior

paragraphs of this Complaint.

180.    Omnicell and Kilpatrick Townsend agreed to engage in a common scheme

to strip MV Circuit of its patent rights, mislead MV Circuit into disclosing its

confidential intellectual property, and mislead MV Circuit into believing that neither

Rioux Vision nor Omnicell had filed patent applications based on the technology that

MV Circuit had invented.  Omnicell and Kilpatrick Townsend also engaged in a common

scheme to fraudulently conceal from MV Circuit the existence of and their prosecution of

patents on which they knew that MV Circuit employees or independent contractors

should have been named as joint inventors.

181.     Omnicell and Kilpatrick Townsend acted in furtherance of their common scheme when they made, among others, the following false and misleading statements:

- On January 24, 2008, Kilpatrick Townsend concurred with Omnicell's false and misleading statement to MV Circuit that Mr. Daley "is not our regular patent counsel" when, in fact, Mr. Daley's law firm, Kilpatrick Townsend, was Omnicell's regular patent counsel.

- On January 24, 2008, Kilpatrick Townsend concurred with Omnicell's false and misleading statement to MV Circuit that Mr. Daley "would not be involved in developing any patent applications on behalf of Omnicell with respect to any technologies similar to those that are disclosed to him by MV Circuit" when, in fact, Mr. Daley's law firm, Kilpatrick Townsend, was prosecuting Omnicell's patent application related to the technology in the RIO Cart and was actively working on additional patent applications based on identical technology to that which MV Circuit had disclosed to Mr. Daley.

- On January 24, 2008, Kilpatrick Townsend concurred with Omnicell's false and misleading statement to MV Circuit that Mr. Daley "would not share with Omnicell the underlying technological descriptions that [MV Circuit] would disclose to him" when, in fact, Kilpatrick Townsend, Mr. Daley's law firm, was prosecuting a patent application that included the same technology that MV Circuit disclosed to Mr. Daley.

- Kilpatrick Townsend concurred with Omnicell's statement to MV Circuit that MV Circuit should disclose its intellectual property to the law firm so that it could assess the patentability and value of MV Circuit's technology, when Omnicell and Kilpatrick Townsend had already determined that MV Circuit's technology was patentable and valuable.

182.     Intellectual property that MV Circuit disclosed to Kilpatrick Townsend was included in subsequent patent applications that Kilpatrick Townsend prepared and prosecuted on behalf of Omnicell.  MV Circuit was further damaged by Omnicell's and Kilpatrick Townsend's conspiracy to commit tortious acts against MV Circuit by, among other things, being deprived of its right to use, license, and patent its confidential intellectual property, including the rights to market and profit from it.  Additionally, MV Circuit lost the financial opportunities and prestige it would have enjoyed had its employees been named as inventors.  Moreover, MV Circuit would not have devoted

54

significant resources and time to developing the technology in the RIO Cart had it known that it would be stripped of its property rights.

## FOURTEENTH CAUSE OF ACTION
### (Aiding and Abetting Omnicell's and Rioux Vision's Tortious Acts)
### (Against Kilpatrick Townsend)

183.    MV Circuit incorporates by reference the allegations set forth in the prior paragraphs of this Complaint.

184.    Kilpatrick Townsend aided and abetted Omnicell and Rioux Vision in their scheme to fraudulently conceal from MV Circuit the material fact that they intended to and did file patent applications that included technology invented by MV Circuit and the true relationship between Omnicell and Kilpatrick Townsend.  Kilpatrick Townsend also aided and abetted Rioux Vision and Omnicell in their scheme to mislead and deceive MV Circuit into disclosing its confidential intellectual property and into believing that no patents had been filed.

185.    In furtherance of its scheme, Kilpatrick Townsend made, among others, the following false and misleading statements and omissions:

- On January 24, 2008, Kilpatrick Townsend agreed with Omnicell's false and misleading statement to MV Circuit that Mr. Daley "is not our regular patent counsel" when, in fact, Mr. Daley's law firm, Kilpatrick Townsend, was Omnicell's regular patent counsel.

- On January 24, 2008, Kilpatrick Townsend agreed with Omnicell's false and misleading statement to MV Circuit that Mr. Daley "would not be involved in developing any patent applications on behalf of Omnicell with respect to any technologies similar to those that are disclosed to him by MV Circuit" when, in fact, Mr. Daley's law firm, Kilpatrick Townsend, was prosecuting Omnicell's patent application related to the technology in the RIO Cart and was actively working on additional patent applications based on identical technology that MV Circuit had disclosed to Mr. Daley.

- On January 24, 2008, Kilpatrick Townsend agreed with Omnicell's false and misleading statement to MV Circuit that Mr. Daley "would not share with

55

Omnicell the underlying technological descriptions that [MV Circuit] would disclose to him" when, in fact, Kilpatrick Townsend, Mr. Daley's law firm, was prosecuting a patent application that included the same technology that MV Circuit disclosed to Mr. Daley.

- Kilpatrick Townsend concurred with Omnicell's statement to MV Circuit that MV Circuit should disclose its intellectual property to the law firm so that it could assess the patentability and value of MV Circuit's technology, when Omnicell and Kilpatrick Townsend had already determined that MV Circuit's technology was patentable.

186.    Kilpatrick Townsend knowingly and substantially assisted the scheme to defraud MV Circuit and strip it of its patent rights by making these false statements and by drafting and prosecuting patent applications on Omnicell's behalf that Kilpatrick Townsend knew included technology that MV Circuit had invented.

187.    MV Circuit would not have disclosed its confidential intellectual property to Kilpatrick Townsend had it known that Kilpatrick Townsend was Omnicell's regular patent counsel, was prosecuting patents on behalf of Omnicell related to the same technology in the RIO Cart, and was actively working on additional related patents for Omnicell.

188.    Intellectual property that MV Circuit disclosed to Kilpatrick Townsend was included in subsequent patent applications that Kilpatrick Townsend prepared and prosecuted on behalf of Omnicell.  MV Circuit was further damaged by, among other things, being deprived of its right to use, license, and patent its confidential intellectual property, including the rights to market and profit from it.  Additionally, MV Circuit lost the financial opportunities and prestige it would have enjoyed had its employees been named as inventors.  Moreover, MV Circuit would not have devoted significant resources and time to developing the technology in the RIO Cart had it known that it would be stripped of its property rights in the cart.

56

## JURY REQUEST

189.    MV Circuit demands a trial by jury.

## REQUEST FOR RELIEF

WHEREFORE, MV Circuit requests that judgment be entered in its favor and against defendants as follows:

a.   An Order correcting the names of the inventors on U.S. Patent No. 8,180,485 to include Markos Paradissis, William Colley, Neil Kammiller, and Michael Mott;

b.   An Order correcting the names of the inventors on U.S. Patent No. 8,773,270 to include Markos Paradissis and Michael Mott;

c.   An Order correcting the names of the inventors on U.S. Patent No. 8,812,153 to include Markos Paradissis, William Colley and Michael Mott;

d.   An Order compelling Omnicell to correct the names of the inventors on International Patent Application No. PCT/US2007/003765 to include Markos Paradissis, William Colley, Neil Kammiller, and Michael Mott;

e.   An Order compelling Omnicell to correct the names of the inventors on International Patent Application PCT/US2011/063597 to include Markos Paradissis, William Colley, Neil Kammiller, and Michael Mott;

f.   An Order compelling Omnicell to correct the names of the inventors on International Patent Application PCT/US2011/0635505 to include Markos Paradissis, William Colley, and Michael Mott;

g.   An Order compelling Omnicell to correct the names of the inventors on

any other patents that may issue from patent applications that Omnicell may have filed that are based on the same technology that MV Circuit's employees or independent contractors invented as described in this Complaint;

h.  An Order establishing MV Circuit as owner of all right, title and interest in U.S. Patent No. 8,180,485 as of the date of issuance of the patent;

i.  An Order establishing MV Circuit as owner of all right, title and interest in U.S. Patent No. 8,773,270 as of the date of issuance of the patent;

j.  An Order establishing MV Circuit as owner of all right, title and interest in U.S. Patent No. 8,812,153 as of the date of issuance of the patent;

k.  An award of damages against Omnicell and Rioux Vision for payments that Rioux Vision and Omnicell would have made to MV Circuit for MV Circuit's assignment of ownership rights in the '485, '270, and '153 patents;

l.  An award of damages against Omnicell and Rioux Vision reflecting the value of an exclusive license from MV Circuit for the technology included in the '485, '270, and '153 patents;

m.  An award of damages against Omnicell and Rioux Vision for the profits Omnicell and Rioux Vision obtained as a result of the exclusive rights afforded by the '485, '270, and '153 patents;

n.  An Order directing Omnicell to provide MV Circuit with an accounting of, among other things, sales, licenses, and profits it has received from products practicing the technology claimed in the '485, '270, and '153

patents;

o. An award of damages against defendants that MV Circuit suffered as the

result of defendants' fraud and other tortious conduct alleged herein;

p. An award of exemplary damages in view of the willfulness and

outrageousness of defendants' conduct;

q. An award of all the costs and expenses of suit incurred by MV Circuit,

including attorneys' fees; and

r. An award for such other and further relief as this Court deems just

and proper.

Dated: September 12, 2014                    Respectfully submitted,


                                             By:___/s/ Luis A. Carrión___
                                             Luis A. Carrión
                                             Renner, Otto, Boisselle & Sklar, LLP
                                             1621 Euclid Avenue, 19th Floor
                                             Cleveland, OH 44115

Of Counsel:

James A. Fussell, III
Janet L. Goetz
Peter J. Toren
Sean J. Williams
Weisbrod Matteis & Copley PLLC
1200 New Hampshire Ave., NW
Suite 600
Washington, DC 20036
202-499-7900
jfussell@wmclaw.com
jgoetz@wmclaw.com
ptoren@wmclaw.com
swilliams@wmclaw.com