## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| MV CIRCUIT DESIGN, INC.,<br><br>                    Plaintiff,<br><br>     v.<br><br>OMNICELL, INC, RIOUX VISION, INC.,<br>and KILPATRICK TOWNSEND &<br>STOCKTON LLP,<br><br>                    Defendants. | C.A. No. 1:14-cv-0202<br><br>Judge Dan Aaron Polster<br>Magistrate Judge Nancy A. Vechiarelli<br><br>**JURY TRIAL DEMANDED** |

## MV CIRCUIT DESIGN, INC.'S CONSOLIDATED OPPOSITION
## <u>TO DEFENDANTS' MOTIONS TO DISMISS</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 2

STANDARD OF REVIEW ................................................................................................... 8

ARGUMENT .................................................................................................................... 11

I.      The Claims for Fraud and Fraudulent Concealment Are Adequately Pleaded ................. 11

        A.      Defendants' Statements to MV Circuit Were Materially False. .......................... 14

        B.      Omnicell Also Had an Independent Duty to Disclose the Pending Patent
                Applications to MV Circuit Under the Facts Present Here .................................. 18

        C.      Kilpatrick Cannot Evade Liability for Fraud for Defendants' False Words and
                Misleading Conduct. .................................................................................... 21

II.     MV Circuit Has Adequately Pleaded Negligent Misrepresentation. ............................... 23

III.    Kilpatrick Is Not Immune from Liability ........................................................................ 25

IV.     MV Circuit Justifiably Relied on and Was Damaged by Defendants' Fraudulent
        Misrepresentations and Non-Disclosures. ...................................................................... 27

V.      MV Circuit's Fraud and Negligent Misrepresentation Claims Are Timely. ..................... 28

        A.      Defendants' Fraudulent Scheme Tolled the Statute of Limitations. ..................... 29

        B.      MV Circuit's Claims Did Not Accrue Until Omnicell's Patents Issued and MV
                Circuit Suffered Actual Damages. .................................................................. 32

VI.     MV Circuit Has Stated a Claim against Kilpatrick For Aiding and Abetting. ................. 34

VII.    MV Circuit's Conspiracy Claim Is Well-Pleaded Under California, Colorado, and Ohio
        Law. ........................................................................................................................... 36

CONCLUSION ................................................................................................................. 38

# TABLE OF AUTHORITIES

*ABB, Inc. v. Workstations Exp., L.L.C.*,
    2012 WL 967060 (N.D. Ohio Mar. 21, 2012) ................................................................. 25

*ATM Exch., Inc. v. Visa Int'l*,
    2008 WL 3843530 (S.D. Ohio Aug. 14, 2008) ......................................................... 24, 25

*Adv. Cardiovascular Sys. v. SciMed Life Sys.*,
    988 F.2d 1157 (Fed. Cir. 1993) ...................................................................................... 31

*Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*,
    22 F. Supp. 2d 695 (N.D. Ohio 1998) ............................................................................ 17

*American Energy Corp. v. Tex. E. Transmission, LP*,
    701 F. Supp. 2d 921 (S.D. Ohio 2010) .......................................................................... 29

*Amadasu v. Christ Hosp.*,
    514 F.3d 504 (6th Cir. 2008) .......................................................................................... 37

*Applera Corp. Applied Biosystems Grp. v. Illumina, Inc.*,
    2008 WL 927963 (N.D. Cal. Apr. 4, 2008) .................................................................... 32

*Astarte, Inc. v. Pac. Indus. Sys.*,
    865 F. Supp. 693 (D. Colo. 1994) .................................................................................. 38

*Auto Chem Laboratories, Inc. v. Turtle Wax, Inc.*
    2008 WL 4372698 (S.D. Ohio July 31, 2008) ............................................................... 30

*Auto Chem Laboratories, Inc. v. Turtle Wax, Inc.*
    2008 WL 4372697, at *14 (S.D. Ohio Sep. 23, 2008) ....................................................17

*Avery v. Barsky*,
    2013 WL 1663612 (D. Nev. Apr. 17, 2013) .................................................................. 32

*BAC Home Loans Servicing LP v. Fall Oaks Farm L.L.C.*,
    848 F. Supp. 2d 818 (S.D. Ohio 2012) .......................................................................... 10

*Baker v. Pfeifer*,
    940 F. Supp. 1168 (S.D. Ohio 1996) ............................................................................. 22

*Baltzer v. North Carolina*,
    161 U.S. 240 (1896) ....................................................................................................... 33

*Bays v. Hunter Sav. Asso.*,
    539 F. Supp. 1020 (S.D. Ohio 1982) .................................................................. 15, 16, 17

*Berger v. Palay*,
    1981 WL 4643 (Ohio Ct. App. 1981) ...............................................................................

*Boyd v. T'Kach*,

2008 WL 784398 (D. Colo. Mar. 20, 2008) ........................................................ 36

*C.B. Fleet Co. v. Colony Specialty Ins. Co.*,
2013 WL 1908098 (N.D. Ohio May 7, 2013) ...................................................... 34

*CCB Ohio L.L.C. v. Chemque, Inc.*,
649 F. Supp. 2d 757 (S.D. Ohio 2009) ............................................................... 24

*CadleRock Joint Venture, L.P. v. Royal Indem. Co.*,
2012 WL 511570 (N.D. Ohio Feb. 15, 2012) ...................................................... 34

*Campmor, Inc. v. Brulant, L.L.C.*,
2010 WL 1381000 (D.N.J. Apr. 1, 2010) ........................................................... 24

*Carnegie Cos. v. Summit Props.*,
918 N.E.2d 1052 (Ohio Ct. App. 2009) .............................................................. 14

*Carrier Corp. v. Outokumpu Oyj*,
673 F.3d 430 (6th Cir. 2012) ............................................................................. 32

*Cent. States Stamping Co. v. Terminal Equip. Co.*,
727 F.2d 1405 (6th Cir. 1984) ........................................................................... 20

*Children's Hosp. v. Ohio Dep't of Pub. Welfare*,
433 N.E.2d 187 (Ohio 1982) ............................................................................. 32

*Christou v. Beatport, L.L.C.*,
849 F. Supp. 2d 1055 (D. Colo. 2012) ............................................................... 36

*Coley v. Lucas Cnty.*,
2014 WL 272667 (N.D. Ohio Jan. 23, 2014) ...................................................... 37

*Columbia Natural Res. v. Tatum*,
58 F.3d 1101 (6th Cir. 1995) ......................................................................... 8,

*Columbus Green Bldg. Forum v. State*,
980 N.E.2d 1 (Ohio Ct. App. 2012) ................................................................... 33

*Copeland v. Delvaux*,
623 N.E.2d 569 (Ohio Ct. App. 1993) .................................................................. 3

*Culy Const. & Escavating, Inc. v. Laney Directional Drilling Co.*,
2012 WL 2071804 (S.D. Ohio June 8, 2012) ...................................................... 25

*Davidson v. Hayes*,
590 N.E.2d 18 (Ohio Ct. App. 1990) ................................................................. 18

*Durham v. Seymour*,
161 U.S. 240 (1896) .......................................................................................... 33

*Equal Justice Found. v. Deutsche Bank Trust Co. Ams.*,

2006 WL 2795211 (S.D. Ohio Sept. 27, 2006) ................................................................ 16

*Escue v. Sequent, Inc.*,
2010 WL 3365933 (S.D. Ohio Aug. 24, 2010) ................................................................ 22

*Ethicon, Inc. v. U.S. Surgical Corp.*,
135 F.3d 1456 (Fed. Cir. 1998) ................................................................ 28

*Flagstar Bank, F.S.B. v. Airline Union's Mtge. Co.*,
947 N.E.2d 2d 672 (Ohio 2011) ................................................................ 32

*Fraidin v. Weitzman*,
93 Md. App. 168 (1992) ................................................................ 38

*GAF Bldg. Materials Corp. v. Elk Corp.*,
90 F.3d 479 (Fed. Cir. 1996) ................................................................ 33

*General Electric Co. v. Wilkins*,
2011 WL 3163348 (E.D. Cal. July 26, 2011) ................................................................ 31

*Gosden v. Louis*,
687 N.E.2d 481 (Ohio Ct. App. 1996) ................................................................ 36, 37

*Gutter v. Dow Jones, Inc.*,
490 N.E.2d 898 (Ohio 1986) ................................................................ 24

*Haddon View Inv. Co. v. Coopers & Lybrand*,
436 N.E.2d 212 (Ohio 1982) ................................................................ 24

*Hale v. Enerco Grp., Inc.*,
2011 WL 49545 (N.D. Ohio Jan. 5, 2011) ................................................................ 8, 11

*Hodell-Natco Indus. v. SAP Am., Inc.*,
13 F. Supp. 3d 786 (N.D. Ohio 2014) ................................................................ 24, 25

*Holmes v. Young*,
885 P.2d 305 (1994) ................................................................ 35

*Horen v. Bd. of Educ.*,
594 F. Supp. 2d 833 (N.D. Ohio 2009) ................................................................ 37

*Hunter v. Citibank, N.A.*,
2010 WL 2509933 (N.D. Cal. Jan. 28, 2013) ................................................................ 35

*In re Nat'l Century Fin. Enters.*,
580 F. Supp. 2d 630 (S.D. Ohio 2008) ................................................................ 24

*Jordan v. Global Natural Res.*,
564 F. Supp. 59 (S.D. Ohio 1983) ................................................................ 10

*LeRoy v. Allen, Yurasek & Merklin*,

872 N.E.2d 254 (Ohio 2007) ............................................................. 25, 26, 27

*Lee v. State Farm Mut. Auto Ins. Co.*,
249 F.R.D. 662 (D. Colo. 2008) .................................................... 22, 23

*Liebnow v. Bos. Enters.*,
296 P.3d 108 (Colo. 2013) ............................................................. 14

*Likover v. Sunflower Terrace II, Ltd.*,
696 S.W.2d 468 (Tex. App.—Houston [1st Dist.] 1985) ...................... 38

*Logan Farms v. HBH, Inc.*,
282 F. Supp. 2d 776 (S.D. Ohio 2003) ............................................ 34

*Luciana v. Schiavone*,
2001 WL 1842457 (S.D. Ohio Jan. 2, 2001) ...................................... 26

*Lutz v. Chesapeake Appalachia, L.L.C.*,
717 F.3d 459 (6th Cir. 2013) ........................................................ 29, 31, 32

*Majestic Steel Serv., Inc. v. Disabato*,
1999 WL 961465 (Ohio Ct. App. Oct. 21, 1999) .............................. 14

*Marsh v. Nichols, Shepard & Co.*,
128 U.S. 605 (1888) ..................................................................... 33

*McCamish v. F.E. Appling Interests*,
991 S.W.2d 787 (Tex. 1999) .......................................................... 27

*McGlone v. Bell*,
681 F.3d 718 (6th Cir. 2012) ......................................................... 8

*Michaels Bldg. Co. v. Ameritrust Co.*,
848 F.2d 674 (6th Cir. 1988) ........................................................ 10, 11

*Monroe v. Forum Health*,
2012 WL 6727388 (Ohio Ct. App. Dec. 24, 2012) ............................ 26

*Mulch Mfg. v. Adv. Polymer Solutions, L.L.C.*,
947 F. Supp. 2d 841 (S.D. Ohio 2013) ........................................... 15

*Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Prods., Inc.*,
2007 WL 894833 (S.D. Ohio Mar. 22, 2007) ................................... 24, 25

*Onyx Envtl. Services, LLC v. Maison*,
. 407 F. Supp. 2d 874 (N.D. Ohio 2005) .........................................22

*Onyx Pharm., Inc. v. Bayer Corp.*,
2011 WL 7905185 (N.D. Cal. May 10, 2011) ................................... 31

*OrbusNeich Med. Co., Ltd., BVI v. Bos. Sci. Corp.*,

694 F. Supp. 2d 106 (D. Mass. 2010) ................................................................ 31

*Orshoski v. Krieger*,
2001 WL 1388037, at *4-6 (Ohio Ct. App. 2004) ...............................................27

*Owner Operator Indep. Drivers Ass'n v. Comerica Bank*,
540 F. Supp. 2d 925 (S.D. Ohio 2008) ............................................................... 29

*Pavicich v. Santucci*,
85 Cal. App. 4th 382 (2000) ......................................................................... 37, 38

*People ex rel. Peters v. Dist. Court*,
951 P.2d 926 (Colo. 1998) ................................................................................ 14

*Portney v. Ciba Vision Corp.*,
2009 WL 305488 (C.D. Cal. Feb. 6, 2009) ........................................................ 31

*Primus Auto. Fin. Serv. v. Otto-Wal, Inc.*,
1999 WL 690192 (N.D. Ohio Aug. 16, 1999) .................................................... 16

*Res. Title Agency, Inc. v. Morreale Real Estate Servs.*,
314 F. Supp. 2d 763 (N.D. Ohio 2004) .............................................................. 32

*Rheinfrank v. Abbot Labs.*,
2013 WL 4067826 (S.D. Ohio Aug. 12, 2013) ............................................... 8, 23

*Rubin v. Schottenstein, Zox & Dunn*,
143 F.3d 263 (6th Cir. 1998) ............................................................................. 22

*Russ v. TRW, Inc.*,
570 N.E.2d 1076 (Ohio 1991) ...................................................................... 17, 21

*SST Castings, Inc. v. Amana Appliances, Inc.*,
2005 WL 1075014 (S.D. Ohio Apr. 21, 2005) ................................................... 17

*Semiconductor Energy Lab. v. Samsung Elecs. Co.*,
204 F.3d 1368 (Fed. Cir. 2000) ......................................................................... 33

*Sender v. Mann*,
423 F. Supp. 2d 1155, 1175 (D. Colo. 2008) .....................................................35

*Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*,
107 Cal. App. 4th 54 (2003) .............................................................................. 38

*Shieldmark, Inc. v. Creative Safety Supply, L.L.C.*,
2012 WL 6824003 (N.D. Ohio Oct. 9, 2012) .................................................... 26

*Sirlouis v. Four Winds Int'l*,
2012 WL 1068709 (N.D. Ohio Mar. 29, 2012) .................................................. 34

*St. John's Univ. v. Bolton*,

757 F. Supp. 2d 144 (E.D.N.Y. 2010) ............................................... 31

*Stueve Bros. Farms, L.L.C. v. Berger Kahn,*
222 Cal. App. 4th 303 (2013) ............................................... 38

*Textron Fin. Corp. v. Nationwide Mut. Ins. Co.,*
684 N.E.2d 1261 (Ohio Ct. App. 1996) ............................................... 25

*Unger v. Abidar,*
1987 WL 14950 (Ohio Ct. App. July 30, 1987) ............................................... 15, 16

*Univ. of Colo. Found. v. Am. Cyanamid Co.,*
880 F. Supp. 1387 (D. Colo. 1995) ............................................... 19, 32

*Univ. of Colo. Found. v. Am. Cyanamid Co.,*
196 F.3d 1366 (Fed. Cir. 1999) ...............................................19

*Univ. of Colo. Found. v. Am. Cyanamid Co.,*
974 F. Supp. 1339 (D. Colo. 1997) ...............................................19, 30

*Vector Research v. Howard & Howard Att'ys P.C.,*
76 F.3d 692 (6th Cir. 1996) ............................................... 26

*Vega v. Jones, Day, Reavis & Pogue,*
17 Cal. Rptr. 3d 26 (Ct. App. 2004) ............................................... 20

*Velotta v. Leo Petronzio Landscaping, Inc.,*
433 N.E.2d 147 (Ohio 1982) ............................................... 33

*Veracity Grp., Inc. v. Cooper-Atkins Corp.,*
2012 WL 203415 (S.D. Ohio Jan. 24, 2012) ............................................... 8, 32

*Vinecourt Landscaping v. Kleve,*
2013 WL 6875468 (Ohio Ct. App. Dec. 31, 2013) ............................................... 32, 33

*W. & S. Life Ins. Co. v. JPMorgan Chase Bank,*
2014 WL 5308422 (S.D. Ohio Oct. 16, 2014) ............................................... 8

*Wilkey v. Hull,*
Slip Op., Case No. 07cv160 (S.D. Ohio Jan. 3, 2008) ...............................................27

*Wisecup v. Gulf Dev.,*
56 Ohio App. 3d 162 (1989) ............................................... 32

*Word of God Church v. Stanley,*
2011 WL 1641714 (Ohio Ct. App. Apr. 29, 2011) ............................................... 15

*Wyatt v. Union Mortgage Co.,*
598 P.2d 45 (Cal. 1979) ............................................... 36

*Young v. Hamilton*,
  92 F. App'x 389 (9th Cir. 2003) ........................................................... 36

**Rules**

Fed. R. Civ. P. 9(b) ....................................................................... 9, 10

Fed. R. Civ. P. 12(b)(6) ..................................................................... 8

**Other Authorities**

Kenneth D. Bassinger, *Unsettled Expectations In Patent Law: Festo and the Moving Target of Claim Equivalence*, ........................................................................ 33

Ohio Rev. Code Ann. § 2305.09 (LexisNexis 2010) ................................... 29

Restatement (Second) of Torts (1977) ..................................................... 15

MV Circuit Design, Inc. ("MV Circuit") respectfully submits this consolidated brief in opposition to (1) Rioux Vision, Inc.'s ("Rioux") and Omnicell Inc.'s ("Omnicell") Motion to Dismiss Counts 4-9 and 13 (Dkt. No. 25); and (2) Kilpatrick Townsend & Stockton LLP's ("Kilpatrick") Motion to Dismiss Counts 10-14 (Dkt. No. 24).  (Rioux, Omnicell, and Kilpatrick are collectively referred to as "Defendants.")  ("Omnicell" will often refer to Omnicell and Rioux.)  For the reasons discussed below, the Court should deny Defendants' Motions to Dismiss Counts 7-14.  MV Circuit consents to dismissal of Counts 4-6, alleging claims related to certain international PCT patents.  Omnicell has not moved to dismiss Counts 1-3, in which MV Circuit alleges that its employees are joint inventors on certain patents filed by Rioux and Omnicell, and thus seeks correction of inventorship against Omnicell.  Therefore, Counts 1-3 are not before the Court on Defendants' Motions.

## INTRODUCTION

This lawsuit arises out of Defendants' scheme to strip MV Circuit of its patent rights in technology it jointly invented with Rioux and Omnicell over a period of many years.  When Omnicell learned that MV Circuit was a joint inventor, it, together with its law firm Kilpatrick, set in motion a conspiracy to mislead and defraud MV Circuit to disclose its intellectual property and falsely believe that no patent application had been filed on the cart technology.  Specifically, under the pretense of conducting an "assessment" to determine the patentability and value of MV Circuit's intellectual property, Defendants induced MV Circuit to disclose its proprietary information to Kilpatrick.  Defendants assured MV Circuit that the Kilpatrick attorney they identified  was not Omnicell's regular patent counsel and misled MV Circuit to believe that no patents related to MV Circuit's technology had been filed or were being prosecuted.  In fact, however, Kilpatrick was Omnicell's regular patent counsel, was already prosecuting patent applications related to MV Circuit's technology, and later filed additional patent applications on

behalf of Omnicell claiming the very technology that MV Circuit disclosed.

MV Circuit's Complaint contains page after page of detailed allegations.  Under any reading of the applicable standard requiring particularity, MV Circuit meets and exceeds its pleading obligations.  Nevertheless, Defendants have moved to dismiss MV Circuit's tort claims, relying on facts outside of the Complaint, contradicting facts alleged in the Complaint, and asking the Court to draw inferences in their favor.  Defendants' Motions to dismiss the tort claims in the Complaint should be denied.

## FACTUAL BACKGROUND

MV Circuit – an engineering and circuit design company employing an accomplished team of engineers – developed and conceived key technology for a commercially successful mobile medical cart known as the RIO Cart.  (Compl., ¶ 1, 10.)  MV Circuit began developing medical-cart technology in 2001, when Rioux, whose employees lacked MV Circuit's engineering expertise, approached MV Circuit to develop technology that would later be incorporated into the RIO Cart.  (*Id.*, ¶¶ 22-23.)  Over the next six years, the companies formed a close and confidential relationship of trust, working together to invent different features of the medical cart.  (*Id.*, ¶ 22.)

MV Circuit's engineering team developed and conceived the RIO Cart's core technology, including most of its hardware, software, and firmware.  (*Id.*, ¶¶ 1, 12, 23, 28-34.)  MV Circuit spent hundreds of thousands of dollars researching and developing the technology with the understanding that it would share in the RIO Cart's commercial success.  (*Id.*, ¶¶ 23-24.)  Indeed, an executive at Rioux, intent on deceiving MV Circuit to continue working on the cart, asked MV Circuit's owner how he planned to spend all of the money he would make on the cart.  (*Id.*, ¶ 24.)  Rioux certainly knew that MV Circuit's employees were joint inventors of much of the technology on the cart, and repeatedly asked MV Circuit to license its intellectual property to

Rioux.  (*Id.*, ¶ 2.)

Unbeknownst to MV Circuit, however, while the parties were still collaborating closely on the RIO Cart's development, on February 11, 2006, Rioux secretly filed U.S. Provisional Application No. 60/772,416 (the "'416 Application") on the medical cart technology, falsely claiming that Rioux's employee, Ray Reckelhoff, was the sole inventor.  (*Id.*, ¶¶ 37-39.)  On February 12, 2007, Rioux secretly filed another (non-provisional) patent application, claiming priority to the '416 Application.  (*Id.*, ¶ 41.)  Two days after secretly filing its patent application, Rioux sent MV Circuit a draft license agreement, incorrectly dated before the date of the patent application, which provided that MV Circuit would transfer its intellectual property rights to Rioux.  (*Id.*, ¶¶ 44-46.)  MV Circuit remained unaware that Rioux had filed for patents on the technology MV Circuit's employees had invented, and ultimately refused to transfer its intellectual property.  (*Id.*)  On May 15, 2012, the '263 Application ultimately issued as U.S. Patent No. 8,180,485 (the "'485 Patent").  (*Id.*)

After secretly filing its patent applications falsely claiming that its employee was the sole inventor of the cart technology, on November 29, 2007, Omnicell purchased Rioux, including all of its intellectual property, for $26 million.  (*Id.*, ¶ 48.)  Soon thereafter, attorneys in the Denver office of Kilpatrick assumed control over prosecuting the Omnicell patent applications previously filed by Rioux.  (*Id.*, ¶ 52.)  After learning of the sale, on December 17, 2007, Markos Paradissis, the founder and CEO of MV Circuit, met with Omnicell executives in California, and informed them that MV Circuit owned intellectual property incorporated in the RIO Cart.  (*Id.*, ¶ 49.)  At the conclusion of the meeting, Omnicell suggested it was receptive to purchasing MV Circuit's intellectual property and told Mr. Paradissis that its attorneys would contact him to continue discussions.  (*Id.*)

Omnicell was undoubtedly surprised to discover that Rioux did not own all of the intellectual property in the medical cart, as it had represented during the sale.  (*Id.*, ¶ 48.) However, rather than disclose the pending patent application to MV Circuit, correct the application, or pay MV Circuit for its intellectual property, Omnicell instead set in motion a scheme to conceal the theft of MV Circuit's intellectual property rights, further deceive MV Circuit, and induce it to divulge its confidential intellectual property.

On January 22, 2008, Bob Schmid, Omnicell's Associate General Counsel, telephoned Mr. Paradissis, and told him that, in order for Omnicell to "assess" the value and patentability of MV Circuit's intellectual property, MV Circuit should disclose its confidential technology to Omnicell counsel that would be selected for that purpose.  (*Id.*, ¶ 50.)  The next day, Mr. Schmid emailed Mr. Paradissis to summarize their conversation, writing in pertinent part:

> I have identified patent counsel with the Townsend and Townsend and Crew law firm to whom you can disclose information relating to the IP that you believe relates to the Rioux Vision carts.  This counsel would review this information and possibly discuss it further with you and/or your people.  The purpose of the review and discussion is to enable him to provide to Omnicell his assessment of the patentability of these features as well as the overall value of the technology behind these features.  He would not share with Omnicell the underlying technological descriptions that you would disclose to him but would provide the assessment mentioned above.  For your information, although this counsel is solely Omnicell's counsel not the counsel of MV Circuit, this individual is not our regular patent counsel and would not be involved in developing any patent applications on behalf of Omnicell with respect to any technologies similar to those that are disclosed to him by MV Circuit.[1]

(*Id.*)  Mr. Schmid then sent a copy of the e-mail to Mr. Paradissis and William J. Daley, the attorney in Kilpatrick's Denver office referred to in the email.  (*Id.*, ¶ 51.)  Accordingly, MV

---

[1] Contrary to Defendants' unfounded assertions, MV Circuit did not omit "key passages" of the Schmid/Daley email from the Complaint.  (Omnicell Br. at 3; Kilpatrick Br. at 3.)  Aside from some pleasantries at the beginning and end of the email, the only portions MV Circuit did not quote are the following: "Omnicell remains free to develop rights with respect to any similar technologies through patents or otherwise.  Omnicell would be responsible for the legal fees generated by this counsel in providing the assessments mentioned above.  MV Circuit, Inc. would remain responsible for the time and resources expended by its people in providing the information to Omnicell's counsel." (Kilpatrick Br. at 3.)

Circuit received the email showing that Mr. Daley had also received a copy and therefore understood that the email reflected the proposed ground rules proposed and agreed to by Omnicell and Kilpatrick pursuant to which MV Circuit would disclose its confidential intellectual property.

The clear import of the email was that MV Circuit could be comfortable divulging its confidential intellectual property in the cart because Omnicell had located patent counsel who was not otherwise involved with Omnicell, was not Omnicell's patent counsel, would not be involved in developing any patent applications for Omnicell on similar technology, and would not share any technological descriptions with Omnicell.  The email also suggested that Omnicell was interested in acquiring MV Circuit's technology and, if Omnicell determined that it was patentable, filing a patent.  The email thereby also suggested that no patent application had already been filed that included MV Circuit's inventions on the RIO Cart.

Relying on the assurances and ground rules set forth in the email, MV Circuit agreed to disclose its confidential intellectual property to Kilpatrick.  (*Id*.)  Contrary to the representations in the email, however, Kilpatrick was at that time Omnicell's regular patent counsel.  (*Id.*, ¶ 52.) Indeed, attorneys from Kilpatrick's same Denver office as Mr. Daley were already prosecuting patent applications on Omnicell's behalf related to the same medical cart technology.  (*Id.*, ¶¶ 52-54.)

Beginning on January 28, 2008, Mr. Paradissis, who was not represented by counsel, disclosed MV Circuit's confidential intellectual property to Mr. Daley.  (*Id.*, ¶ 55.)  On February 1, 2008, Mr. Daley sent Mr. Paradissis a "summary/outline" of the inventions they had discussed, which included a Drawer System, Wireless Linking System, HIPPA switch, Guide

Lights, and Power System Controller.[2]  (*Id.*, ¶ 56.)  Mr. Daley further pressed MV Circuit for details about the "conception dates" of MV Circuit's inventions, obviously trying to establish a priority date that would benefit his client Omnicell, though Mr. Paradissis did not understand the legal import of the subject at the time.  (*Id.*, ¶¶ 56-57.)  Ultimately, MV Circuit and Omnicell failed to reach an agreement for Omnicell to purchase MV Circuit's intellectual property, but Kilpatrick learned important information about MV Circuit's intellectual property related to the medical cart that was eventually included in patent applications that Kilpatrick prepared and filed on Omnicell's behalf.  (*Id.*, ¶ 60.)

By no later than early 2008, Omnicell knew that MV Circuit, rather than Rioux, had the expertise required to develop the technology in the RIO Cart and that MV Circuit had, in fact, conceived of and developed much of the technology for the Cart.  (*Id.*)  Further, shortly after acquiring Rioux, Omnicell had hired Ray Reckelhoff, Rioux's former employee listed as the sole inventor on the patent application, presumably to help Omnicell learn more about the Cart technology.  (*Id.*, ¶ 48.)  Within a very short time, Omnicell terminated Mr. Reckelhoff, undoubtedly having realized that he was not capable of having invented all of the technology included in the patent.  (*Id.*)

Nevertheless, on December 6, 2010, Kilpatrick secretly filed on behalf of Omnicell U.S. Application No. 61/420,262 (the "'262 Application").  (*Id.*, ¶ 62.)  The '262 Application, entitled "Medication Dispensing Cart," named seven Omnicell employees as inventors, claiming that they had invented technology that MV Circuit had disclosed to Kilpatrick.  (*Id.*)  Indeed, the '262 Application described multiple inventions that MV Circuit had disclosed to Mr. Daley and that were listed in the "summary/outline" that Mr. Daley had discussed with MV Circuit, including

---

[2] The Complaint provides a detailed description of these features.  (*See* Compl., ¶¶ 27-34.)

the Computer Controller, Power System Controller, Management Board, Guide Lights, HIPPA Switch, and Fuel Gauge.  (*Id.*, ¶¶ 62-64.)  A year later, on December 6, 2011, Kilpatrick secretly filed on behalf of Omnicell U.S. Application No. 13/312,374 (the "'374 Application"), which claims priority to the '262 Application, and would later issue on July 8, 2014 as U.S. Patent No. 8,773,270 (the "'270 Patent").  (*Id.*, ¶ 65.)  The '374 Application and '270 Patent each contain at least two claims that MV Circuit conceived of, developed, and discussed with Mr. Daley – namely, inventions relating to Guide Lights, a Computer Controller, and visual indicators.  (*Id.*, ¶¶ 65-66.)

In addition, on May 1, 2012, Kilpatrick secretly filed U.S. Application No. 13/461,615, which issued on August 19, 2014 as U.S. Patent No. 8,812,153 (the "'153 Patent").  (*Id.*, ¶¶ 68-69.)  The '615 Application and the '153 Patent also include technology that MV Circuit had conceived of, developed, and discussed with Mr. Daley, including a Computer Controller and Management Board.  (*Id.*, ¶ 69.)[3]  Omnicell has not moved to dismiss MV Circuit's claims in Counts 1-3 of the Complaint alleging that it was a joint inventor on the RIO Cart technology.

Omnicell and MV Circuit did not discontinue their close business relationship until 2011, at which point MV Circuit sought to license its intellectual property to other businesses.  (*Id.*, ¶¶ 71.)  During the course of these activities, on May of 2013, MV Circuit discovered that the '485 Patent had issued and had been prosecuted by Kilpatrick.  (*Id.*, ¶¶ 71-72.)

---

[3] Omnicell claims that "at the time of the Schmid email in January 2008, before MV disclosed anything to Mr. Daley, Rioux Vision had already filed patent applications directed to the medical cart technology at issue in the Complaint," implying that MV Circuit therefore could not have been damaged by the disclosures it made to Mr. Daley.  (Omnicell Br. at 4.)  Omnicell also provides a chart supposedly demonstrating that "most of the patent applications referenced in the Complaint were filed prior to January 2008."  *Id.*  However, as the Complaint alleges, Omnicell in fact filed patent applications after MV Circuit disclosed its technology to Kilpatrick and many of the alleged "filing dates" provided in Omnicell's chart are simply wrong.  Omnicell filed the '374 application, which issued as the '270 patent, on December 6, 2011.  (Compl., ¶ 65.)  Omnicell also filed the '615 application, which issued as the '153 patent, on May 1, 2012.  (*Id.*, ¶ 68.)

## STANDARD OF REVIEW

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim are viewed "with disfavor" and are "rarely granted."  *Veracity Grp., Inc. v. Cooper-Atkins Corp., Inc.*, 2012 WL 203415, at *2 (S.D. Ohio Jan. 24, 2012) (citing *Nuchols v. Berrong*, 141 Fed. Appx. 451, 453 (6th Cir. 2005)); *see also McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012).  Indeed, such motions are granted "only in cases where there are simply not 'enough facts to state a claim to relief that is plausible on its face.'"  *Hale v. Enerco Grp., Inc.*, 2011 WL 49545, at *4 (N.D. Ohio Jan. 5, 2011) (Polster, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (denying motion to dismiss fraud and conspiracy claims where plaintiffs' allegations "are plausible and raise a reasonable expectation that discovery will reveal evidence to support their claims").  In turn, a "'claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Western & Southern Life Ins. Co. v. JPMorgan Chase Bank, N.A.*, 2014 WL 5308422, at *4 (S.D. Ohio Oct. 16, 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "While reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and treat all well-pleaded allegations contained therein as true." *Rheinfrank v. Abbot Labs.*, 2013 WL 4067826, at *1 (S.D. Ohio Aug. 12, 2013) (quotation marks and citation omitted) (denying motion to dismiss fraud and negligent misrepresentation claims).  Furthermore, "[w]hen an allegation is capable of more than one inference, it must be construed in the plaintiff's favor."  *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).

Here, Defendants repeatedly invite the Court to violate these fundamental principles by arguing facts outside the Complaint, attempting to contradict facts alleged in the Complaint, and asking the Court to make inferences in their favor.  For example, Kilpatrick argues that it

provided only "minimal advice to Omnicell in 2008 concerning MV Circuit's technology" (Kilpatrick Br. at 1), and asks that this Court make an inference in Defendants' favor that Kilpatrick's discussions with Omnicell did not concern the technology that was subsequently included in Omnicell's patent applications.  (Omnicell Br. at 1, 8.)  Further, by moving to dismiss, Kilpatrick claims that MV Circuit should not even be permitted to take discovery on the specifics of its "minimal advice."  Similarly, Omnicell asserts that Mr. Daley was not involved in Omnicell's patent applications merely because his name does not appear on the face of those applications, yet it wants to deny MV Circuit discovery on whether Mr. Daley worked on Omnicell's application or consulted with his colleagues at Kilpatrick who did.  (Omnicell Br. at 1-2, 3, 8.)  Likewise, although the Complaint alleges that MV Circuit was not represented by counsel in connection with its discussions with Mr. Daley (Compl., ¶ 55), Defendants maintain that this Court should infer that MV Circuit was represented by counsel during those discussions because, at a later date, attorneys filed patent applications on MV Circuit's behalf.  (Omnicell Br. at 4; Kilpatrick Br. at 4.)  Defendants also ask this Court to make an inference in their favor from the fact, not alleged in the Complaint, that MV Circuit filed patent applications after its discussions with Kilpatrick covering much narrower subject matter than the patent applications filed by Omnicell.  (Kilpatrick Br. at 4, 9-10; Omnicell Br. at 4, 11.)[4]

Defendants also argue that the Complaint fails to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b) for fraud claims, even though the Complaint details, among other things, the content and date of each fraudulent misrepresentation on which MV Circuit relied and Defendants' fraudulent scheme and intent.  (Compl., ¶¶ 50-58, 126-29, 136-38, 144-146, 151-56, 162-66, 173-75.)  The Complaint also alleges that, in reliance on Defendants'

---

[4] As discussed above, Omnicell has not moved to dismiss the first three causes of action in the Complaint alleging that MV Circuit is a joint inventor on the patents filed by Rioux and/or Omnicell, so MV Circuit's patent applications are irrelevant to this Motion to Dismiss.

material misrepresentations, MV Circuit disclosed confidential information concerning its technology to Mr. Daley, Omnicell's attorney at Kilpatrick, and that specific technology that MV Circuit disclosed to Mr. Daley was subsequently included in Omnicell's patent applications drafted by Kilpatrick attorneys.  (*Id.*, ¶¶ 8, 51, 55-58, 64, 66, 69, 130, 139, 147-49, 157, 168-69, 176-78.)  Nevertheless, Omnicell contends that MV Circuit's fraud claims are not pled with sufficient specificity because the Complaint does not identify the "specific" individuals at Kilpatrick or Omnicell with whom Mr. Daley shared information concerning MV Circuit's technology "or . . . otherwise explain how information given to Mr. Daley allegedly ended up in Omnicell patent applications."[5]  (Omnicell Br. at 1, 6, 8.)

Contrary to Omnicell's argument, however, Rule 9(b) "does not require a plaintiff to be omniscient, and it is not intended to prevent courts from reaching the truth behind a case." *BAC Homes Loans Servicing LP v. Fall Oaks Farm LLC*, 848 F. Supp. 2d 818, 827 (S.D. Ohio 2012) (citing *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988)).  Rule 9(b) should not be used to circumvent the "principle of basic fairness that a plaintiff should have an opportunity to flesh out [its] claim through evidence unturned in discovery." *Michaels Bldg.*, 848 F.2d at 680.  Dismissal would be particularly inappropriate where, as here, details of the conversations that Mr. Daley had with other Kilpatrick attorneys and Omnicell about MV Circuit are exclusively in Defendants' possession. *See, e.g.*, *id.* ("Especially in a case in which there has been no discovery, courts have been reluctant to dismiss the action where the facts underlying the claims are within the defendant's control."); *Jordan v. Global Natural Res., Inc.*, 564 F. Supp. 59, 69 (S.D. Ohio 1983).

Rule 9(b) requires that the circumstances of the fraud "be pled with enough specificity to

---

[5] As mentioned above, Kilpatrick admits that Mr. Daley discussed MV Circuit's technology with Omnicell, but claims that his advice was "minimal" and "limited." (Kilpatrick Br. at 1.)

put defendants on notice as to the nature of the claim." *Michaels Bldg.*, 848 F.2d at 680.  As this Court has noted, "[e]ssentially, [to satisfy the pleading requirements of Rule 9(b),] the . . . complaint should provide fair notice to Defendants and enable them to 'prepare an informed pleading responsive to the specific allegations of fraud.'" *Hale*, 2011 WL 49545, at *5 (internal citations omitted).  The Complaint in this case provides defendants with far more than the "fair notice" required by Rule 9(b).

**ARGUMENT**

**I.    The Claims for Fraud and Fraudulent Concealment Are Adequately Pleaded.**

The elements of fraud and fraudulent concealment are: "(1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance." *Hale*, 2011 WL 49545, at *5 (citing *Gaines v. Preterm–Cleveland, Inc.*, 514 N.E. 2d 709, 712 (Ohio 1987)).  As discussed below, the Complaint adequately alleges that Defendants defrauded MV Circuit.

The Complaint alleges that the Defendants intentionally made a number of materially false and misleading statements to MV Circuit to induce MV Circuit to disclose its confidential intellectual property to Omnicell and Omnicell's attorneys, to continue working with Rioux and then Omnicell developing technology on the RIO Cart, and to mislead MV Circuit into believing that Omnicell had not filed a patent application on the RIO Cart technology.  In particular, the Complaint alleges that Defendants made, among others, the following materially false and misleading statements to MV Circuit:

- On or about January 23, 2008, Omnicell, with Kilpatrick's concurrence, told MV Circuit that it had "identified patent counsel with the Townsend . . . firm to whom you can disclose information relating . . . to the Rioux Vision carts," falsely suggesting that the patent counsel identified was not currently Omnicell's counsel.  (Compl., ¶¶ 6-7, 50-53, 128, 138, 145, 152, 163, 173, 181, 185.)

- On or about January 23, 2008, Omnicell, with Kilpatrick's concurrence, told MV Circuit that Mr. Daley "is not our regular patent counsel" when, in fact, Mr. Daley's law firm, Kilpatrick, was Omnicell's regular patent counsel and was at that time working on Omnicell's patent applications related to technology in the RIO Cart. (*Id.*, ¶¶ 6-7, 50, 52 128, 138, 145, 152, 163, 173, 181, 185.)

- On or about January 23, 2008, Omnicell, with Kilpatrick's concurrence, told MV Circuit that Mr. Daley "would not be involved in developing any patent applications on behalf of Omnicell with respect to any technologies similar to those that are disclosed to him by MV Circuit" when, in fact, Mr. Daley's law firm, Kilpatrick, was prosecuting Omnicell's patent application related to the technology in the RIO Cart and prosecuted additional patent applications based on technology that MV Circuit disclosed to Mr. Daley.  (*Id.*)

- On or about January 23, 2008, Omnicell, with Kilpatrick's concurrence, told MV Circuit that Mr. Daley "would not share with Omnicell the underlying technological descriptions that [MV Circuit] would disclose to him" when, in fact, Kilpatrick, Mr. Daley's law firm, prosecuted patent applications that included the same technology that MV Circuit disclosed to Mr. Daley.  (*Id.*)

- On or about January 23, 2008, Omnicell, with Kilpatrick's concurrence, told MV Circuit that, if  MV Circuit disclosed its intellectual property and inventions related to the RIO Cart, Omnicell would assess the patentability of the inventions, when, in fact, Omnicell, with Kilpatrick's assistance, was prosecuting a patent application that claimed MV Circuit's inventions and Defendants had thus clearly already determined that MV Circuit's inventions were patentable.  (*Id.*, ¶¶ 5, 50, 54, 73, 127, 137, 144, 154-55, 164, 174, 181, 185.)

- On February 1, 2008, Mr. Daley, the Kilpatrick attorney, pressed MV Circuit's CEO, Markos Paradissis, for "conception dates" for the technology that MV Circuit invented, when it was obvious to Mr. Daley that Mr. Paradissis, who was not represented by counsel, did not understand the legal significance of the term and did not understand that Mr. Daley's intent was to find a basis for Omnicell to assert priority over MV Circuit's inventions.  (*Id.*, ¶¶ 56-57, 153-54, 164-65.)

The Complaint also alleges that a number of the inventive contributions that MV Circuit

disclosed to Mr. Daley appeared in subsequent patent applications that Omnicell filed, prepared

by attorneys at Kilpatrick, including the Drawer System, the Wireless Linking System, the

HIPPA switch, the Guide Lights, and the Power System Controller.  (*Id.*, ¶¶ 58, 63-64, 66, 92, 115.)  For example, as described in the Complaint, MV Circuit disclosed its invention of lights on the drawers to illuminate the drawers on the medical carts and indicate whether they are open or closed.  (*Id.*, ¶¶ 28, 58.)  On December 6, 2010, Kilpatrick filed the '262 Application on behalf of Omnicell, which claimed that Omnicell employees invented a medical cart that included "a guide light that is configured to illuminate when the drawer is accessed so as to visually display the location of the drawer."  (*Id.*, ¶¶ 58, 64.)  Similarly, MV Circuit told Mr. Daley at Kilpatrick about a HIPPA or privacy switch that it had invented that permits a user to hit a button to cause personal patient information to be replaced by a screensaver.  (*Id.*, ¶¶ 33, 58.)  The '262 application claims that Omnicell employees invented a "HIPPA . . . button" that performs the identical function that MV Circuit disclosed to Mr. Daley.  (*Id.*, ¶ 58.)

Faced with these detailed allegations – which exceed by a considerable measure the basic plausibility and specificity requirements applicable at this early stage of the litigation – Defendants offer somewhat different but equally ineffective responses.  Omnicell claims that Mr. Schmid's statements in the email to MV Circuit were literally true, including the statement that Mr. Daley of Kilpatrick was "not [Omnicell's] regular patent counsel" because Mr. Daley's name does not appear on the face of the patent applications referenced in the Complaint.  (Omnicell Br. at 7-8.)  Kilpatrick, on the other hand, claims that only Omnicell is responsible for any misrepresentation, because, it argues, Omnicell sent MV Circuit the allegedly misleading email and only sent a copy to Mr. Daley.  (Kilpatrick Br. at 7-10, 12.)  However, both of these arguments ignore well-established Ohio law that imposes liability on defendants for making misleading statements, failing to correct misleading statements, and tacitly endorsing the misleading statements of others.

### A.    Defendants' Statements to MV Circuit Were Materially False.

Defendants' statements to MV Circuit, as summarized above and detailed in the Complaint, were false and misleading.  For example, Mr. Schmid told MV Circuit that it should disclose its confidential information to Mr. Daley because he was not Omnicell's "regular patent counsel," when Kilpatrick attorneys in the same Denver office as Mr. Daley were at that time prosecuting patents and drafting new patent applications on Omnicell's behalf that concerned the RIO Cart technology.[6]  Omnicell's argument that the statement was true because Omnicell was Kilpatrick's client but not Mr. Daley's client conflicts with well-established law, since Kilpatrick's representation of Omnicell is imputed to every lawyer at the law firm.  *See* Colo. RPC 1.10(a); Ohio RPC 1.10(a); *see also Liebnow by & through Liebnow v. Boston Enters., Inc.*, 296 P.3d 108, 117 (Colo. 2013) (a "'firm of lawyers is essentially one lawyer'") (quoting Colo. RPC 1.10 cmt. 2); *People ex rel. Peters v. Dist. Court*, 951 P.2d 926, 930-31 (Colo. 1998) (representation imputed to firm even though lawyers were representing client "in their individual capacities"); *Carnegie Cos., Inc. v. Summit Props., Inc.*, 918 N.E.2d 1052, 1063 (Ohio Ct. App. 2009).  The knowledge of one attorney can be imputed to all attorneys at the same firm regardless of whether the information obtained is from a client or from a third party, such as MV Circuit.  *See Liebnow,* 296 P.3d 108 at 115, 118; *Majestic Steel Serv., Inc. v. Disabato*, 1999 WL 961465, at *4 (Ohio Ct. App. Oct. 21, 1999).  Thus, Mr. Daley, like every lawyer at Kilpatrick, was Omnicell's "regular patent counsel."[7]

---

[6] At the time, Mr. Daley was working in the Denver office of the law firm Townsend and Townsend and Crew ("Townsend").  In 2010, Townsend merged with Kilpatrick Stockton.  Attorneys in Townsend's Denver office, presumably down the hall from Mr. Daley, worked on Omnicell's patent applications relating to the RIO Cart.

[7] Omnicell claims that the absence of Mr. Daley's name on the face of Omnicell's patent applications proves that he was not Omnicell's patent lawyer.  First, as discussed above, every lawyer at Kilpatrick – especially every lawyer in Townsend's Denver office – was Omnicell's attorney, as a matter of law.  Moreover, the absence of a particular attorney's name on a patent application does not prove that he did not work on the matter, and MV Circuit is entitled to discovery on communications Mr. Daley had with Omnicell and other Kilpatrick attorneys.  In any event, the Complaint alleges that specific information that MV Circuit disclosed to Mr. Daley was included in subsequent

However, even if the statement that Mr. Daley was not Omnicell's regular patent attorney was, as Omnicell argues, literally true, statements that are intentionally misleading, incomplete, or confusing may form the basis of a fraud claim.  "A representation stating the truth so far as it goes but which the maker knows or believes to be materially misleading because of his failure to state additional or qualifying matter is a fraudulent misrepresentation."  Restatement (Second) of Torts § 529 (1977); *see also Mulch Mfg. Inc. v. Advanced Polymer Solutions, LLC*, 947 F. Supp. 2d 841, 863 (S.D. Ohio 2013) (summary judgment denied where statements falsely "implying" company manufactured product constituted fraudulent misrepresentations).  Indeed, "[u]nderstatements and incomplete statements are as much misrepresentations as false statements."  *Unger v. Abidar*, 1987 WL 14950, at *2 (Ohio Ct. App. July 30, 1987) (citing Restatement (Second) of Torts § 529.  Even an ambiguous representation may be fraudulent if the maker "believes that it will be understood in the sense in which it is false."  Restatement (Second) of Torts § 527 cmt. a.

Thus, Ohio courts have frequently held that parties to business transactions – even arms-length business transactions – must disclose facts "necessary to dispel misleading impressions that are, or might have been, created by partial revelation of the facts."  *Bays v. Hunter Sav. Ass'n*, 539 F. Supp. 1020, 1025 (S.D. Ohio 1982) (citation and internal quotation marks omitted).  Moreover, since half-truths are false and misleading statements, parties have a duty to correct half-truths even in the absence of a fiduciary or other special relationship.  *See, e.g.*, *Word of God Church v. Stanley*, 2011 WL 1641714, at *7-9 (Ohio Ct. App. Apr. 29, 2011) (misleading half-true statements were actionable fraud claims, even in the absence of fiduciary or other special relationship between parties); *Equal Justice Found. v. Deutsche Bank Trust Co. Ams.*,

---

patent applications that Kilpatrick filed on Omnicell's behalf.  (*See, e.g.*, Compl., ¶¶ 58, 63-64, 66, 69, 92, 115.)  In this Motion to Dismiss, any inference should be made in favor of MV Circuit.  *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).

2006 WL 2795211, at *6 (S.D. Ohio Sept. 27, 2006) (defendants' failure to disclose agreement that was material to arms-length settlement negotiations created an actionable "misleading impression"); *Primus Auto. Fin. Serv. v. Otto-Wal, Inc.*, 1999 WL 690192, at *3 (N.D. Ohio Aug. 16, 1999) (party that represented company was in "good financial condition" obligated to provide all information necessary for a "complete understanding" of company's financial situation); *Unger v. Abidar*, 1987 WL 14950, at *2 (Ohio Ct. App. July 30, 1987) (although home seller's statement about water problem was technically true, fraud finding was affirmed because seller misrepresented the full extent of the problem); *Bays*, 539 F. Supp. at 1025 (fraud claim could be based on "confusing" letters that provided correct data but created misleading impression and the jury, rather than the court, should determine whether the letters were sent with the intent to deceive).[8]

Misleading statements designed to induce a party to disclose its confidential information can form the basis for fraud and fraudulent concealment claims. In *Auto Chem Laboratories, Inc. v. Turtle Wax, Inc.*, for example, a plaintiff company, like MV Circuit, substantially contributed, over several years and at its own expense, to the development and manufacture of products sold by the defendant company. 2008 WL 4372698, at *1-3 (S.D. Ohio July 31, 2008), *adopted in pertinent part*, 2008 WL 4372697 (S.D. Ohio Sep. 23, 2008). The defendant sought proprietary technical information about the products from the plaintiff, claiming that the

---

[8]  Omnicell argues that it had no duty to disclose the pending patent applications or any other facts to MV Circuit because Omnicell was merely MV Circuit's customer. (Omnicell Br. at 9-10.) However, as the cases above discuss, no fiduciary or other special relationship is required to state a claim for fraud or fraudulent concealment when a party makes materially false or misleading statements or states half-truths. Thus, the cases Omnicell cites on page 10 of its brief are inapposite because those cases address only whether an arms-length business transaction generates a general duty to disclose when disclosure is not necessary to correct a misleading statement. (Omnicell Br. at 10 (citing *Nelson v. Am. Power & Light*, 2010 WL 3219498, at *10 (S.D. Ohio Aug. 12, 2010) and *Hayes v. Computer Assocs. Int'l, Inc.*, 2003 WL 21478930, at *5 (N.D. Ohio June 24, 2003)).) Moreover, as discussed below, the facts alleged in the Complaint support an inference that Rioux/Omnicell had a far closer relationship with MV Circuit than merely its customer, and, under all the facts that will be further developed in discovery, Omnicell and Rioux had a duty to inform their co-inventor that they were filing patent applications concerning their joint inventions. (*See infra* p. 18-21.)

information was necessary for labeling requirements.  According to the plaintiff, however, the defendant's "real purpose" was to "duplicate [the plaintiff's] formulas and produce them without paying . . . for them."  *Id.* at *2-3.  In denying defendant's motion to dismiss, the court concluded that the plaintiff stated claims for fraud and fraudulent concealment because the complaint alleged facts sufficient to suggest that defendant misled the plaintiff to believe that the defendant was interested in a mutually beneficial business relationship when its real purpose was to learn the plaintiff's proprietary business information.  *Id.*at *19.

In addition to misleading MV Circuit about Kilpatrick's prior and current work for Omnicell, Defendants misled MV Circuit to believe that Omnicell had not filed patent applications that claimed MV Circuit's inventions, by falsely stating, among other things, that it sought to conduct an "assessment" of the patentability of MV Circuit's technology, when in reality, such an assessment had already been completed.  (Compl., ¶¶ 50, 54, 144, 155, 174, 181, 185.) [9]  In any event, the issue of whether Defendants' intent was to deceive MV Circuit into believing that no patents had yet been filed on the RIO Cart technology and that Kilpatrick was not Omnicell's patent counsel should not be decided on a motion to dismiss.  *See, e.g.*, *Bays v. Hunter Sav. Ass'n*, 539 F.Supp. 1020, 1025 (S.D. Ohio 1982). [10]

---

[9]  Defendants argue that their statements were true because they did assess MV Circuit's technology.  (*See* Omnicell Br. at 9.)  The Complaint, however, alleges that Defendants had already determined that MV Circuit's technology was patentable, since they had already filed patent applications that claimed MV Circuit's technology.  (Compl., ¶ 5, 54, 144, 174.)  It also alleges facts sufficient to infer that Defendants' intent was to keep MV Circuit in the dark and thereby strip MV Circuit of its rights.  (Compl., ¶ 49, 154, 180.)  Omnicell also argues that its commitment to assess the patentability and value of MV Circuit's intellectual property constitutes a future promise insufficient to support a claim for fraud.  (Omnicell Br. at 9.)  However, a "future promise" is actionable when, as alleged in this case, it is made without the present intention of performing it.  In *Auto Chem Laboratories, Inc. v. Turtle Wax, Inc.*, for example, the court denied defendant's motion to dismiss plaintiffs' fraud and fraudulent concealment claims because "the Plaintiffs properly pled allegations that the Defendant made these promises without the present intention of performing them."  2008 WL 4372697, at *14 (S.D. Ohio Sep. 23, 2008).

[10]  Under Ohio law, a fraud claim may also be based on "conduct that amounts to an assertion not in accordance with the truth."  *Russ v. TRW, Inc.*, 570 N.E.2d 1076, 1084 (Ohio 1991) (citations omitted); *see also SST Castings, Inc. v. Amana Appliances, Inc.*, 2005 WL 1075014, at *7 (S.D. Ohio Apr. 21, 2005) (behavior intended to lull plaintiff into a false sense of security that defendant would continue purchasing from it was false representation and thus basis for fraud claim); *Aetna Cas. & Surety Co. v. Leahey Constr. Co., Inc.*, 22 F. Supp. 2d 695, 701 (N.D. Ohio 1998);

Discovery will show that Mr. Paradissis, MV Circuit's CEO, would not have disclosed MV Circuit's confidential information concerning the RIO Cart to Mr. Daley if he had known that (i) Mr. Daley's law firm was Omnicell's regular patent counsel; (ii) Mr. Daley's law firm was prosecuting Omnicell's patents on RIO Cart technology; (iii) Mr. Daley's law firm was preparing additional patent applications for Omnicell on RIO Cart technology; and (iv) Rioux and Omnicell had already filed patent applications based on MV Circuit's inventions on the RIO Cart.  Indeed, Omnicell's misrepresentations were specifically intended to mislead MV Circuit so that it would disclose its confidential technology to Omnicell and remain unaware that Rioux and Omnicell had filed patent applications based on MV Circuit's inventive contributions on the RIO Cart.[11]

### B.  Omnicell Also Had an Independent Duty to Disclose the Pending Patent Applications to MV Circuit Under the Facts Present Here.

In addition to the argument set forth above, MV Circuit has also adequately pled fraud and fraudulent concealment based on Omnicell/Rioux's failure to disclose the patent applications to MV Circuit.  As discussed above, Defendants' failure to disclose the patent applications made a number of their statements to MV Circuit misleading.  Omnicell/Rioux's failure to disclose the patent applications is another independent basis for MV Circuit's fraud and fraudulent concealment claims because, under all the facts present here, where MV Circuit's employees

---

*Davidson v. Hayes*, 590 N.E.2d 18, 20 (Ohio Ct. App. 1990) (a "false representation may be made by conduct calculated and intended to produce a false impression, as well as by words") (citation omitted).  Here, MV Circuit has alleged a series of acts and omissions, of which the email sent by Mr. Schmid is only one part.  (*See, e.g.*, Compl., ¶¶ 24, 49, 56, 58, 62-70, 73.)

[11] Similarly, Rioux's request that MV Circuit transfer its intellectual property to Rioux was misleading without disclosing that, two days earlier, Rioux had filed a patent application on the same technology.  Rioux's claim that MV Circuit would share in the commercial success of the RIO Cart was misleading without disclosing that Rioux had filed a patent claiming that its employee was the sole inventor.  Omnicell's and Kilpatrick's statements that they would assess the patentability of MV Circuit's intellectual property in the RIO Cart were misleading without disclosing that Omnicell had already filed patents claiming that very same technology.  Defendants' request that MV Circuit divulge its confidential intellectual property was misleading without disclosing the patent applications.

were inventors and MV Circuit, Rioux, and Omnicell had close and confidential relationships, Rioux and Omnicell had a duty to disclose to MV Circuit their prosecution of patent applications that were based on MV Circuit's inventions. As set forth in the Complaint, and as discovery will further establish, MV Circuit and Rioux/Omnicell had a close and confidential relationship in which they jointly conceived of and developed the technology in the RIO Cart from 2001 until 2011.

A case decided by the Federal Circuit, *University of Colorado Foundation, Inc. v. American Cyanamid Co.*, is particularly instructive. 196 F.3d 1366 (Fed. Cir. 1999). In *American Cyanamid*, the court expressly held that a claim lies for fraudulent non-disclosure of a patent application to the true inventors. In language that applies equally in this case, the Federal Circuit held that:

> [T]he University's fraudulent nondisclosure and unjust enrichment claims depend on the Doctors' status as inventors. As the district court correctly noted, "[w]hether Cyanamid had a duty to disclose its intention to and filing of the Patent application depends on who was the inventor of the [technology]."

*Id.* at 1372 (internal citation omitted).

The district court concluded that because plaintiffs were the inventors and had a confidential working relationship with the defendant, the "filing of [a] patent application [omitting plaintiff as inventor] was a material fact that in equity and good conscience should have been disclosed." *See Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 880 F. Supp. 1387, 1395 (D. Colo.), *aff'd in pertinent part*, 196 F.3d 1366 (Fed. Cir. 1999) and *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 974 F. Supp. 1339, 1353 (D. Colo. 1997), *aff'd in pertinent part*, 196 F.3d 1366, 1373 (Fed. Cir. 1999). Moreover, the court found that the defendant, like Rioux and Omnicell, had "deliberately concealed the application so that [it] could continue the beneficial relationship with [the plaintiffs], while retaining . . . the financial and competitive

benefits" of the plaintiffs' ideas.  *Id.*  In turn, the plaintiffs "acted on this concealment by continuing to work for and benefit [the defendant], unaware that their idea had been appropriated and [the defendant] was attempting to exclude them and others from being able to use it in the future," which in turn "deprived [them] of financial opportunities and prestige."  *Id.*  Lastly, the court concluded that the fact that some of the patent materials were publicly available did not extinguish defendants' duty to disclose the existence of the patent application.  *Id.*[12]

The Federal Circuit's opinion in *American Cyanamid* suggests that Rioux and Omnicell owed MV Circuit a duty to disclose the patent applications because MV Circuit's employees were the inventors, regardless of the relationship between the parties.  However, the Complaint alleges further that MV Circuit, Rioux, and Omnicell had close and confidential relationships sufficient to create a duty.  Under Ohio law, the "duty to speak does not depend on the existence of a fiduciary relationship between the parties.  It may arise in any situation where one party imposes confidence in the other because of that person's position, and the other party knows of this confidence." *Cent. States Stamping Co. v. Term. Equip. Co.*, 727 F.2d 1405, 1409 (6th Cir. 1984) (citing *Smith v. Patterson*, 33 Ohio St. 70, 75-76 (1877)).  In the Complaint, MV Circuit alleges a close and confidential relationship existed between the parties, and alleges that MV Circuit, with their knowledge, imposed confidence in Rioux and Omnicell because of their position: (1) MV Circuit and Rioux developed a close relationship of trust during six years of developing the RIO Cart technology (Compl., ¶ 22); (2) MV Circuit and Rioux each invested their own resources researching and developing the RIO Cart technology (Compl., ¶ 23); (3) Rioux indicated to MV Circuit that they would share in the commercial success of the RIO Cart (Compl., ¶¶ 3, 23-24); (4) MV Circuit and Rioux collaborated on the entire development process

---

[12] *See also Vega v. Jones, Day, Reavis & Pogue*, 17 Cal. Rptr. 3d 26, 35 (Cal. Ct. App. 2004) ("[T]he contention that publicly available information cannot form the basis for a [fraudulent] concealment claim is mistaken.  The mere fact that information exists somewhere in the public domain is by no means conclusive.").

for the RIO Cart, exchanging ideas, designs, and prototypes (Compl., ¶ 26); and (5) MV Circuit continued working closely with Omnicell after it purchased Rioux to further develop the RIO Cart technology (Compl., ¶ 59-60).  These facts more than sufficiently allege a relationship between the parties such that a duty was owed to MV Circuit.  However, such an analysis of the relationships between the parties is very fact specific and therefore inappropriate for a motion to dismiss.

### C.    Kilpatrick Cannot Evade Liability for Fraud for Defendants' False Words and Misleading Conduct.

Kilpatrick argues that it is not responsible for any misrepresentations in Mr. Schmid's email because Mr. Daley simply received a copy and, therefore, any misrepresentations in the email should be attributed solely to Omnicell.  (Kilpatrick Br. at 8.)  MV Circuit received an email setting forth the parties' understanding going forward showing that a copy had also been sent to Mr. Daley at Kilpatrick.  Accordingly, MV Circuit reasonably believed that Kilpatrick agreed with the proposal set forth in the email, particularly because the email set forth the ground rules by which MV Circuit would disclose proprietary information to Kilpatrick.  Even if the email did not issue directly from the keyboard of a Kilpatrick lawyer, Kilpatrick knew that MV Circuit was relying on Omnicell's material misrepresentations, including misrepresentations about Kilpatrick's relationship with Omnicell, when MV Circuit agreed to disclose its confidential information to Mr. Daley.  Accordingly, Kilpatrick effectively adopted and tacitly authorized the statements and is liable as if it had spoken them itself.[13]

A claim for fraud can be based on conduct as well as words.  *Russ v. TRW, Inc.*, 570 N.E.2d 1076, 1084 (Ohio 1991).  Accordingly, "[a] defendant may be held liable for fraud notwithstanding the fact that the defendant did not himself make the fraudulent statement or

---

[13] Discovery may reveal that Kilpatrick saw, drafted, or discussed the substance of the email with Omnicell before it was sent to MV Circuit.

omission." *Baker v. Pfeifer*, 940 F. Supp. 1168, 1184 (S.D. Ohio 1996); *see also* Colo. RPC 4.1 cmt. 1 ("A false statement can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false.").  In *Onyx Envtl. Services, LLC v. Maison*, for example, the plaintiff brought suit against two defendants for misrepresentations that only one of the defendants had made expressly.  407 F. Supp. 2d 874 (N.D. Ohio 2005).  However, the other defendant had interacted with the plaintiff, knowing that his co-defendant had made the alleged misrepresentations.  *Id.* at 876, 879-80.  Thus, the court decided the defendant could be held liable for those misrepresentations, in part because he had "tacitly authorized" them.  *Id.* at 879-80.  Similarly, in *Escue v. Sequent, Inc.*, the court ruled that the plaintiff's fraud claims survived a Rule 9(b) motion to dismiss when the plaintiff alleged that even though defendants had not been involved in negotiations, they had "affirmed and approved" representations in an agreement that they knew or should have known were false.  2010 WL 3365933, at *7-9 (S.D. Ohio Aug. 24, 2010).[14]

Further, the Complaint alleges facts that indicate that Kilpatrick did not sit back silently, but, rather, actively participated with Omnicell in defrauding MV Circuit.  For example, as alleged in the Complaint, during a series of discussions and email exchanges with MV Circuit, Mr. Daley pressed Mr. Paradissis for the "conception dates" for MV Circuit's technology.

---

[14] Kilpatrick incorrectly suggests that it cannot be held liable for any misrepresentations to MV Circuit because its ethical duties to its client Omnicell prohibited it from revealing its client confidences.  (Kilpatrick Br. at 8.) Assuming that Kilpatrick had no knowledge of the substance of the email before it was sent to MV Circuit, which MV Circuit has no way of knowing at this stage of the case, Kilpatrick could have asked its client to correct the misrepresentations before MV Circuit divulged its confidential information to Kilpatrick.  Lawyers cannot participate in a fraud and then stand behind their ethical obligations to their clients to shield them from liability. Indeed, lawyers are prohibited from knowingly "mak[ing] a false statement of material fact or law to a third person" or "fail[ing] to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client." Colo. RPC 4.1(a); *see also Rubin v. Schottenstein, Zox & Dunn*, 143 F.3d 263, 267-68 (6th Cir. 1998) ("There is nothing special about [defendant's] status as an attorney that negates his . . . duty to disclose."); *Lee v. State Farm Mut. Auto Ins. Co.*, 249 F.R.D.662, 681-82 (D. Colo. 2008) (Colorado attorneys had duty to disclose facts regarding client to adverse party to correct the "false impression" created by their partial representations); Colo. RPC 8.4(c) (professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." )

(Compl., ¶ 56.)  Mr. Daley was not assessing the patentability of MV Circuit's technology, as he had indicated to MV Circuit, but, rather, was trying to establish a priority over MV Circuit's inventions that would benefit his client.  (*Id.*, ¶ 57.)  The Complaint also alleges that technology that MV Circuit disclosed to Mr. Daley at Kilpatrick subsequently turned up in patent applications prepared by Kilpatrick on Omnicell's behalf.  (*Id.*, ¶¶ 58, 62-70.)  Any inference about how technology MV Circuit disclosed to Mr. Daley ended up in Omnicell's patent applications prepared by Kilpatrick attorneys should be resolved in MV Circuit's favor.

## II.    MV Circuit Has Adequately Pleaded Negligent Misrepresentation.

The Ohio Supreme Court has established the standard for a claim for negligent misrepresentation: "A person who, in the course of his business, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."  *Rheinfrank v. Abbot Labs.*, 2013 WL 4067826, at *2 (S.D. Ohio Aug. 12, 2013) (quoting *Gutter v. Dow Jones, Inc.*, 490 N.E.2d 898, 900 (Ohio 1986)).  As discussed above, the Complaint alleges that Defendants, in the course of their business, provided MV Circuit with false and misleading information.[15]

Defendants, however, argue that a claim for negligent misrepresentation may be brought only against a party with whom plaintiff has a "special relationship" that, they claim, did not exist between MV Circuit and Rioux/Omnicell.  (*See* Omnicell Br. at 14-15; Kilpatrick Br. at 7.)  However, while they cite a few cases that support the special relationship requirement,

---

[15] Defendants argue that the Complaint alleges only omissions rather than false statements and that false statements are required for a negligent misrepresentation claim. (Omnicell Br. at 13-14; Kilpatrick Br. at 7-8.)  Defendants also argue that they did not supply any false information to MV Circuit, as required for a negligent misrepresentation claim.  (Omnicell Br. at 13; Kilpatrick Br. at 7-8.)  However, as discussed above, the Complaint alleges that Defendants made false and misleading statements to MV Circuit.  (*See supra* p. 14-18, 21-23)

Defendants ignore a long line of cases that have flatly rejected the notion that a special relationship is required under Ohio law.  *See Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Products, Inc.*, 2007 WL 894833, at *9 (S.D. Ohio Mar. 22, 2007); *see also Hodell-Natco Indus. v. SAP Am., Inc.*, 13 F. Supp. 3d 786, 797 (N.D. Ohio 2014); *CCB Ohio LLC v. Chemque, Inc.*, 649 F. Supp. 2d 757, 767 (S.D. Ohio 2009); *Nat'l Century Fin. Enterprises, Inc. v. Inv. Litig.*, 580 F. Supp. 2d 630, 647 (S.D. Ohio 2008); *ATM Exch., Inc. v. Visa Int'l Ass'n*, 2008 WL 3843530, at *16 (S.D. Ohio Aug. 14, 2008); *Campmor, Inc. v. Brulant, LLC*, 2010 WL 1381000, at *6-7 (D.N.J. Apr. 1, 2010).  As Ohio courts have held, at most, any "special relationship" requirement is simply a reiteration of the traditional element, set forth by the Ohio Supreme Court in *Gutter*, that the defendant supply false information "for the guidance of the plaintiff in its business transactions."  *Nat'l Mulch*, 2007 WL 894833, at *9.

The test of whether a false statement can give rise to a negligent misrepresentation claim is whether plaintiff is "one of a limited group of persons for whose benefit and guidance [the defendant] intends to supply the information."  *Gutter v. Dow Jones, Inc.*, 490 N.E.2d 898, 900 (Ohio 1986) (citation omitted); *Haddon View Inv. Co. v. Coopers & Lybrand*, 436 N.E.2d 212, 214 n.1 (Ohio 1982) (quoting Restatement (Second) of Torts § 552); *see also Nat'l Century Fin. Enterprises*, 580 F. Supp. 2d at 647-48 (explaining that Ohio courts have "drawn a line whereby misrepresentations to the public-at-large are not actionable but misrepresentations to a person or limited category of people whom the speaker or supplier intends to benefit or guide are actionable").  Defendants' suggestion that all ordinary business transactions are shielded from negligent misrepresentation claims "contradicts the inclusion of liability for negligent misrepresentation when a person supplies false information 'in <u>any</u> . . . transaction in which he has a pecuniary interest.'"  *Nat'l Mulch*, 2007 WL 894833, at *11 (quoting *Delman v. City of*

*Cleveland Hts.*, 534 N.E.2d 835, 838 (Ohio 1989)).[16] As the court held in *Nat'l Mulch,* "[a]ll that is necessary is for the maker of the representation to intend to reach and influence . . . a particular person or persons, known to him." *Id.* (citations, internal quotation marks, and alterations omitted).[17]

Here, MV Circuit falls within the category of a "particular person" Defendants "intend[ed] to reach and influence." Defendants' misrepresentations were directed specifically to MV Circuit and were made for the express purpose of deceiving MV Circuit to disclose its confidential intellectual property and remain ignorant about the patent applications. (*See* Compl., ¶¶ 5-6, 50-58, 134-38, 162-167.) In any event, as discussed throughout this brief, the Complaint alleges facts sufficient to at least infer that MV Circuit and Rioux/Omnicell enjoyed a close and confidential relationship for ten years.

## III.     Kilpatrick Is Not Immune from Liability.

Kilpatrick claims that, because it was Omnicell's attorney, the attorney immunity doctrine shields it from liability. However, attorneys who take part in "'fraud, collusion, or malice'" cannot escape liability to a non-client third party. *LeRoy v. Allen, Yurasek & Merklin*, 872 N.E. 2d 254, 260 (Ohio 2007) (quoting *Simon v. Zipperstein*, 512 N.E. 2d 636, 638 (Ohio

---

[16] *See also Hodell-Natco Indus. v. SAP Am., Inc.*, 13 F. Supp. 3d 786, 797 (N.D. Ohio 2014) (plaintiff software purchaser could pursue negligent misrepresentation claims based on defendants' statements during meetings about the software's functionality); *Culy Const. & Escavating, Inc. v. Laney Directional Drilling Co.*, 2012 WL 2071804, at *5 (S.D. Ohio June 8, 2012) ("A general contractor who solicits bids . . . cannot be shocked that the subcontractors constitute a limited class of entities who would rely upon that information."); *ATM Exch., Inc. v. Visa Int'l Ass'n*, 2008 WL 3843530, at *16 (S.D. Ohio Aug. 14, 2008).

[17] Defendants also incorrectly claim that MV Circuit has not adequately alleged that Defendants failed to exercise due care. (Omnicell Br. at 14; Kilpatrick Br. at 10.) MV Circuit's allegations that Defendants deliberately deceived MV Circuit to induce it to disclose its intellectual property necessitate the inference that Defendants did not exercise sufficient care when making their misrepresentations. *See Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E. 2d 1261, 1269 (Ohio Ct. App. 1996) ("Where fraud and negligent misrepresentation are claimed as to the same set of underlying facts, if fraud is proved, then the claim of negligent misrepresentation is necessarily subsumed thereby."). Similarly, Omnicell's argument that the negligent misrepresentation claim should be dismissed because it does not include the specific word "negligence" improperly elevates form over substance and should be rejected. *See ABB, Inc. v. Workstations Exp., LLC*, 2012 WL 967060, at *3 (N.D. Ohio Mar. 21, 2012) (plaintiff pleaded materiality even though word "material" did not appear in complaint). If the Court prefers, MV Circuit can amend the Complaint to insert the word "negligence."

1987)).  *See also Vector Research, Inc. v. Howard & Howard Attorney P.C.*, 76 F.3d 692, 700

(6th Cir. 1996) ("There is no immunity . . . where attorneys act maliciously.") (citing *Scholler v.*

*Scholler*, 462 N.E.2d 158, 163 (Ohio 1984)).  An attorney may invoke immunity only for acts

"'arising from his performance as an attorney in good faith.'"  *LeRoy*, 872 N.E. 2d at 258

(quoting *Scholler*, 462 N.E.2d 158, paragraph one of the syllabus).

   Courts applying Ohio law have permitted claims against attorneys to move forward when

the plaintiff, like MV Circuit, has alleged fraud, collusion, or bad faith, even when the

allegations were made generally.  For example, in *Vector Research*, the Sixth Circuit held that

plaintiffs' allegations that the "attorney defendants acted maliciously," "shared the malicious

motives of their client," and "improperly handled personal and confidential information" were

sufficient to defeat an attorney immunity challenge on a motion to dismiss. 76 F.3d at 699-700.

Similarly, in *LeRoy*, the Supreme Court of Ohio affirmed reversal of the granting of the

defendant attorneys' motion to dismiss on immunity grounds, concluding that the plaintiffs'

"allegations of collusion and conflict of interest fall within the ambit of malice based on the sum

total of the underlying facts alleged" and could be pleaded generally.  *LeRoy*, 872 N.E.2d at 260.

The Complaint is replete with specific allegations that Kilpatrick acted with malice and colluded

with its client Omnicell to defraud MV Circuit. (*See* Compl., ¶¶ 50-58, 65, 151-56, 162-166,

172-175, 180-181.)[18]

   Kilpatrick argues incorrectly that a non-client plaintiff may never pursue a negligent

misrepresentation claim against an attorney.  (*See* Kilpatrick Br. at 11.)  In *Orshoski v. Krieger*,

---

[18] *See also, e.g.*, *Monroe v. Forum Health*, 2012 WL 6727388, at *7 (Ohio Ct. App. Dec. 24, 2012) (rejecting attorney immunity at the motion to dismiss stage because complaint alleged that the defendant attorneys committed "malicious and/or fraudulent conduct"); *Shieldmark, Inc. v. Creative Safety Supply, LLC*, 2012 WL 6824003, at *3 (N.D. Ohio Oct. 9, 2012) (Vecchiarelli, M.J.) (defendant attorneys accused of "deliberately and intentionally misle[ading] the PTO" during patent prosecution were not immune from liability because such "conscious, deliberate and intentional" conduct "qualifies as malicious under Ohio law"), *adopted* 2013 WL 123567 (N.D. Ohio Jan. 9, 2013); *Luciana v. Schiavone*, 2001 WL 1842457, at *7 (S.D. Ohio Jan. 2, 2001) (defendant attorneys' bad faith constituted malice and "negat[ed]" immunity).

the court expressly held that, under Ohio law, a non-client can sue an attorney for negligent misrepresentation, reasoning that the "elements necessary for a third party to state a claim of negligent misrepresentation . . . against an attorney are the same as in any like action against a professional." 2001 WL 1388037, at *4-6 (Ohio Ct. App. 2004).  Like Kilpatrick, the attorney in *Orshowski* represented one party in a business transaction and provided misinformation to the parties on the other side.  *Id.* at *1.  Similarly, in *LeRoy,* the Ohio Supreme Court permitted a non-client to pursue a negligence claim against an attorney when the complaint contained allegations of collusion and conflict of interest.  872 N.E.2d at 256, 260.[19]

## IV.  MV Circuit Justifiably Relied on and Was Damaged by Defendants' Fraudulent Misrepresentations and Non-Disclosures.

With minimal explanation, Defendants argue that MV Circuit cannot show that it justifiably relied on and was damaged by Defendants' misrepresentations because MV Circuit filed its own patent applications on other inventions.  (Omnicell Br. at 11; Kilpatrick Br. at 9, 14.)  Even if it were appropriate to examine the contents of MV Circuit's patent applications on a motion to dismiss, the fact that MV Circuit filed patent applications is wholly irrelevant to any issue before the Court and wholly immaterial to whether MV Circuit relied upon and has been damaged by Defendants' misrepresentations.  Similarly, Defendants ask this Court on their Motions to Dismiss to make an inference against MV Circuit that the fact that it did not attempt to file its own patent application on its inventions included in Omnicell's patents somehow evidences that MV Circuit did not rely on Defendants' misrepresentations.  (Omnicell Br. at 11; Kilpatrick Br. at 10.)  Again, Defendants' arguments based on facts outside the Complaint and

---

[19] *See also Wilkey v. Hull*, Slip Op., Case No. 07cv160, at 9-12 (S.D. Ohio Jan. 3, 2008) (denying motion to dismiss non-client's professional negligence claim because malice exception to attorney-immunity rule could be alleged generally); *Berger v. Palay*, 1981 WL 4643, at *1, 3-4 (Ohio Ct. App. 1981) (denying attorney summary judgment motion of "negligent breach of professional duty" due to malice exception to attorney-immunity doctrine); *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W. 2d 787, 794 (Tx. 1999) (attorney immunity should not extend to negligent misrepresentation claims).

their request that the Court make inferences in their favor should be rejected on this Motion to Dismiss.  Further, MV Circuit's patent applications are entirely irrelevant to any issue before the Court, although Defendants are free to inquire during discovery why MV Circuit did not file a patent application on the same technology.[20]

As alleged in the Complaint, Defendants inflicted significant damage on MV Circuit.  If MV Circuit had been properly named as co-inventor of Omnicell's patents, MV Circuit would "presumptively own[] a pro rata undivided interest in the entire patent, no matter what [its ] contributions."  *Ethicon v. U.S. Surgical Corp.*, 135 F.3d 1456, 1465 (Fed. Cir. 1998) (noting that "co-inventor of only one claim [of patent is entitled] to ownership" of entire patent even if patent has "dozens of claims.").  MV Circuit lost the financial opportunities and prestige it would have enjoyed if its employees had been named as inventors.  (*See* Compl., ¶¶ 132, 141, 149, 160, 170, 178, 182, 186.)

**V.     MV Circuit's Fraud and Negligent Misrepresentation Claims Are Timely.**

MV Circuit's claims are timely for a number of independent reasons.  First, as discussed above, Omnicell and Rioux intentionally concealed their patents from their joint inventor, MV Circuit, and then intentionally misled MV Circuit to believe that no patent applications had been filed, thereby tolling the applicable four-year statute of limitations until at least May 2013, when MV Circuit discovered the '485 patent.  Second, in any event, MV Circuit's claims did not accrue until May 2012, when the first disputed patent issued and MV Circuit suffered actual damages.

A motion to dismiss, which "considers only the allegations in the complaint," is usually an "inappropriate vehicle for dismissing a claim based upon a statute of limitations." *Lutz v.*

---

[20] There are many reasons why parties choose not to file patent applications or why parties choose to file patents on particular technology.  At this stage of the case, on such an undeveloped record, it would be inappropriate to make an inference adverse to MV Circuit.

*Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013) (internal quotation marks and citation omitted); *see also Owner Operator Independent Drivers Ass'n, Inc. v. Comerica Bank*, 540 F. Supp. 2d 925, 929 (S.D. Ohio 2008) ("Ordinarily, dismissing claims as untimely under Rule 12(b)(6) is disfavored.").  Because the statute of limitations is an affirmative defense often requiring factual development, it should not provide a basis for dismissal unless "the application of the statute is clear on the face of the complaint."  *Am. Energy Corp. v. Tx. E. Transmission, LP*, 701 F. Supp. 2d 921, 933 (S.D. Ohio 2010).

## A.    Defendants' Fraudulent Scheme Tolled the Statute of Limitations.

MV Circuit's tort claims are timely under the doctrines of fraudulent concealment and/or the discovery rule.  Ohio law provides that the four-year statute of limitations for fraud does not begin to accrue "until the fraud is discovered," not when the fraud is committed.  R.C. § 2305.09. MV Circuit discovered the fraud in May 2013, when it learned of the '485 patent, and for the reasons discussed in this brief, MV Circuit had no reason to discover the applications earlier. (Compl., ¶ 72-73.)  Moreover, Ohio adheres to the well-established rule that a statute of limitations is tolled "'where there is some conduct of the adverse party, such as misrepresentation, which excludes suspicion and prevents inquiry.'"  *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 475 (6th Cir. 2013) (quoting *Bryant v. Doe*, 552 N.E.2d 671, 675 (Ohio Ct. App. 1988)).

As detailed in the Complaint, Defendants engaged in multiple deceptions designed to conceal their pending patent applications from MV Circuit and dupe MV Circuit into thinking that no patent applications had been filed.  For example, Omnicell and Kilpatrick told MV Circuit that it was interested in conducting an assessment of the patentability of MV Circuit's intellectual property in the RIO Cart, thereby suggesting that no patent application claiming MV Circuit's intellectual property in the cart had been filed.  (Compl., ¶ 50.)  Kilpatrick perpetuated

this deception by corresponding with MV Circuit about the specifics of MV Circuit's inventive contributions.  (*Id.* at ¶¶ 56-58.)  MV Circuit therefore had no reason to suspect that Omnicell had already submitted patent applications based on MV Circuit's technology, especially in light of the relationship of trust MV Circuit believed it had built with Omnicell and Rioux over the course of more than a decade of collaboration.  (*Id.* at ¶ 73.)[21]

In *American Cyanamid*, a case with striking similarities, the plaintiffs alleged that the defendant wrongfully copied the plaintiffs' work, filed a patent application without informing them, failed to identify them as inventors, named one of its own employees as the sole inventor, and concealed the existence of the patent in part by exploiting the plaintiffs' long-standing professional relationship with the defendant.  974 F. Supp. 1339, 1342, 1348-50, 1353-54. (D. Colo. 1997), *aff'd in pertinent part*, 196 F.3d 166 (Fed. Cir. 1999) (expressly adopting pertinent analysis).  The federal court in Colorado held that plaintiffs' fraud and other claims were timely, even though they were not brought until more than nine years after the patent issued.  *Id.* at 1355.  Any delay in filing suit, the court concluded, "was the result of the very conduct for which relief is sought, namely the fraudulent concealment of the fact of the patent applications and the naming of [the defendant's employee] as the . . . inventor."  *Id.* at 1355.  Consequently, the defendant was "prohibited from invoking the [plaintiffs'] reliance on its fraud to raise a procedural bar to a claim seeking a remedy for the fraud itself."  *Id.*  Defendants here should likewise be prevented from benefiting from their own fraudulent conduct.

Defendants, however, argue that published patent applications should place MV Circuit on "constructive notice" of its claims, an argument tantamount to claiming that MV Circuit

---

[21] *See Auto Chem Labs*, 2008 WL 4372698, at *20 (S.D. Ohio July 31, 2008) (tolling statute of limitations when plaintiff alleged that defendant "engaged in what appeared to be ordinary business activities" over a lengthy period of time to disguise its fraudulent scheme to obtain plaintiff's proprietary business information), *adopted in pertinent part*, 2008 WL 4372697 (S.D. Ohio Sep. 23, 2008).

should have been combing through the hundreds of thousands of patents and patent applications published every year to locate and study any related to medical cart technology.  (Kilpatrick Br. at 15.)  But "only [i]nformation sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence."  *Lutz*, 717 F.3d at 475-76 (alteration in original; quotation marks and citation omitted).  Indeed, numerous courts have held that plaintiffs like MV Circuit have no responsibility to search the patent dockets so that the mere publication of a patent or patent application does not start the statute of limitations clock running.  In *General Electric Co. v. Wilkins*, for example, the court concluded that the issuance of a patent was not enough to put the claimant on notice of his claims relating to that patent.  2011 WL 3163348, at *5 (E.D. Cal. July 26, 2011).  The court explained that it is "not reasonable" to impose on claimant the "onerous burden" of "scour[ing] the Patent Office's records for all patents issued to [the opposing party] each year and then review[ing] the substance of each patent to determine whether [the claimant] should have been named as an inventor."  *Id.*  Similarly, in *St. John's University, New York v. Bolton*, the court refused to charge the plaintiff with knowledge of patents and their contents "simply by virtue of their existence."  757 F. Supp. 2d 144, 192 (E.D.N.Y. 2010).  As the court noted, a plaintiff has no "continuing duty to monitor a public record in the absence of any information which should trigger the person's interest in the record, on the off-chance that it might reveal evidence that he has been defrauded."  *Id.*[22]

---

[22] *See also Onyx Pharm., Inc. v. Bayer Corp.*, 2011 WL 7905185, at *9 (N.D. Cal. May 10, 2011) (declining to impose duty to investigate patent applications on plaintiff); *OrbusNeich Medical Co., Ltd., BVI, v. Boston Sci. Corp.*, 694 F. Supp. 2d 106, 117 (D. Mass. 2010) (published patent application did not trigger statute of limitations because it would be "unreasonably burdensome" to require plaintiff to undertake "searching inquiry" of public records in the absence of "precipitating event" that aroused suspicion); *Portney v. Ciba Vision Corp.*, 2009 WL 305488, at *6 (C.D. Cal. Feb. 6, 2009) (issuance of patent eleven years before plaintiff filed suit for fraud did not constitute "constructive notice for the purpose of determining the start of a limitations period"); *Univ. of Colorado Found., Inc. v. American Cyanamid*, 880 F. Supp. 1387, 1406 & n.4 (D. Colo. 1995) (plaintiffs not on notice of claims based on omission of inventor even after patent was issued and publicly recorded and publicly-sold products were marked

Courts are especially reluctant to dismiss claims on a motion to dismiss based on constructive notice of public patent documents, and any doubt "should be resolved in favor of permitting the case to be resolved on its merits." *Wisecup v. Gulf Dev.*, 56 Ohio App. 3d 162, 165 (Ohio Ct. App. 1989).[23]

### B.     MV Circuit's Claims Did Not Accrue Until Omnicell's Patents Issued and MV Circuit Suffered Actual Damages.

MV Circuit's claims are also timely because MV Circuit experienced no actual damage until the disputed patents issued.  Ohio courts have held that causes of action do "not accrue until actual damage occurs; when one's conduct becomes presently injurious, the statute of limitations begins to run." *Children's Hosp. v. Ohio Dept. of Pub. Welfare*, 433 N.E.2d 187, 190 (Ohio 1982);[24] *see also Copeland v. Delvaux*, 623 N.E.2d 569, 571-72 (Ohio Ct. App. 1993) (recognizing proposition that all fraud elements – including "final element [of] injury" – "must

---

with patent number); *cf. Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1161-62 (Fed. Cir.1993) (issuance of patent did not start period of delay by which laches is measured).

[23] *See, e.g., Avery v. Barsky*, 2013 WL 1663612, at *4 (D. Nev. Apr. 17, 2013) ("not appropriate at the motion to dismiss stage to dismiss [fraud and other] claims on statute of limitations grounds" when plaintiffs alleged that they discovered their exclusion as co-inventors more than ten years after patent issued); *Memorylink Corp.*, 2009 WL 3366974 (statute of limitations began to run not when patent issued publicly, but when plaintiff had a "duty to inquire" into whether patent application had been filed, and the court "cannot determine when that was based on the pleadings alone"); *Applera Corp. Applied Biosystems Grp. v. Illumina, Inc.*, 2008 WL 927963, at *2 (N.D. Cal. Apr. 4, 2008) (deferring determination of whether issued patent constituted constructive notice until "after a trial on issues presented by the ownership claims"). *See also, e.g., Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 448 (6th Cir. 2012) (reversing dismissal because court was "not prepared to conclude . . . at such an early stage of litigation and without the benefit of discovery" that plaintiff did not exercise due diligence); *Veracity Grp., Inc. v. Cooper-Atkins Corp., Inc.*, 2012 WL 203415, at *2 (S.D. Ohio Jan. 24, 2012) ("Ohio statutes of limitations are to be given 'a liberal construction to permit the deciding of cases upon their merits.'") (quotation marks and citation omitted); *Resource Title Agency, Inc. v. Morreale Real Estate Services, Inc.*, 314 F.Supp.2d 763, 775 (N.D. Ohio 2004) ("The determination of when a reasonable person should have discovered fraudulent conduct is generally a factual inquiry, which should be left to the factfinder. Such a determination is therefore inappropriate on a motion to dismiss.") (citations omitted); *Lutz*, 717 F.3d at 475.

[24] Although the Ohio Supreme Court in *Flagstar Bank, F.S.B. v. Airline Union's Mtge. Co.*, 947 N.E.2d 2d 672 (Ohio 2011) refused to apply the actual damages analysis to a professional negligence claim, an appellate court subsequently held that the holding of *Flagstar* should not be extended beyond certain professional negligence claims.  *See Vinecourt Landscaping v. Kleve*, 2013 WL 6875468, at *4-5 (Ohio Ct. App. Dec. 31, 2013).

be established before the action accrues").[25]  As explained in *Vinecourt Landscaping v. Kleve*, this accrual rule is particularly appropriate where actual damage is an express element of a cause of action:

> Negligence . . . *requires* [among other elements] *an injury* . . . . An individual can engage in negligent conduct, but a cause of action *premised upon* negligence necessitates legal harm.  It consequently stands to reason that a statute of limitations should not commence running until a plaintiff has sustained actual damages as a result of a tortfeasor's acts or omissions. To [hold otherwise] . . . fundamentally obfuscates the principles of traditional tort law.

2013 WL 6875468, at *5 (Ohio Ct. App. Dec. 31, 2013) (emphasis in original).

Here, the first patent issued in May 2012, less than three years before MV Circuit filed suit.  MV Circuit's common law claims are based primarily on the deprivation of its patent ownership rights, which "are created only upon the formal issuance of the patent."  *GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996).[26]  Until Omnicell's patents issued, neither the existence nor the extent of MV Circuit's damages could be confirmed, especially because the scope of the future rights a pending patent application will confer changes as the application is amended throughout patent prosecution.[27]  Consequently, MV Circuit could not have incurred legally cognizable actual damage, or even known with any degree of certainty the eventual claims the patent would include in its invention, until May 2012, when Omnicell's

---

[25] *See also Velotta v. Leo Petronzio Landscaping, Inc.*, 433 N.E. 2d 147, 150 (Ohio 1982); *Columbus Green Bldg. Forum v. State*, 980 N.E. 2d 1, 10 (Ohio Ct. App. 2012) (statute of limitations begins to run when "actual damage" occurs, not when wrongful act occurs).

[26] *See also Durham v. Seymour*, 161 U.S. 240 (1896) ("[A] patent right does not exist while the proceeding to obtain it is pending."); *Marsh v. Nichols, Shepherd & Co.*, 128 U.S. 605, 612 (1888) ("Until [a] patent is issued, there is no property right in it."); *Semiconductor Energy Lab. Co. Ltd. v. Samsung Elecs. Co., Ltd.*, 204 F.3d 1368, 1380 (Fed. Circ. 2000) (fraudulent representations regarding pending application could not "defraud" entity of property because "application that has not yet matured into a patent cannot properly be deemed . . . property") (internal quotation marks and citation omitted).

[27] *See GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 482 (Fed. Cir. 1996) ("The district court did not know with certainty whether a patent would issue or, if so, what legal rights it would confer . . . ."); Kenneth D. Bassinger, *Unsettled Expectations In Patent Law: Festo and the Moving Target of Claim Equivalence*, 48 How. L.J. 685, 725 ("[S]ince . . . patent prosecution necessitates claim amendments in almost every patent application, it is rare to find a patent whose claims issued as they were filed.").

patent that included MV Circuit's inventions first issued.

## VI.    MV Circuit Has Stated a Claim against Kilpatrick For Aiding and Abetting.

Although Kilpatrick correctly notes that Ohio does not recognize a claim for aiding and abetting (Kilpatrick Br. at 6), Colorado or California law should apply to MV Circuit's aiding and abetting claim against Kilpatrick because the claim occurred in those states, where Defendants have their offices.[28]  Two Ohio courts that considered choice of law for secondary liability claims, such as claims for aiding and abetting and conspiracy, concluded that they should be  governed by the law of the state where the aiding and abetting or conspiracy occurred, even if the injury occurred elsewhere.  In *CadleRock Joint Venture, L.P. v. Royal Indemnity. Co.*, for example, the court, after  previously applying California law to various contract and fraud claims, conducted a separate choice of law analysis for an aiding and abetting claim predicated on alleged fraud and fraudulent concealment. 2012 WL 511570, at *2-3 (N.D. Ohio Feb. 15, 2012).  After evaluating the factors set forth in Section 145 of the Second Restatement of Conflict of Laws[29] to determine which jurisdiction bore the "most significant relationship" to the aiding and abetting claim, the court held that the claim was subject to Ohio law, where the aider and abettor resided and committed the tort, even though the alleged injury occurred in another state.  *Id.* at *2-3, 5.  Similarly, in *Logan Farms v. HBH, Inc. DE*, the court, applying the same Section 145 factors, decided that Louisiana law controlled a conspiracy claim, even though the

---

[28] For the same reason, Colorado or California law should also apply to MV Circuit's conspiracy claim.  Ohio law "apparently recognizes a principle known as 'dépeçage,' which holds that different issues within a single case may be governed by the laws of different States." *C.B. Fleet Co. v. Colony Specialty Ins. Co.*, 2013 WL 1908098, at *6 & n.12 (N.D. Ohio May 7, 2013) (Polster, J.); *see also Sirlouis v. Four Winds Int'l Corp.*, 2012 WL 1068709, at *4 n.2 (N.D. Ohio Mar. 29, 2012); *CadleRock Joint Venture, L.P. v. Royal Indem. Co.*, 2012 WL 511570, at *4 (N.D. Ohio Feb. 15, 2012) ("Ohio choice of law rules require the court to conduct a distinct choice of law analysis with respect to each claim.").

[29] Those factors are: "(1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under section 6 which the court may deem relevant to the litigation."  *Id.* at *4.

plaintiff resided and was injured in Texas, because the relevant negotiations took place in Louisiana. 282 F. Supp. 2d 776, 788-89 (S.D. Ohio 2003).

Here, MV Circuit's aiding and abetting claim is more closely connected to California and Colorado than it is to Ohio.  Virtually all of the wrongdoing alleged in the Complaint against Kilpatrick occurred in Colorado or California.  The Kilpatrick lawyers involved in this lawsuit work in Colorado, and their client Omnicell is headquartered in California. Accordingly, the Court should apply California or Colorado law rather than Ohio law to MV Circuit's aiding and abetting claim.

California and Colorado courts recognize claims for aiding and abetting fraud and other tortious acts, including claims against attorneys who aid and abet their clients.  *See, e.g.*, *Hunter v. Citibank, N.A.*, 2010 WL 2509933, at *18-19 (N.D. Cal. Jan. 28, 2013) (complaint alleging that lawyers provided legal assistance to help perpetuate and conceal client's fraud stated claim for aiding and abetting fraud); *Sender v. Mann*, 423 F. Supp. 2d 1155, 1175 (D. Colo. 2008) (concluding that "aiding and abetting fraud is a cognizable claim in Colorado") (citing *Holmes v. Young*, 885 P.2d 305, 308 (Colo. Ct. App. 1994)).  To state a claim for aiding and abetting under Colorado law, a plaintiff must allege that "the party whom the defendant aids performs a wrongful act that causes an injury, the defendant is generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance, and the defendant knowingly and substantially assists the principal violation." *Holmes*, 885 P.2d at 308.  Similarly, under California law, "[a] plaintiff may state a claim for aiding and abetting an intentional tort if (1) the defendant knew that the primary tortfeasor's conduct constitutes a breach of duty, and (2) the defendant gave substantial assistance or encouragement to the other to so act.").  *Hunter*, 2010 WL 2509933, at *18.  As discussed above, the Complaint alleges that Kilpatrick

intentionally and substantially aided and abetted Omnicell's wrongdoing when, among other acts, Kilpatrick assisted Omnicell in deceiving MV Circuit to disclose its confidential intellectual property to Kilpatrick by falsely assuring MV Circuit that Kilpatrick was not Omnicell's regular patent counsel.  MV Circuit has therefore alleged facts sufficient to state a claim for aiding and abetting against Kilpatrick under both Colorado and California law.

## VII.    MV Circuit's Conspiracy Claim Is Well-Pleaded Under California, Colorado, and Ohio Law.

The elements of conspiracy are materially the same under California, Colorado, and Ohio law: "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in damages."  *Gosden v. Louis*, 687 N.E. 2d 481, 496 (Ohio Ct. App. 1996).[30]  A plaintiff may allege the defendants' formation of the conspiracy generally.  *See Wyatt v. Union Mortg. Co.*, 598 P.2d 45, 52 (Cal. 1979) ("The requisite concurrence and knowledge may be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances . . . . Tacit consent as well as express approval will suffice."); *Boyd v. T'Kach*, 2008 WL 784398, at *6 (D. Colo. Mar. 20, 2008) ("Conspiracy can be shown by a sequence of events from which a reasonable jury could infer that there was a meeting of the minds.").

The Complaint alleges that Defendants "agreed to engage in a common scheme" to defraud MV Circuit, and committed multiple overt acts in furtherance of the conspiracy.  (*See, e.g.*, Compl., ¶¶ 180-81.)  The Complaint also alleges ample facts to support the inference that Defendants agreed to engage in a common scheme to defraud MV Circuit.  (*See* Compl., ¶¶ 50-

---

[30] *Cf. Young v. Hamilton*, 92 Fed. Appx. 389, 393 (9th Cir. 2003) (under California law, the "elements of civil conspiracy are the formation and operation of the conspiracy, a wrongful act done pursuant to the conspiracy, and damage resulting to the plaintiff from the act.") (citation omitted); *Christou v. Beatport, LLC*, 849 F. Supp. 2d 1055, 1078-79 (D. Colo. 2012) (under Colorado law, the elements of conspiracy are "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof") (citing *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989)).

52, 181.)  MV Circuit has therefore sufficiently alleged its conspiracy claim.

      Defendants, however, argue that MV Circuit has not alleged "malice." (*See* Kilpatrick Br. at 12; Omnicell Br. at 18-19.)  Contrary to Defendants' assertion, however, the Complaint is replete with allegations demonstrating Defendants' malice.  The "'malice' in 'malicious combination' is legal or implied malice," which is "inferred from or imputed to a common design by two or more persons to cause harm to another by means of an underlying tort, and need not be proven separately or expressly." *Gosden*, 687 N.E.2d at 496.  It "does not require a showing of an express agreement between defendants, but only a common understanding or design, even if tacit, to commit an unlawful act." *Id.*  The Complaint clearly alleges that Defendants intentionally entered into "a common understanding or design" to defraud and cause harm to MV Circuit.  (*See* Compl., ¶¶ 180-81.)

      Defendants also argue that the conspiracy claims are barred by the intra-corporate conspiracy doctrine, which provides that a corporation cannot conspire with its own agents because there are not two separate "people" to form the conspiracy. (*See* Omnicell Br. at 12; Kilpatrick Br. at 19-20).  However, courts have held that the intra-corporate conspiracy doctrine (and the related "agent immunity rule") is inapplicable where attorneys actively participate in their clients' fraud.[31]  In *Pavicich v. Santucci*, for example, the plaintiff alleged that an attorney conspired with his client to fraudulently conceal from the plaintiff a limited partnership's litigation exposure.  85 Cal. App. 4th 382 (Cal. Ct. App. 2000).  The court held that because the attorney owed plaintiff an independent duty "to not commit fraud," plaintiff could maintain a

---

[31] The intra-corporate conspiracy cases that Kilpatrick cites in its brief are distinguishable. (Kilpatrick Br. at 19-20 & n.20 (citing *Amadasu v. The Christ Hosp.*, 514 F.3d 504 (6th Cir. 2008); *Horen v. Board of Educ. of Toledo City Sch. Dist.*, 594 F. Supp. 2d 833 (N.D. Ohio 2009); *Coley v. Lucas County*, 2014 WL 272667 (N.D. Ohio Jan. 23, 2014)).)  In *Amadasu* and *Horen*, there were no allegations that the defendant attorneys committed fraud.  In *Coley*, the defendants worked together in a sheriff's department.

conspiracy claim against the attorney.  *Id.* at 397.[32]

## CONCLUSION

For the foregoing reasons, MV Circuit respectfully requests that the Court deny

Omnicell's Motion to Dismiss the Seventh, Eighth, Ninth, and Thirteenth Causes of Action and

deny Kilpatrick's Motion to Dismiss the Tenth, Eleventh, Twelfth, Thirteenth, and Fourteenth

Causes of Action.

---

[32] *See also Shafer v. Berger, Kahn, Shafton, Moss Figler, Simon & Gladstone*, 107 Cal. App. 4th 54, 84 (Cal. Ct. App. 2003) ("[A]gents [may be] held subject to liability for conspiracy to commit actual fraud since they ha[ve] a duty to abstain from injuring . . . plaintiff[s] through express misrepresentation") (citations omitted); *Stueve Bros. Farms, LLC v. Berger Kahn*, 222 Cal. App. 4th 303, 323 (Cal. Ct. App. 2013) (claim for lawyer conspiring with client to commit fraud was viable); *Astarte, Inc. v. Pacific Indus. Sys, Inc.*, 865 F. Supp. 693, 708 (D. Colo. 1994) (indicating that attorney can be held liable for conspiracy with client where attorney actively participates in fraud); *Likover v. Sunflower Terrace II, Ltd.*, 696 S.W.2d 468, 472 (Tx. Ct. App. 1985) (stressing that attorney cannot "shield himself from liability on the ground that he [i]s an agent"; attorneys can therefore be held liable for conspiracy when they "knowingly enter[] into a conspiracy to defraud a third person"); *Fraidin v. Weitzman*, 93 Md. App. 168, 236 (Md. Ct. App. 1992) ("The law does require that while an attorney is acting within the scope of his employment, he may not commit fraud or collusion, or a malicious or tortious act, even if doing so is for the benefit of the client.").

Dated: January 29, 2015                 Respectfully submitted,


By:____/s/ James Fussell_____
James A. Fussell, III (admitted *pro hac vice*)
Janet L. Goetz (admitted *pro hac vice*)
Peter J. Toren (admitted *pro hac vice*)
Sean J. Williams (admitted *pro hac vice*)
Weisbrod Matteis & Copley PLLC
1200 New Hampshire Ave., NW
Suite 600
Washington, DC 20036
202-499-7900
jfussell@wmclaw.com
jgoetz@wmclaw.com
ptoren@wmclaw.com
swilliams@wmclaw.com

Luis A. Carrión
Renner, Otto, Boisselle & Sklar, LLP
1621 Euclid Avenue, 19th Floor
Cleveland, OH 44115
216-621-1113
lcarrion@rennerotto.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2014 a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.


<u>s/ James A. Fussell, III</u>
*Attorney for Plaintiff*
*MV Circuit Design, Inc.*


## RULE 7.1(f) CERTIFICATION OF COUNSEL

The undersigned counsel certifies, pursuant to L.R. 7.1(f) that:  (1) this matter has not yet

been assigned to a case management track; (2) by order dated December 16, 2014, the Court

granted MV Circuit Design, Inc.'s unopposed motion to file a single consolidated opposition of

forty pages or less to Defendants' motions to dismiss; and (3) the foregoing Opposition complies

with the forty-page limit permitted by that order.


<u>s/ James A. Fussell, III</u>
*Attorney for Plaintiff*
*MV Circuit Design, Inc.*