**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MV CIRCUIT DESIGN, INC.,** | ) | **CASE NO.  1:14 CV 2028** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **JUDGE DAN AARON POLSTER** |
| | ) | |
| | ) | |
| **OMNICELL, INC., et al.,** | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

Currently pending before the Court are two motions to dismiss.  On November 14, 2014,

Omnicell, Inc. ("Omnicell") and Rioux Vision, Inc. ("Rioux") jointly filed a Motion to Dismiss

all of the declaratory judgment and tort claims that MV Circuit asserts against them (Doc. # 25)[1],

and, on the same day, Kilpatrick Townsend & Stockton LLP ("Kilpatrick") filed a Motion to

Dismiss all of the tort claims that MV Circuit asserts against it (Doc. # 24).  For the reasons

discussed below, the Court grants in part and denies in part Omnicell, Rioux and Kilpatrick's

respective Motions to Dismiss.

### I. Factual Background

This case arises out of MV Circuit's allegation that Omnicell, Rioux and Kilpatrick

(together, "Defendants"), "through a pattern of deception and fraudulent concealment…stripped

[MV Circuit] of its patent rights ... in a medication-dispensing cart that became known as the

RIO Cart." (Doc. # 1, Complaint ("Comp."),  ¶ 1).  Although medical carts had been used in the

---

[1]Omnicell and Rioux have not moved to dismiss MV Circuit's patent infringement claims.

1

healthcare industry for years, the carts lacked adequate systems to ensure that the correct medication would be dispensed at the prescribed dose.  The medication-dispensing cart that MV Circuit and Rioux developed, eventually called the RIO Cart, addresses these problems. Specifically, the RIO Cart includes a computer-monitored drawer system for keeping track of who dispensed what type of medication, when it was dispensed, and that corroborated dispensing information automatically.

MV Circuit, an engineering and design company, began developing medical-cart technology in 2001 when one of Rioux's former employees, Ray Reckelhoff, approached MV Circuit to discuss developing a new medical cart and computer station.  MV Circuit agreed to work with Mr. Reckelhoff and Rioux, and in the ensuing six years MV Circuit worked almost exclusively on developing the hardware, software, and firmware that were eventually incorporated in the RIO Cart.  MV Circuit hired engineers and spent hundreds of thousands of dollars of its own money on developing and conceiving of a number of components that were incorporated in the RIO Cart, including the drawer system; height actuator and weight sensor; wireless linking system; power system controller and; the computer controller. During the course of working with Rioux, MV Circuit charged Rioux only for certain hardware expenses and it sold Rioux prototypes it developed for various components to be used in the RIO Cart.

On February 14, 2007, Rioux sent MV Circuit a "Master Development Agreement," which provided, among other things, that, in the future, Rioux would be the exclusive owner of any intellectual property either party developed in connection with the RIO Cart.  MV Circuit rejected Rioux's proposal and over the next few months the parties exchanged proposed draft agreements, but did not reach an agreement.  While the parties were in negotiations, MV Circuit

2

continued working closely with Rioux on developing the cart.

Then, on November 29, 2007, Omnicell purchased Rioux for $26 million.  After learning of Omnicell's acquisition, on December 17, 2007, MV Circuit's CEO and founder, Markos Paradissis, met with Omnicell executives in California.  During the meeting, MV Circuit proposed negotiating an agreement with Omnicell pursuant to which Omnicell would purchase MV Circuit's intellectual property rights in the RIO Cart.  Omnicell told Mr. Paradissis that its attorneys would contact him to continue discussions and on January 22, 2008, Bob Schmid, Omnicell's Associate General Counsel, telephoned Mr. Paradissis.  The next day, Mr. Schmid sent Mr. Paradissis an email summarizing their telephone discussion ("Schmid email").  Mr. Schmid wrote, in part:

> I have identified patent counsel with the Townsend and Townsend and Crew[2] law firm to whom you can disclose information relating to the IP that you believe relates to the Rioux Vision carts. This counsel would review this information and possibly discuss it further with you and/or your people. The purpose of the review and discussion is to enable him to provide to Omnicell his assessment of the patentability of these features as well as the overall value of the technology behind these features. He would not share with Omnicell the underlying technological descriptions that you would disclose to him but would provide the assessment mentioned above. For your information, although this counsel is solely Omnicell's counsel not the counsel of MV Circuit, this individual is not our regular patent counsel and would not be involved in developing any patent applications on behalf of Omnicell with respect to any technologies similar to those that are disclosed to him by MV Circuit.  Omnicell remains free to develop rights with respect to any similar technologies through patents or otherwise.[3]  (Comp. ¶ 50).

---

[2]Kilpatrick Townsend is the result of the merger between two law firms, one of which was formerly known as Townsend and Townsend and Crew.

[3]In the Complaint, MV Circuit does not include the portion of the Schmid email that reads "Omnicell remains free to develop rights with respect to any similar technologies through patents or otherwise."  However, in its brief opposing the Defendants' Motions to Dismiss, it acknowledges that this was included in the email.

Mr. Schmid sent a copy of the above email to Omnicell's outside counsel, William J. Daley, at the Denver office of Kilpatrick Townsend.  In reliance on Mr. Schmid's representations, on January 28, 2008, MV Circuit disclosed its confidential intellectual property to Mr. Daley.  Following their initial conversations, Mr. Paradissis sent Mr. Daley a "summary/outline" that summarized some of MV Circuit's inventive contributions to the RIO Cart's development.  Mr. Daley and Mr. Paradissis continued to exchange emails, including an email in which Mr. Daley requested that Mr. Paradissis provide him with "conception dates" for the technology that MV Circuit invented.  Then, about a month later, Omnicell employees with engineering and technical expertise visited MV Circuit's Ohio office to learn about MV Circuit's intellectual property.

As was the case when MV Circuit was negotiating with Rioux, Omnicell and MV Circuit failed to reach an agreement on the purchase price of MV Circuit's intellectual property.  Despite this, between 2008 and 2011, MV Circuit continued to work closely with Omnicell developing technology for the medical cart, and it continued to sell the circuitry used in the RIO Cart to Omnicell. Then, in 2011, Omnicell stopped purchasing products from MV Circuit, and MV Circuit began exploring other opportunities to license or sell its intellectual property related to the mediation-dispensing cart technology.  While doing so, in May 2013, MV Circuit discovered that on February 11, 2006, Rioux filed a provisional patent application related to the RIO Cart, U.S. Provisional Application No. 60/772, 416 ("the '416 Application"), claiming that its employee, Ray Recklehoff, was the sole inventor.  The '416 Application ultimately issued as U.S. Patent No. 8, 180, 485 ("the '485 Patent").  MV Circuit also learned that between 2006-2011, either Omnicell or Rioux  had filed other patent applications related to the RIO Cart.  Two

4

of these applications ultimately issued as U.S. Patent No. 8,773, 270 ('270 Patent) and U.S. Patent No. 8,812,153 ('153 Patent).

On September 12, 2014, MV Circuit filed a Complaint in this Court against Defendants Omnicell, Rioux and Kilpatrick (collectively, "Defendants").  MV Circuit asserts correction of inventorship claims against Omnicell under 35 U.S.C. § 256 (Counts 1, 2 and 3); and seeks declaratory judgment compelling Omnicell to correct inventorship designation on certain international patent applications (Counts, 4, 5, and 6).  MV Circuit also asserts various state tort claims against both Omnicell and Kilpatrick, including, fraudulent concealment, negligent misrepresentation, fraud and conspiracy, as well a claim against only Kilpatrick for aiding and abetting Omnicell.

As noted above, on November 14, 2014, Omnicell and Rioux jointly filed a Motion to Dismiss all of the declaratory judgment claims and tort claims that MV Circuit asserts against them (Doc. # 25) and, on the same day, Kilpatrick filed a Motion to Dismiss all of the tort claims that MV Circuit asserts against it (Doc. 24).  On January 29, 2015, MV Circuit filed a consolidated Opposition Brief (Doc. # 27), consenting to the Court's dismissal of the declaratory judgment claims (Counts 4, 5 and 6) and opposing the Defendants' Motions to Dismiss the state tort law claims, and, on February 17, 2014, the Defendants filed a Reply Brief (Doc. # 29 and Doc. # 30, respectively).  Because MV Circuit consents to the Court's dismissal of the declaratory judgment claims, the Court grants Omnicell and Rioux's Motion to Dismiss as to these claims.  Furthermore, for the reasons discussed below, the Court grants in part and denies in part Omnicell, Rioux and Kilpatrick's respective Motions to Dismiss as to MV Circuit's state law tort claims.

5

## II. Legal Standard

Omnicell and Kilpatrick bring their respective Motions to Dismiss under Federal Rule of Civil procedure 12(b)(6) for failure to state a claim. To survive a motion to dismiss under Rule 12(b) (6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Fed. R. Civ. P. 12(b) (6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] formulaic recitation of the elements of a cause of action will not do," and a plaintiff must include factual allegations sufficient to "raise a right to relief above the speculative level." *Id.* A claim has facial plausibility only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). Merely reciting "labels and conclusions" is not enough. *Twombly*, 550 U.S. at 555.

In addition, for fraud claims, a complaint must state "with particularity" the circumstances constituting an alleged fraud or conspiracy. See Fed. R. Civ. P. 9(b). "Rule 9(b) does not require omniscience; rather, the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Hale v. Enerco Grp., Inc.,* 2011 WL 49545, at * 5 (N.D. Ohio Jan 5. 2011) (internal quotation marks omitted) (quoting *Michaels Bldg. Co. v. Amerit rust Co., N.A.,* 848 F.2d 674, 679 (6th Cir.1988).

## III. Analysis

### A. Fraud and Fraudulent Concealment

The elements of fraud and fraudulent concealment are: "(1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance." *Hale*, 2011 WL 49545, at *5 (citing *Gaines v. Preterm–Cleveland,* Inc., 514 N.E. 2d 709, 712 (Ohio 1987)).

MV Circuit's tort claims, including its fraud and fraudulent concealment claims, arise out of the January 23, 2008 email that Omnicell's Associate General Counsel, Bob Schmid, sent to MV Circuit's CEO, Markos Paradissis.  MV Circuit's fraud claims are based on the following statements from the Schmid email:

- "[Mr. Daley] is not our regular patent counsel"

- "[Mr. Daley] would not be involved in developing any patent applications on behalf of Omnicell with respect to any technologies similar to those that are disclosed to him by MV Circuit."

- "[Mr. Daley] would not share with Omnicell the underlying technological descriptions that you disclose to him . . ."

- "[I]f MV Circuit disclosed its intellectual property and inventions related to the RIO Cart, Omnicell would assess its value and patentability . . ."

The Complaint alleges that the above statements were false because 1) Mr. Daley's law firm, Kilpatrick Townsend, was Omnicell's regular patent counsel; 2) Kilpatrick Townsend was prosecuting Omnicell's patent application related to the technology in the RIO Cart; 3)

7

Kilpatrcik Townsend was actively working on additional patent applications based on identical technology that MV Circuit had disclosed to Mr. Daley; and 4) Omnicell had already determined that MV Circuit's inventions were patentable because it was prosecuting patent applications that claimed MV Circuit's inventions.  The Complaint further alleges that Defendants made these statements to 1) induce MV Circuit to disclose its intellectual property to Mr. Daley; 2) to mislead MV Circuit into believing that Omnicell had not filed a patent application on the Rio Cart; and 3) to induce MV Circuit into continuing to work with Omnicell on the Rio Cart.  MV Circuit asserts that, in reliance on these statements, it disclosed its intellectual property to Mr. Daley and continued to work with Omnicell on the Rio Cart; the Complaint alleges that Mr. Paradissis sent Mr. Daley a "summary/outline" that summarized some of MV Circuit's inventive contribution to the RIO Cart's development, including the Drawyer System, Wireless Linkying System, HIPPA switch, Guide Lights and Power System Controller.  Finally, MV Circuit asserts that it was injured as a result of disclosing its intellectual property to Mr. Daley because the intellectual property that MV Circuit disclosed to Kilpatrick was included in subsequent patent applications that Kilpatrick prepared and prosecuted on behalf of Omnicell.  For instance, the "summary/outline" disclosed a "so-called HIPPA or privacy switch that permits a user to hit a button to cause personal patient information to be replaced by a screen saver."  After Mr. Paradissis sent Mr. Daley the "summary/outline," Kilpatrick Townsend, on behalf of Omnicell, subsequently drafted U.S. Application No. 61/420,262 ("the '262 Application") which claims, in part, that Omnicell's employees invented a "HIPPA...button" that performs the identical function that MV Circuit disclosed to Mr. Daley.  The '262 Application ultimately issued as Patent '270. (Comp., ¶ 58).

8

As to MV Circuit's fraudulent concealment claims, the Complaint alleges, in addition to the above allegations, that the Defendants had a duty to disclose certain information to MV Circuit because of the "continuing relationship of trust" between MV Circuit and Omnicell, and between MV Circuit and Rioux.  Specifically, the Complaint alleges that Defendants had a duty to disclose  the "true facts" concerning Kilpatrick Townsend's representation of Omnicell and that  Omnicell and Rioux were filing patent applications that were based on MV Circuit's intellectual property.

Defendants argue that MV Circuit has failed to adequately plead a claim for fraud and fraudulent concealment and that, even if it has, these claims are time barred.

### 1. Sufficiency of the Allegations–Omnicell

First, Omnicell and Rioux argue that MV Circuit does not allege any facts that plausibly suggest that the statements from the 2008 Schmid email were false.  In doing so, they point to facts that MV Circuit has not alleged.  For instance, as to the statement that Daley was not Omnicell's regular patent counsel and would not be involved in prosecuting patent applications, Omnicell and Rioux note that the Complaint does not allege that Mr. Daley consulted with or spoke to the Kilpatrick attorneys who prosecuted Omnicell's patents.  Similarly, as to the statement that Mr. Daley would not share with Omnicell the underlying technological descriptions that MV Circuit would disclose, they note that MV Circuit has not alleged that Mr. Daley actually disclosed MV's proprietary information to any specific person at Kilpatrick or Omnicell.  Thus, Omnicell and Rioux essentially argue that MV Circuit has not alleged all the facts that are necessary for MV Circuit to prove fraud.  The difficulty that MV Circuit may have proving its case is not relevant when analyzing a 12(b)(6) motion to dismiss.  Rather, the

9

appropriate inquiry is whether MV Circuit has alleged sufficient facts from which the Court can infer that the statements in 2008 Schmid email were false.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556) ("A claim has facial plausibility only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." ).  That requirement is met here.

As noted above, MV Circuit alleges that after it disclosed its intellectual property to Mr. Daley, a lawyer at Kilpatrick, the firm, on behalf of Omnicell, filed patent applications that included, at least in part, the information that MV Circuit had disclosed to Mr. Daley.  For instance, after Mr. Paradissis sent Mr. Daley the "summary/outline," which disclosed, among other things, a "so-called HIPPA or privacy switch," Kilpatrick, on behalf of Omnicell, drafted the '262 Application which claims a "HIPPA … button" that performs the identical function that MV Circuit disclosed to Mr. Daley.  Contrary to Schmid's representation to Paradissis, Daley's law firm was developing patent applications for Omnicell based on technology similar to that disclosed by MV Circuit.  Thus, based on these factual allegations, it is plausible to infer that Daley shared MV Circuit's information with other lawyers at his firm.

Second, Omnicell and Rioux argue that MV Circuit alleges no relationship sufficient to give rise to a duty to disclose and, as such, any omission by Omnicell is not actionable.  "Ohio law requires that a plaintiff establish a duty to disclose if a concealment of fact is alleged as a basis for fraud." *Cedar View, Ltd. v. Colpetzer,* 2006 WL 456482, * 3(N.D. Ohio Feb. 24, 2006) (citation omitted). Under Ohio law, the "duty to speak does not depend on the existence of a fiduciary relationship between the parties.  It may arise in any situation where one party imposes confidence in the other because of that person's position, and the other party knows of this

10

confidence." *Cent. States Stamping Co. v. Term. Equip. Co.,* 727 F.2d 1405, 1409 (6th Cir. 1984) (citing *Smith v. Patterson*, 33 Ohio St. 70, 75-76 (1877).  Here, the Complaint alleges facts from which the Court can infer that MV Circuit imposed confidence in Omnicell and Rioux because of their long-standing business relationship: (1) MV Circuit and Rioux developed a close relationship of trust during six years of developing the RIO Cart technology; (2) MV Circuit and Rioux each invested their own resources researching and developing the RIO Cart technology; (3) Rioux indicated to MV Circuit that they would share in the commercial success of the RIO Cart; (4) MV Circuit and Rioux collaborated on the entire development process for the RIO Cart, exchanging ideas, designs, and prototypes; and (5) MV Circuit continued working closely with Omnicell after it purchased Rioux to further develop the RIO Cart technology.

Finally, Omnicell and Rioux argue that MV Circuit has failed to sufficiently allege the requisite intent[4], reliance, and harm elements of fraud and fraudulent concealment.  However, as noted above, MV Circuit alleges that the Defendants made misleading and false statements to MV Circuit in order to induce MV Circuit to 1) continue to work with Omnicell and 2) disclose its confidential intellectual property to Mr. Daley.  The Complaint alleges that MV Circuit worked closely with Omnicell and Rioux on developing the technology for the RIO Cart and that Omnicell knew that MV Circuit, rather than Rioux, had the expertise required to develop the technology in the RIO Cart.  The Complaint further alleges that MV Circuit continued to work

---

[4]In their Reply Brief, Omnicell and Rioux raise an additional argument concerning the sufficiency of the allegations that they did not raise in their Motion to Dismiss.  They assert that Plaintiff fails to adequately plead the "material transaction" element of fraud.  Specifically, they argue that MV Circuit does not allege how Defendants' patent applications were material to the transaction it proposed, i.e., that Omnicell purchase MV Circuit's technology.  The Complaint is replete with allegations that MV Circuit would not have disclosed its confidential property to the Defendants or devoted its time and resources to developing the RIO cart had it known not only about the patent applications but that Kilpatrick was Omnicell's patent counsel.  While MV Circuit will ultimately have to prove how its disclosures were material to the transaction it proposed to MV Circuit, the Court finds that these allegations sufficiently plead the "materiality" element of fraud.

with Omnicell, the specific propriety information that MV Circuit disclosed to Omnicell, and how this information was used by Omnicell.  For instance, as noted above, the Complaint alleges that the "summary/outline" that Mr. Paradissis sent Mr. Daley disclosed MV Circuit's inventive contributions to the RIO Cart, including Guide Lights (also referred to as "the visual indicator). (Comp. ¶ 92).  The Complaint further alleges that Mr. Paradissis conceived of and developed the visual indicator, and that claim 9 of the '270 Patent discloses the visual indicator that Mr. Paradiss developed.  (Id).  Thus, MV Circuit has sufficiently alleged the remaining elements of fraud.

Omnicell and Rioux also argue that "several key facts" undermine MV's statements regarding these elements of fraud.  Some of the "key facts" that Omnicell and Rioux point to are contentions outside of the Complaint.  Specifically, they assert that after MV Circuit made the disclosures to Mr. Daley, it began filing its own patent applications related to the RIO Cart, and, as a result,  "any claims of injury based on the alleged disclosures in 2008 are illogical."  They also argue that because Omnicell filed  patent applications prior to the 2008 Schmid email, it had no reason to hide its inventions from Plaintiff.  What MV Circuit will or will not be able to ultimately prove is not relevant when ruling on a 12(b)(6) motion to dismiss.  *Perry v. United Parcel Service,* 90 Fed. Appx. 860, 860-861 (6th Cir. 2004) ("The court's function is not to weigh the evidence… but rather to examine the complaint and determine whether the plaintiff has pleaded a cognizable claim." (citations omitted)).  The Court must determine whether the Complaint contains enough facts to state a claim to relief that is plausible on its face.  Even with the heightened pleading requirements mandated by Federal Rule of Civil Procedure 9(b), MV Circuit has sufficiently alleged a claim for fraud.  As discussed above, MV Circuit has alleged

12

the content and date of the misrepresentations that it relied on, Defendants' fraudulent scheme and intent, and the injury that it sustained as a result of relying on these misrepresentations. *See Hale v. Enerco Grp., Inc.,* 2011 WL 49545, at * 5 (N.D. Ohio Jan 5. 2011)( "In complying with Rule 9(b), a plaintiff, at a minimum, must allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." (quoting *U.S. ex. rel Bledsoe v. Cmty. Health Sys., Inc*., 342 F.3d 634, 642 (6th Cir.2003) (internal quotation marks omitted)).

Accordingly, the Court denies Omnicell and Rioux's Motion to Dismiss the fraudulent concealment and fraud claims (Counts 7 and 9, respectively).

### 2. Sufficiency of the Allegations- Kilpatrick

Kilpatrick argues that MV Circuit has not adequately plead a claim for fraud and fraudulement concealment.  First, Kilpatrick argues that it is not responsible for any misrepresentations in the 2008 Schmid email because Mr. Daley simply received a copy of the email and, therefore, any misrepresentations in the email were made solely by Omnicell.  The Court disagrees.  The Complaint alleges that Kilpatrick, along with Omnicell, made the statements contained in the Schmid email.  The Complaint further alleges that Kilpatrick was Omnicell's regular patent counsel at the time that the email was sent, Mr. Schmid sent a copy of the email to Mr. Daley, and that Mr. Daley, in accordance with the terms of the email, engaged in discussions with MV Circuit regarding MV Circuit's "inventive contributions" related to the RIO Cart.  Furthermore, the email makes specific representations about what Mr. Daley would and would not do.  For instance, the email provides that Mr. Daley would review any disclosures that MV Circuit made to him so that he could provide Omnicell with "his assessment of the

13

patentability of these features as well as the overall value of the technology behind these features" but that he would not share the "underlying technological descriptions with Omnicell." (Comp., ¶ 50).  It is  unlikely that Omnicell would have made such specific representations about what Mr. Daley would or would not do without Mr. Daley having communicated this information to Omnicell.  Thus, it is  reasonable to infer from these facts that Mr. Daley was somehow involved in the creation of this e-mail, i.e., that he drafted, discussed, or otherwise contributed to the substance of the email[5].  At a very minimum, Mr. Daley was aware of the representation that Schmid made to Paradissis, and Daley received the proprietary information from Omnicell because of these representations.

Second, Kilpatrick claims that because it was Omnicell's attorney, the attorney immunity doctrine shields it from liability.  "Under Ohio law, attorneys enjoy immunity from liability to third persons arising from acts performed in good faith on behalf of, and with knowledge of, their clients.  There is no immunity, however, where attorneys act maliciously." *Vector Research, Inc. v. Howard & Howard Attorneys P.C.,* 76 F.3d 692, 700 (6th Cir. 1996) (citing *Scholler v. Scholler,* 10 Ohio St.3d 98, 462 N.E. 2d 158, 163 (1984).  Under, Fed. R. Civ. P. 9 (b), "malice may be averred generally," because malice is "difficult to demonstrate at the pleading stage of litigation." *Vector Research, Inc.,* 76 F.3d at 700 (citations omitted).  In *Vector,* the Sixth Circuit held that the plaintiffs' allegations that the "attorney defendants acted maliciously," "shared the malicious motives of their client," and "improperly handled personal and confidential information" were sufficient to defeat an attorney immunity challenge on a

---

[5] Kilpatrick also sets forth arguments concerning the remaining elements of fraud (i.e., false statement, justifiable reliance, intent, and harm).  For the same reason that the Court rejects Omnicell's arguments as to these elements, it rejects Kilpatrick's.

preliminary motion to dismiss. *Id.* Similarly, in *LeRoy*, the Supreme Court of Ohio affirmed reversal of the granting of the defendant attorneys' motion to dismiss on immunity grounds, concluding that the plaintiffs' "allegations of collusion and conflict of interest fall within the ambit of malice based on the sum total of the underlying facts alleged" and could be pleaded generally. *LeRoy v. Allen, Yurasek & Merklin*, 872 N.E. 2d 254, 260 (Ohio 2007) . Here, the Complaint is replete with allegations that Omnicell and Kilpatrick "embarked on a scheme" to "mislead and deceive" MV Circuit. Thus, because the Defendants have sufficiently alleged malice, the Court finds that, at this stage of the litigation, it is inappropriate to apply the attorney immunity doctrine to shield Kilpatrick from liability from MV Circuit's fraud claim.

Next, Kilpatrick asserts that MV Circuit failed to plead facts showing that Kilpatrick had a "duty to disclose." The Court agrees. As noted above, "Ohio law requires that a plaintiff establish a duty to disclose if a concealment of fact is alleged as a basis for fraud." *Cedar View, Ltd. v. Colpetzer,* 2006 WL 456482, * 4 (N.D. Ohio Feb. 24, 2006). Under Ohio law, the duty to disclose may be required of a party to a business transaction where (1) the parties are in a fiduciary relationship; (2) both parties to the transaction understand that a special trust or confidence has been reposed; or (3) full disclosure is necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts. *Blon v. Bank One, Akron, N.A.,* 35 Ohio St. 3d 98, 101, 519 N.E.2d 363, 367 (1988); *see also Stuckey v. Online Resources Corp.,* 819F.Supp. 2d 673, 686-87 (S.D. Ohio July 12, 2011)("[F]ull disclosure may be required of a party to a business transaction where such disclosure is necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts."). The Complaint alleges that Kilpatrick "had a duty to disclose to MV Circuit the true nature of the law

15

firm's work for Omnicell and the existence of the pending patent applications in order to dispel or correct their misleading statements."  (Comp. ¶ 159).  However, the Complaint does not allege any facts from which the Court can infer that MV Circuit and Kilpatrick were parties to a business transaction.  The business transaction that is the basis of MV Circuit's Complaint involves MV Circuit's proposal to Omnicell to enter into an agreement in which Omnicell would purchase or license MV Circuit's intellectual property rights in the RIO Cart.   The Complaint does not allege that Kilpatrick was a party to this transaction, nor does it allege any other facts from which the Court can infer that Kilpatrick and Omnicell were parties to a business transaction.  Rather, the Complaint alleges that when Omnicell and MV Circuit were parties to a business transaction, Kilpatrick assisted Omnicell in defrauding MV Circuit.

Accordingly, the Court grants Kilpatrick's Motion to Dismiss the fraudulent concealment claim (Count 10) and denies the Motion to Dismiss the fraud claim (Count 12).

### 3. Statute of Limitations

In addition to their arguments concerning the sufficiency of MV Circuit's allegations, the Defendants also argue that MV Circuit's fraud claims are time barred.  Because the Defendants' respective Motions set forth similar statute of limitation arguments, the Court will consider these arguments together.

Under Ohio law, the statute of limitation for fraud is "four years after the cause therof accrued."  Ohio Rev. Code § 2305.09.  The Defendants assert that the four-year statute of limitation period begins to accrue when the fraud was committed.  However, the Ohio Supreme Court has held that "a cause of action for fraud ..accrues either when the fraud is discovered, or when in the exercise of reasonable diligence, the fraud should have been discovered."  *Cundall v.*

16

*U.S. Bank,* 909 N.E.2d 1244, 1250 (2009) (citations omitted).  The court explained that while a

cause of action generally accrues when the wrongful act was committed, the discovery rule is an

exception to the general rule.  *Norgard v. Brush Wellman, Inc.,* 95 Ohio St. 3d 165, 167 (2002).

Here, MV Circuit alleges that it discovered that Omnicell had filed a patent relating to the RIO

Cart technology in May 2013.  Thus, based on this allegation, MV Circuit's fraud claims do not

expire until May 2017.

 This does not end the Court's inquiry.  Defendants also argue that MV Circuit should

have discovered the fraud before it did and that the Court should *not* apply the  fraudulent

concealment doctrine to toll the statute of limitation period.

 "Generally, a motion under Rule 12(b)(6), which considers only the allegations in the

complaint, is an inappropriate vehicle for dismissing a claim based upon a statute of limitations.

However, dismissal is warranted if the allegations in the complaint affirmatively show that the

claim is time-barred."  *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013)

(internal quotation marks and citations omitted)."  Here, the Court finds that the Complaint does

not affirmatively show that MV Circuit's claim is time-barred.  As noted above, the statute of

limitation for fraud begins to accrue "when the fraud is discovered, or when in the exercise of

reasonable diligence, the fraud should have been discovered."  *Cundall,* 909 N.E.2d 1244, 1250

(citations omitted). When determining whether a plaintiff should have discovered the fraud prior

to when it alleges it did, the relevant inquiry is "whether the facts known would lead a fair and

prudent man, using ordinary care and thoughtfulness, to make further inquiry."  *Id.*  The

Defendants argue that the following factual allegations demonstrate that MV Circuit should have

known, prior to May 2013, that Omnicell and Rioux could be filing patent applications related to

17

the RIO Cart: 1)  some of the patent applications were public information; 2) the Schmid email

was sufficient to alert MV Circuit that Omnicell had or would be filing patent applications

related to the RIO Cart; 3) in 2007, Rioux "asked MV Circuit to stipulate that Rioux alone had

conceived of the technology in the medical cart" ("the stipulation") (Comp. ¶ 2); and 4) in 2007

Rioux sent MV Circuit a proposed agreement that provided that Rioux would be the exclusive

owner of any IP developed in connection with the RIO Cart.  The Court disagrees.

First, the Court agrees with other courts that have held that mere publication of a patent

or patent application is insufficient to put a claimant on notice of his claims relating to the patent.

*compare General Electric Co. v. Wilkins,* 2011 WL 3163348, at * 5 (E.D. Cal. July 26, 2011),

*with Informatics Applications Group,* 836 F.Supp.2d 400, 425 (E.D. Va. 2011)("[P]ublication of

the patent application for the #146 Patent on October 16, 2008 [] was sufficient to place

[plaintiff] on constructive notice and trigger the statute of limitations on [its] fraud claim").  As

the Court in *General Electric* explained, it is "not reasonable" to impose on a claimant the

"onerous burden" of  "scour[ing] the substance of each patent to determine whether [the

claimant] should have been named as an inventor."  *General Electric,* 2011 WL 3163348 at *5.

Second, as to the stipulation and the 2007 proposal that Rioux sent to MV Circuit, the

Court finds that neither of them affirmatively shows that MV Circuit should have known that

Omnicell and Rioux were filing patent applications.  In doing so, the Court construes the

Complaint in the light most favorable to MV Circuit, as it must on a 12(b)(6) motion to dismiss.

The Complaint alleges that after Rioux sent MV Circuit the proposed agreement stating that

Rioux would be the exclusive owner of any IP developed in connection with the RIO Cart, MV

Circuit rejected Rioux's proposal and sent Rioux a counter-proposal.  The parties never reached

18

an agreement, so there is no conclusive proof that MV Circuit knew or should have known that Rioux was filing any patent applications based on the RIO Cart.

Finally, as to the statement in the 2008 Schmid email that Defendants argue should have alerted MV Circuit that Rioux or Omnicell had or would be filing patent applications, the Court finds that this statement, in light of MV Circuit's other factual allegations, does not affirmatively show that MV Circuit's fraud claims are time barred.  MV Circuit alleges that it "had no reason to suspect" that Rioux or Omnicell had filed patent applications related to the RIO Cart because, among other things, Rioux had contracts with MV Circuit that explicitly prohibited Rioux from disclosing to any third party the intellectual property that MV Circuit provided to Rioux. (Comp. ¶ 73).   The Complaint further alleges that MV Circuit "had no reason to suspect" Omnicell because Omnicell and Kilpatrick made statements in the Schmid email suggesting that they were assessing the value and patentability of MV Circuit's intellectual property.

Accordingly, for the reasons discussed above, the Court finds that the Complaint does not affirmatively show that MV Circuit's fraud claims are time-barred.  Having done so, the Court need not consider whether the fraudulent concealment doctrine tolls the statue of limitations period.

**B. Negligent Misrepresentation**

 Omnicell, Rioux and Kilpatrick argue that MV Circuit has failed to adequately plead a claim for negligent misrepresentation and that, even if it has, its negligent misrepresentation claim is time barred.  Kilpatrick also asserts that the attorney immunity doctrine bars MV Circuit's negligent misrepresentation claim.

19

### 1. Statute of Limitation

A claim for negligent misrepresentation must be brought within the four years after the action accrued.  Ohio Rev. Code § 2305.09.  Under Ohio law, the discovery rule does not apply to negligent misrepresentation claims.  *See Allen v. Andersen Windows, Inc*., 913 F.Supp.2d 490, 509 (S.D. Ohio 2012).   Thus, the limitations period provided for a negligent misrepresentation claim in Ohio "begins to run when the allegedly negligent act is committed, rather than when its damage is discovered." *Svete v. Wunderlich*, No. 2:07-cv-156, 2008 WL 4425509, at *9 (S.D. Ohio. Sept. 30, 2008).  Here, the alleged "misrepresentations" in the Complaint occurred in January 2008, and MV Circuit filed the instant action in September 2014, well over four years from the date of the misrepresentations.  Nonetheless, MV Circuit contends that the fraudulent concealment doctrine tolls the limitation period.  To toll the statute of limitation period under the fraudulent concealment doctrine, a plaintiff must plead "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence." *Lutz,* 717 F.3d at 475.  The Court finds that MV Circuit has sufficiently alleged that the fraudulent concealment doctrine tolled the statute of limitation period.

As to the first prong, the Complaint allege that Defendants intentionally deceived MV Circuit into thinking that Omnicell had not filed any patent applications related to the RIO Cart. For instance, the Complaint alleges that in the Schmid email, Omnicell and Kilpatrick told MV Circuit that it was interested in conducting an assessment of the patentabiity of MV Circuit's intellectual property in the RIO Cart, thereby suggesting that no patent application claiming MV Circuit's intellectual property in the cart had been filed.  Clearly the second prong is met; MV

Circuit alleges that it discovered the fraud outside of the limitation period. As to the third prong, the Sixth Circuit has recognized that "only information sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence." *Lutz*, 717 F.3d at 475-76 (internal quotation marks and citation omitted). As detailed above, MV Circuit alleges that it "had no reason to suspect" that Rioux or Omnicell had filed patent applications related to the RIO Cart. Thus, the Court concludes that MV Circuit's allegations are sufficient to survive a motion to dismiss. Whether or not MV Circuit did in fact have sufficient information to trigger its duty to investigate, are "questions for summary judgment or for trial, and they should not be resolved on a motion to dismiss." *Id.*

### 2. Attorney Immunity

Under Ohio law, "[a]n attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with the knowledge of his client, unless such third person is in privity with the client or the attorney acts maliciously." *Scholler v. Scholler,* 462 N.E.2d 158, 163 (Ohio 1984). Here, as discussed above, MV Circuit has alleged that the Defendants acted with malice. Thus, the Court finds that at this stage of the litigation it is inappropriate to apply the attorney immunity doctrine to shield Kilpatrick from liability from MV Circuit's negligent misrepresentation claim.[6]

### 3. Sufficiency of the Factual Allegations

The Court now turns to Defendants' argument that MV Circuit has not properly plead a claim for negligent misrepresentation. Under Ohio law, negligent misrepresentation is defined as

---

[6]Kilpatrick cites *In re Nat. Century Fin. Enter., Inc. Inv. Lit.*, No. 2:03-md-1565, 2008 WL 1995216, at *7 (S.D. Ohio May5, 2008) to suggests that even if MV Circuit had alleged malicious conduct, MV Circuit could not overcome the attorney immunity doctrine. (Kilpatrick Motion at 11). To the extent that this case stands for this proposition, the Court declines to adopt this reasoning.

follows: "A person who, in the course of his business, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Rheinfrank v. Abbot Labs.*, 2013 WL 4067826, at *2 (S.D. Ohio Aug. 12, 2013) (quoting *Gutter v. Dow Jones, Inc.*, 490 N.E.2d 898, 900 (Ohio 1986)). As noted above, MV Circuit alleges facts from which the Court can infer that Omnicell and Kilpatrick, in the course of a business transaction, supplied MV Circuit with false information and that MV Circuit relied upon this information.

The crux of Defendants' argument is that a negligent misrepresentation claim requires that the parties have a "special relationship," such that the defendant is a professional who is in the business of rendering opinions to others for use in guiding their business.[7] (Omnicell Motion at 11; ). In support, Defendants cite: *Ziegler v. Findlay Indus. Inc.*, 464 F. Supp. 2d 733, 738 (N.D. Ohio 2006); *Stafford v. Jewelers Mut. Ins. Co.*, No. 12-cv-050, 2013 WL 796272, at *7 (S.D. Ohio Mar. 4, 2013);*Ortega v. Wells Fargo Bank, NA,* No. 11-cv-1734, 2012 WL 275055, at *9 (N.D. Ohio Jan. 31, 2012); *Palmer-Donavin Mfg. Co. v. Rheem Sales Co.*, No. 14-cv-91, 2014 WL 2767665, at *8 (S.D. Ohio June 18, 2014). MV Circuit, in turn, cites cases that have rejected the special relationship requirement. (MV Circuit Op. Br. at 24 )(citing *Nat'l Mulch & Seed, Inc.*

---

[7]Omnicell and Rioux also argue that MV Circuit "cannot state a claim for negligent misrepresentation by alleging intentional false statements" and all the Defendants argue that MV Circuit has not alleged that the Defendants failed to exercise reasonable care in communicating the information.( Omnicell Mot. at 14; Kilpatrik Mot. at 10). Ohio courts, however, recognize that plaintiffs can bring a fraud and negligent misrepresentation claim based on the same conduct. *See Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E. 2d 1261, 1269 (Ohio Ct. App. 1996) ("Where fraud and negligent misrepresentation are claimed as to the same set of underlying facts, if fraud is proved, then the claim of negligent misrepresentation is necessarily subsumed thereby."). MV Circuit's allegations that Defendants deliberately deceived MV Circuit to induce it to disclose its intellectual property necessitate the inference that Defendants did not exercise sufficient care when making their misrepresentations. As to Kilpatrick's arguments concerning the justifiable reliance and damage elements of negligent misrepresentation (Kilpatrick Mot. at 9), Kilpatrick makes the same arguments that it does with regard to the justifiable reliance and damage elements of MV Circuit's fraud claims. For the same reasons that the Court rejected these arguments as to MV Circuit's fraud claims, the Court rejects them as to MV Circuit's negligent misrepresentation claim.

*v. Rexius Forest By-Products, Inc.*, 2007 WL 894833, at *9 (S.D. Ohio Mar. 22, 2007); *Hodell-Natco Indus. v. SAP Am., Inc.*, 13 F. Supp. 3d 786, 797 (N.D. Ohio 2014); *CCB Ohio LLC v. Chemque, Inc.*, 649 F. Supp. 2d 757, 767 (S.D. Ohio 2009); *Nat'l Century Fin. Enterprises, Inc. v. Inv. Litig.*, 580 F. Supp. 2d 630, 647 (S.D. Ohio 2008); *ATM Exch., Inc. v. Visa Int'l Ass'n*, 2008 WL 3843530, at *16 (S.D. Ohio Aug. 14, 2008).

As this appears to be a very unsettled area in Ohio law, the Court will deny the Motions to Dismiss MV Circuit's negligent misrepresentation claims at this time (Counts 8 and 11), and will wait to see what discovery shows the parties' true relationship was.  The Court notes that even if MV Circuit is not required to prove a "special relationship," it will have to prove that Defendants provided false information to guide MV Circuit in its business transactions, and that MV Circuit justifiably relied on this false information.

**C. Aiding & Abetting**

The Complaint alleges that Kilpatrick intentionally and substantially aided and abetted Omnicell in defrauding MV Circuit.  While Ohio does not recognize a civil tort of aiding and abetting, Colorado and California, the states where Defendants have their offices, do recognize this tort. *compare Devries Dairy, L.L.C. v. White Eagle Coop. Ass'n., Inc.*, 132 Ohio St.3d 516, 517, 974 N.E.2d 1194, 1194 (Ohio 2012) (answering in the negative the certified question*,* "Under the applicable circumstances, does Ohio recognize a cause of action for tortious acts in concert under the Restatement (2d) of Torts, § 876.") *with Hunter v. Citibank, N.A.*, 2010 WL 2509933, at *18-19 (N.D. Cal. Jan. 28, 2013) (recognizing a claim for aiding and abetting fraud) *and Sender v. Mann*, 423 F. Supp. 2d 1155, 1175 (D. Colo. 2008) (concluding that "aiding and abetting fraud is a cognizable claim in Colorado").  This makes a choice of law determination

23

necessary for this claim.  *Glidden Co v. Lumbermens*, 112 Ohio St. 3d 470, 471-75 (2006)

(adopting the rule that "an actual conflict between Ohio law and the law of another jurisdiction

must exist for a choice-of-law analysis to be undertake") (citations omitted).

"In federal question cases, a District Court entertaining pendent state claims should follow

the choice of law rules of the forum state."  *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132,

136 (6th Cir. 1996) (citations omitted).  Therefore, Ohio's choice-of law rules apply.  Ohio

follows the Restatement (Second) of Conflict of Laws in making choice-of-law determinations in

tort actions.  *See Morgan v. Biro Mfg. Co., Inc.*, 15 Ohio St.3d 339, 341–42, 474 N.E.2d 286,

288–89 (Ohio 1984).  Pursuant to Ohio's choice-of-law rules in a tort action, "a presumption is

created that the law of the place of the injury controls unless another jurisdiction has a more

significant relationship to the lawsuit."  *Id.*  To determine the state with the most significant

relationship, the Court must apply the following factors[8]: 1) the place of the injury; 2) the place

where the conduct causing the injury occurred; 3) the domicile, residence, nationality, place of

incorporation, and place of business of the parties; and 4) the place where the relationship

between the parties, if any, is located.  *Morgan,* 15 Ohio St. 3d at 342, 474 N.E. 2d at 289 (citing

Restatement (Second) of Conflict of Laws § 14 (1).

Applying these factors to the instance case, the Court finds that Ohio has the most

significant relationship to the occurrence and parties.  First, the Complaint alleges that MV

Circuit was injured by Kilpatrick's actions in Ohio.  (Comp. ¶ 17) (Kilpatrick "had the

---

[8] For fraud based claims, the Court may also consider: (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicile, residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.  Restatement (Second) of Conflict of Laws § 148(2).

communications with Mr. Paradissis of MV Circuit that are at issue in this case while Mr.

Paradissis was in Ohio, causing injury to MV [] in Ohio.").  Second, MV Circuit received and

relied upon the Schmid email, along with other email communications from Kilpatrick, in Ohio.

Third, MV Circuit alleges that it developed and invented the disputed technology in Ohio and that

Omnicell employees visited MV Circuit's  office in Ohio to learn more about MV Circuit's

intellectual property.  Fourth, MV Circuit is an Ohio Corporation with its principal place of

business in Ohio, whereas Omnicell is a Delaware corporation with its principal place of business

in California and Kilpatrick is headquartered in Georgia. While MV Circuit alleges that

Defendants made the representations from Colorado and California, this factor, in light of the

other factors, does not weigh in favor of applying Colorado or California law.  Finally, Ohio is

preferred because it is the forum state.  *Carder Buick-Olds Co., Inc. V. Reynolds & Reynolds,

Inc.*, 775 N.E.2d 531, 544 (Ohio Ct. App. 2002) (explaining that if after applying the relevant

factors either state would be appropriate, the court should apply the law of the forum state).

Accordingly, because Ohio does not recognize a claim for aiding and abetting, the Court

dismisses this claim against Kilpatrick (Count 14).

**D. Conspiracy**

The Complaint alleges that Omnicell and Kilpatrick "agreed to engage in a common

scheme" to defraud MV Circuit, and committed multiple overt acts in furtherance of the

conspiracy.  Omnicell and Kilpatrick assert that MV Circuit has not properly plead the elements

of conspiracy and that this claim is barred by the intra-corporate conspiracy doctrine.  Because

the Court finds that MV Circuit's conspiracy claim is barred by the intra-conspiracy doctrine, it

does not consider whether this claim is properly plead.

In Ohio, civil conspiracy is defined as "a malicious combination of two or more persons to injure another person or property, in a way not competent for one alone, resulting in actual damages." *Williams v. Aetna Fin. Co.,* 83 Ohio St. 3d 464, 475, 700 N.E. 2d 859 (1998) (citations omitted). Under the intra-corporate conspiracy doctrine, if "all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Amadasu v.The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008) (barring Section 1985 civil rights claim on intra-corporate conspiracy grounds). This includes employees and agents of a corporation, such as attorneys acting within the scope of the attorney-client relationship. *See Horen v. Board of Educ. of Toledo City Sch. Dist.,* 594 F.Supp. 2d 833, 842 (N.D. Ohio 2009) ("An attorney representing a client cannot 'conspire' within the attorney-client relationship" (citations omitted)); *see also Coley* vs. *Lucas County,* 2014 WL 272667, at *9 (N.D. Ohio Jan. 23, 2014) (applying intra-corporate conspiracy doctrine to bar state law civil conspiracy claim because "[a] corporation cannot conspire with its own agents or employees").

MV Circuit asserts that the intra-corporate conspiracy doctrine should not be applied to bar its civil conspiracy claim because courts have held that this doctrine is inapplicable where attorneys actively participate in their clients' fraud. In support of this proposition, MV Circuit cites state court decisions from California and Colorado. (MV Circuit Opp. Br. at 37-38). Under Ohio law,[9] however, the only exception to the intra-conspiracy doctrine that courts have recognized is where an employee acts outside the scope of his employment by engaging in the alleged conspiracy. *Coley,* 2014 WL 272667, * 10 ("Plaintiffs cannot rely on the one exception to the intra-corporate conspiracy doctrine, namely that Defendants were acting outside the scope

---

[9] As noted in the "Aiding and Abetting" section of the Court's analysis, the Court finds that Ohio law applies to MV Circuit's state law claims.

of their employment by engaging in an alleged conspiracy." ); *see also Steptoe v. Savings of America,* 800 F.Supp. 1542, 1547-48 (N.D. Ohio Aug. 24, 1992) (noting that the only exception to the intra-conspiracy rule that courts in Ohio have recognized is where a party to a conspiracy acted outside the scope of his employment in performing the alleged unlawful acts).

As noted above, the Complaint asserts that Kilpatrick and Omnicell conspired to defraud MV Circuit.  Kilpatrick, as Omnicell's attorney, was unquestionably an agent of Omnicell.  In addition, the allegations against Kilpatrick are based on conduct that Mr. Daley and other attorneys at Kilpatrick engaged in as part of their representation of Omnicell.  See e.g., Comp. ¶ 38 (statements in the 2008 Schmid email were false because Kilpatrick was "actively working on patent applications based on identical technology that MV Circuit disclosed to Mr. Daley").  Thus, Kilpatrick was working within the scope of its employment when it engaged in the allegedly unlawful conduct.  Accordingly, because MV Circuit has not alleged that there were two separate "people" who participated in the alleged conspiracy, the Court dismisses Omnicell's conspiracy claim as a matter of law (Count 13).

### IV. Conclusion

For the reasons discussed above, the Court grants in part and denies in part Omnicell, Rioux and Kilpatrick's respective Motions to Dismiss. Specifically, as to Omnicell and Rioux, the Court **GRANTS** their Motion to Dismiss (**Doc. # 25**) the declaratory judgment (Counts 4, 5 and 6) and civil conspiracy (Count 13) claims, and **DENIES** their Motion to Dismiss the fraud (Count 9), fraudulent concealment (Count 7) and negligent misrepresentation (Count 8) claims.  As to Kilpatrick, the Court **GRANTS** its Motion to Dismiss (**Doc. # 24**) the fraudulent concealment (Count 10), aiding and abetting (Count 14) and conspiracy (Count 13) claims, and **DENIES** its

Motion to Dismiss the fraud (Count 12) and negligent misrepresentation (Count 11) claims.

**IT IS SO ORDERED.**


 */s/ Dan A. Polster    March 24, 2015*
**Dan Aaron Polster**
**United States District Judge**